**IN THE UNITED STATES COURT**
**OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SEVENSON ENVIRONMENTAL SERVICES, INC., Plaintiff, | ) | |
| v. | ) | No. 05-1075C |
| | ) | Judge Thomas C. Wheeler |
| THE UNITED STATES Defendant. | ) | |

Electronically Filed on July 13, 2006

**DEFENDANT'S MOTION TO BIFURCATE TRIAL ON LIABILITY FROM TRIAL ON DAMAGES AND TO STAY EXPERT DISCOVERY RELATED TO DAMAGES**

Pursuant to the provisions of RCFC 42(c), the United States (the "Government"), moves for a separate determination of infringement and invalidity prior to determination of damages, if any, and to stay expert discovery related to damages. The Government is amenable to proceeding with all fact discovery, including fact discovery related to damages. The Government has informed plaintiff Sevenson Environmental Services, Inc. ("Sevenson") of this motion, and plaintiff has indicated that it will oppose this motion.

**Background**

This is an action brought under 28 U.S.C. § 1498(a) by Sevenson seeking reasonable and entire compensation for the alleged use by the Government of a hazardous and radioactive waste remediation process as claimed in U.S. Patent Nos. 5,527,982; 5,732,367; 5,916,123; 5,994,608; and 6,139,485. All five of the patents are continuations or continuations in part of U.S. Patent

No. 5,193,936, which is itself a continuation in part of an abandoned application. In general, the patents claim a process for treating hazardous materials to render them "non-leachable" by contacting the hazardous materials with a phosphate supplying reagent and a sulfate supplying reagent. Through contractors, the Government treated hazardous soil at the Colonie, NY site using only phosphoric acid. Prior to filing this lawsuit against the Government, Sevenson pursued an action against the Government's contractor, Shaw Environmental Services, Inc. ("Shaw") in the Western District of New York ("the NY litigation"). Significant discovery was completed in the NY litigation, and the Government is currently copying and reviewing documents, deposition transcripts, and expert reports from the NY litigation. Sevenson has notified the Government that it is asserting over 100 claims of the five patents in suit. Under the current Scheduling Order, the parties cannot serve any written discovery until August 28, 2006, and claim construction positions must be exchanged by the parties by September 1, 2006. A Markman hearing is scheduled for January 9, 2007.

**Argument**

Under RCFC 42(c), the Court may order that a trial "be limited to the issues of law and fact relating to the right of the party to recover, reserving the determination of the amount of recovery, if any, for further proceedings." RCFC 42(c). A separate determination of liability and damages serves the interest of effective judicial administration in patent infringement cases. See Smith v. Alyeska Pipeline Serv. Co., 538 F.Supp. 977, 982-83 (D. Del. 1982), aff'd, 758 F.2d 668 (Fed. Cir. 1984). "Patent cases are often uniquely amenable to bifurcation because of the complex nature of the damages determination and the extensive discovery that is often necessary to prove the nature and extent of those damages." Novopharm Ltd. v. Torpharm Ltd., 181 F.R.D.

308, 310 (E.D.N.C. 1998). Moreover, "[a] preliminary finding on the question of liability may well make unnecessary the damages inquiry, and thus result in a substantial saving of time of the Court and counsel and reduction of expense to the parties." Alyeska Pipeline, 538 F.Supp. at 983 (citing Swofford v. B&W, Inc., 34 F.R.D. 15, 19-20 (S.D. Tex. 1963)). An initial determination of liability coupled with a stay of expert discovery related to damages is appropriate in the instant case for two reasons: (1) there are significant questions of both infringement and invalidity of the patents in suit; and (2) a damages calculation, if necessary, would be lengthy and complex.

## I. There are Significant Questions of Both Infringement and Invalidity of the Sevenson Patents

First, whether the Government's utilization of phosphoric acid to remediate the soil at the Colonie site infringes the Sevenson patents is a significant issue in this case. If this Court construes the claims to encompass a method requiring a distinct or significant source of sulfate in addition to a distinct or significant source of phosphate, then the Government's single step application of only phosphoric acid would not infringe. Such a finding would be dispositive of the case, avoiding the time and expense necessary for a damages determination. Second, under an alternate claim construction, proposed by Sevenson in the NY litigation, Sevenson may argue the use of phosphoric acid alone infringes because it contains sulfate as an impurity. Even if this possible alternate construction is adopted, the Sevenson patents may be invalid based on anticipation and/or obviousness by the prior art. See 35 U.S.C. §§ 102, 103.

For example, although not asserted against the Government in the instant case, Sevenson also owns U.S. Patent No. 5,193,936 ("the '936 patent"), the parent patent to all of the patents in suit. The '936 patent, which contained claims similar to the claims at issue in the instant case,

was re-examined by the United States Patent and Trademark Office ("USPTO"), and all but two of its claims were cancelled by the USPTO in light of invalidating prior art. Many of the claims in the currently asserted patents improperly recapture the material that was cancelled. See Ex parte Morimoto, 18 U.S.P.Q.2d 1540, 1543-44 (Bd. Patent Appeals and Interferences 1990) (holding that "a patentee may not continue prosecuting patented claims that have been cancelled"). Thus, there are substantial issues as to the validity of the claims in the asserted patents.

Third, both the "infringement and validity analyses must be performed on a claim-by-claim basis." Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1351 (Fed. Cir. 2001). In the instant case, where Sevenson has asserted over 100 claims from the five patents in suit, this claim-by-claim infringement and validity analysis will be complex and time-consuming. A declaration of invalidity of any of the over 100 claims of the five patents asserted in this case would further simplify the proceedings, and a declaration of invalidity of every claim would be dispositive. Pfund v. United States, 40 Fed. Cl. 313, 371 (1998), aff'd 178 F.3d 1313 (Fed. Cir. 1999). Any valid claims must then be applied to the accused process to determine infringement. Thus, the Court may have to engage in multiple inquiries applying the claims to the accused process. Until these issues of liability are determined, a damages inquiry in the instant case is unnecessary.

## II. A Damages Calculation, if Necessary, Would be Lengthy and Complex

Second, expert discovery related to damages and the damages portion of a trial would be lengthy and complex, costing the Court and the parties significant time and money. The Court generally determines damages in a patent case in two related steps: "(1) determination of a

reasonable compensation base, i.e., the total value of the infringing items on which the plaintiffs are entitled to royalty payments, and (2) determination of a reasonable royalty rate to apply to that compensation base." Standard Mfg. Co., Inc. v. United States, 42 Fed. Cl. 748, 759 (1999) (citing Decca Ltd. v. United States, 640 F.2d 1156, 1173 (Ct. Cl. 1980)). The value of the reasonable compensation base is determined by the value of "what the owner has lost, not what the taker has gained." Standard Mfg., 42 Fed. Cl. at 759. Determining the reasonable royalty rate is based on a "willing-buyer/willing-seller" or "willing licensee/willing-licensor" model, which is determined using 15 "Georgia-Pacific" factors.[1] See id. at 763. In order to determine a reasonable royalty, the court must consider evidence relating to each of the factors. Moreover, unlike in a typical determination of a reasonable royalty between a patent holder and an infringer,

> Whether to treat the government or [the contractor] as the licensee for purposes of this analysis depends on the approach used and the factor involved. The contractor operates under the aegis of the sovereign's power to take a license under the second paragraph of section 1498(a). Hence, at some points in the analysis, it is more useful to treat the government as the hypothetical licensee.

Penda Corp. v. United States, 29 Fed. Cl. 533, 575 (1993). Therefore, "[w]hen a section 1498 action is involved, the situation is more complex, and this is true of the present case." Standard Mfg., 42 Fed. Cl. at 764.

Although the underlying facts of the instant case may be relatively undisputed, Sevenson's assertion of five patents and over 100 claims against the Government greatly complicates the liability and invalidity determination by this court. Furthermore, as mentioned above, this court's claim construction will affect the potential application of these claims to the Government's

---

[1] For brevity, the factors are not listed here. They can be found in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

activities at the Colonie site. For example, although two of the asserted patents deal with treatment of radioactive materials and the Government handled radioactive materials, it did not affirmatively treat or measure them and not all of the soil treated was radioactive. Moreover, it is likely that Sevenson will argue that the Government's re-treatment of waste that did not meet the toxicity requirements after a single treatment constitutes two-step treatment. The Government only re-treated a portion of the total tonnage. Thus, while the total tonnage treated is known, this amount may not constitute a royalty base for the determination of a reasonable royalty for all possible scenarios. For example, if Sevenson's patent claims that require a two-step treatment were the only ones to be found infringed and not invalid, the retreated portions would need to be determined. In addition, the five patents asserted were issued over a four year time frame, and the Government's alleged use of the patented technology began in the middle of that period. Therefore, any potential damages for the patents issued after the Government's treatment began would be limited to any damage incurred after the issuance of those patents. All of these permutations will affect the determination of a reasonable royalty and any total damages calculation in this case. Such a lengthy, expensive, and complex determination of damages in the instant case should not be undertaken by the Court and the parties until infringement and invalidity have been determined.

**Conclusion**

For the reasons stated above, defendant requests that the Court grant defendant's motion for a separate determination of infringement and invalidity prior to determination of damages and to stay expert discovery related to damages.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN J. FARGO
Director

s/ Marcy Cook
________________________________
MARCY E. COOK
Attorney
Civil Division
U.S. Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0459
Facsimile: (202) 307-0345

Of Counsel:
SUSAN L.C. MITCHELL
Attorney
U.S. Department of Justice

Dated: July 13, 2006