IN THE UNITED STATES COURT OF FEDERAL CLAIMS

(Electronically Filed:________________)

| | |
|---|---|
| **SEVENSON ENVIRONMENTAL SERVICES, INC.,** | |
| **Plaintiff,** | |
| **v.** | **NO.: 05-1075C** |
| | **JUDGE THOMAS C. WHEELER** |
| **THE UNITED STATES and SHAW ENVIRONMENTAL, INC.,** | |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

Respectfully submitted:

_s/ Russel O. Primeaux______________
Russel O. Primeaux
Kean Miller Hawthorne
D'Armond McCowan & Jarman LLP
One American Place, 22nd Floor
Post Office Box 3513
Baton Rouge, LA 70821-3513
Phone: 225.387.0999
Facsimile: 225.388.9133

***Counsel for Shaw Environmental, Inc.***

Of Counsel:

J. Eric Lockridge
Anthony G. Boone
Kean Miller Hawthorne D'Armond McCowan & Jarman LLP
One American Place, 22nd Floor
Post Office Box 3513
Baton Rouge, LA 70821-3513

**TABLE OF CONTENTS**

**I. Succinct Statement of Question Presented ........................................... 1**

**II. Motions to Intervene Should be Liberally Granted .............................. 1**

**III. Intervention as a Matter of Right Under Rule 24(a)(2) ......................... 2**

**A. Shaw's Motion to Intervene Is Timely. ..................................................... 2**
**1. The Length of Time Indicates Shaw's Motion is Timely Filed ........... 3**
**2. Shaw's Intervention Will Not Prejudice Sevenson ............................. 4**
**3. Unusual Circumstances ......................................................................... 6**

**B. Shaw Has a Direct Interest in the Validity of the Sevenson Patents ....... 6**

**C. Shaw Will be Affected by the Outcome of This Litigation ....................... 8**

**D. Shaw's Interests May Not be Adequately Represented by the Existing Parties ......................................................................................................... 9**

**IV. Permissive Intervention Is Also Appropriate Here ............................. 13**

**V. Conclusion ........................................................................................... 13**

**CERTIFICATE OF SERVICE ................................................................... 14**

**EXHIBIT A, "Decision and Order"; No. 02-CV-527A, *Sevenson Environmental Services, Inc. v. Shaw Environmental, Inc*. (W.D.N.Y., May 11, 2006)**

# TABLE OF AUTHORITIES

## Federal Cases

*In re Acushnet River*, 712 F. Supp. 1019 (D. Mass. 1989) ............................................. 11

*American Maritime Transport, Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989)........................................................................................................................ 1

*American Renovation and Constr. Co. v. United States*, 65 Fed. Cl. 254 (Fed. Cl. 2005) 1, 9

*Armour of America v. United States*, 70 Fed Cl. 240 (2006) ........................................... 12

*Belton Indus., Inc. v. United States,* 6 F.3d 756, 762 (Fed. Cir. 1993) .............................. 3

*Earth Resources Corp. v. United States,* 44 Fed. Cl. 274 (1999) ...................................... 7

*Federal Savings & Loan v. Falls Chase Special Taxing Dist.*, 983 F.2d 211 (11th Cir. 1993)........................................................................................................................ 1

*Fifth Third Bank of Western Ohio v. United States*, 52 Fed. Cl. 202 (2002) ...................... 2

*Freeman v. United States*, 50 Fed. Cl. 305 (2001)............................................................ 3

*Hage v. United States*, 35 Fed. Cl. 737 (1996)................................................................. 9

*Honeywell Int'l., Inc. v. United States,* No. 02-1909C, 2006 WL 1737938 (Fed. Cl. June 23, 2006)............................................................................................................... 3, 4

*John R. Sand & Gravel Co. v. United States,* 59 Fed. Cl. 645 (2004) ............................... 4

*Karuk Tribe of California v. United States*, 27 Fed. Cl. 429 (1993).................................. 9

*Klamath Irrigation Distr. v. United States*, 64 Fed. Cl. 328 (2005) ................................. 1

*Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F. 2d 994 (8th Cir. 1993) ....... 11

*The Cherokee Nation of Okla. v. United States*, 69 Fed. Cl. 148 (2005) ........................... 4

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972)................................. 9

*United States v. AT&T*, 642 F.2d 1285 (D.C. Cir. 1980).................................................. 9

*United States v. City of Chicago*, 879 F.2d 1256 (7th Cir. 1989) ...................................... 6

*Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001).................................. 5

**Other Authorities**

6 MOORE'S FEDERAL PRACTICE §24.03[4][a], at 24-42 (3d. ed. 2005)............................ 10

Advisory Committee's Notes on 1966 Amendments to Fed. Rule Civ. Proc. 24, 28 U.S.C. App., p. 756 ..................................................................................................... 1

## I. Succinct Statement of Question Presented

The question presented is whether Shaw Environmental, Inc. ("Shaw") must or may be permitted to intervene in this action as a party defendant. As explained below, Shaw's intervention is proper under United States Court of Federal Claims Rule 24(a) ("Rule 24(a)"), which provides for intervention as a matter of right. Permissive intervention under Rule 24(b) is also appropriate. Accordingly, Shaw requests that the Court enter an order granting its Motion to Intervene.

## II. Motions to Intervene Should be Liberally Granted

When analyzing whether a party must or may be allowed to intervene, a court should be mindful that "the requirements for intervention are to be construed in favor of intervention." *American Maritime Transport, Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989), *American Renovation and Constr. Co. v. United States*, 65 Fed. Cl. 254, 257 (2005), *citing, inter alia, Federal Savings & Loan v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) (any doubts concerning propriety of allowing intervention should be resolved in favor of proposed intervenor because intervention allows the court to resolve related disputes in single action). This Court recently issued a well-reasoned opinion on intervention that discusses, *inter alia*, how the federal rule on which Rule 24 is based was revised in 1966 to provide for a liberal intervention standard. *See Klamath Irrigation Distr. v. United States*, 64 Fed. Cl. 328, 329-30 (2005). The Court quoted approvingly from the Advisory Committee Notes regarding the 1966 rule change: "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Klamath Irrigation*, 64 Fed. Cl. at 329, *citing* Advisory Committee's Notes on 1966

Amendments to Fed. Rule Civ. Proc. 24, 28 U.S.C. App., p. 756. As explained below, Shaw will be substantially affected by the Court's determination of two issues: (1) whether Shaw's work for the Government at the Colonie site infringed the patents-in-suit, which Sevenson alleges, and (2) whether the patents-in-suit are invalid, which the Government alleges as an affirmative defense. Shaw has no meaningful opportunity to protect itself against the effects of a possible adverse judgment — other than joining this case as a party defendant.

## III. Intervention as a Matter of Right Under Rule 24(a)(2)

Rule 24(a)(2) provides that a party *shall* be permitted to intervene in a proceeding before this court if the application is [1] timely and:

> [2] the applicant claims an interest relating to the property or transaction which is the subject of the action and [3] the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless [4] the applicant's interest is adequately protected by existing parties. [numerals added]

When a movant satisfies the elements of Rule 24(a)(2), the court is without discretion, and the movant "shall be permitted to intervene." *See Fifth Third Bank of Western Ohio v. United States*, 52 Fed. Cl. 202, 203 (2002). Shaw satisfies each of the four requirements stated in Rule 24(a)(2), and must be permitted to intervene here.

### A. Shaw's Motion to Intervene Is Timely.

The Federal Circuit has articulated three factors that should be analyzed in determining whether a motion for intervention is timely: (1) the length of time during which the would-be intervenor actually knew or reasonable should have known of its rights; (2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor by denying intervention; and (3)

existence of unusual circumstances militating either for or against a determination that the application is timely. *Belton Indus., Inc. v. United States,* 6 F.3d 756, 762 (Fed. Cir. 1993), *cited by Honeywell Int'l., Inc. v. United States,* No. 02-1909C, 2006 WL 1737938 (Fed. Cl. June 23, 2006) at *2. Shaw easily satisfies this criteria.

**1. The Length of Time Indicates Shaw's Motion is Timely Filed**

Courts considering the first factor of the timeliness inquiry look to both the length of time that the case has been pending and if there have been substantive developments in the case before the moving party sought to intervene. *See Belton,* 6 F.3d at 762*, Honeywell,* 2006 WL 1737938 at *2-4. Here, Sevenson filed its complaint in October 2005, but the Government did not file its answer until February 10, 2006. The next court filing anticipated by the Amended Scheduling Order is the parties' joint claim construction statement, which is not due until October 1, 2006. Per that same order, written discovery cannot be served until August 28, 2006. Importantly, there are no dispositive motions pending before the Court. *See Freeman v. United States*, 50 Fed. Cl. 305, 308 (2001) ("any prejudice to the existing parties [from the intervention] would be minimal since there are no pending dispositive motions"). Also, Shaw does not seek to change the dates stated in the Amended Scheduling Order.

Shaw recently decided that it would be in its best interest to participate in this case as a named party. As the Court may know, Shaw has participated as an active observer for several months. Shaw conferred repeatedly with both parties in connection with the Protective Order that governs this case. Also, based on an agreement between all three parties, Shaw is making the documents produced by it and Sevenson in related

litigation available to the Government for review and copying, and continues to assist the Government in its defense.[1]

The timeliness of Shaw's intervention here compares favorably with this Court's recent decision in *Honeywell v. United States*. No. 02-1909C, 2006 WL 1737938 (Fed. Cl. June 23, 2006). In that case, the Court allowed L-3 Communications, a potential indemnitor for a §1492 claim, to intervene after the case had been on file for three years and after the parties had already had a full trial on the issue of infringement. *See Honeywell,* 2006 WL 1737938 at *1. By comparison, this case is still in its "nascent" stage. *See Klamath Irrigation*, 64 Fed. Cl. at 336 n. 13. There are no pending dispositive motions, formal discovery has not yet begun, and no trial date is scheduled. Situations where intervention was deemed "untimely" involve very different facts than those presented here. *See Belton,* 6 F.3d at 762 (intervention denied where litigation had been pending for two years and judgment was entered before motions to intervene were filed); *John R. Sand & Gravel Co. v. United States,* 59 Fed. Cl. 645, 649-51 (2004) (intervention denied where litigation had been pending for 16 months, the dispositive motion deadline had passed, and a dispositive motion was pending). In light of this precedent, Shaw's motion is timely filed.

**2. Shaw's Intervention Will Not Prejudice Sevenson**

The second prong "measures only the prejudice caused by a potential intervenor's delay and not that caused by the intervention itself." *See John R. Sand & Gravel Co.,* 59

[1] This Court accepts as true all well-pleaded, non-conclusory allegations in a motion to intervene, absent sham, frivolity, or similar objections. *See American Renovation and Constr. Co. v. United States*, 65 Fed. Cl. 254, 258 (2005), *The Cherokee Nation of Okla. v. United States*, 69 Fed. Cl. 148, 152 (2005). Accordingly, Shaw has not included affidavits, declarations, or the like as exhibits in support of its Motion. Shaw will provide any supporting documentation requested by the Court.

Fed. Cl. at 651, *citing Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1251 (10th Cir. 2001). There is no prejudice to the Government or Sevenson from Shaw's intervention. As noted above, Shaw's decision to participate as a party rather than an active observer does not catch anyone unawares. Shaw's intervention will not delay the proceedings; Shaw expressly agrees to abide by the current scheduling order. Further, Sevenson and Shaw spent four years litigating the same infringement and validity issues presented here in the Federal District Court for the Western District of New York. *See Sevenson Environmental Services, Inc. v. Shaw Environmental, Inc.,* No. 1:02-cv-00527-RJA-HBS ("the New York Case").[2] Sevenson knew or should have known that Shaw might intervene here due to its interest in resolving the infringement and invalidity issues.

By comparison, Shaw faces the risk that it will lose any meaningful opportunity to litigate the validity of the patents at issue if it is not allowed to intervene. If Sevenson prevails here, the Government will likely pursue a contractual indemnity claim against Shaw. Shaw will not be able to relitigate the validity of the patents in a suit by the Government for contractual indemnity. Shaw was pursuing a counterclaim for a declaratory judgment of invalidity in the New York Case. That court dismissed Shaw's counterclaim, however, so that Sevenson could pursue an appeal of the summary judgment granted on §1498 grounds. *See Exh. A.* It is more efficient for all parties and the federal judiciary for Shaw to participate in this litigation, where the validity of the patents-in-suit is being litigated, instead of initiating a third lawsuit on this issue in another forum. *See Klamath Irrigation,* 64 Fed. Cl. at 336 ("Where, as here, the potential

---

[2] *See* https://ecf.nywd.uscourts.gov/. The Western District case terminated after that court granted Shaw's motion for summary judgment on §1498 grounds. That decision is now on appeal.

of additional litigation involving the same [subject matter] looms large, a potential intervenor should be allowed to prevent the development of adverse precedents that undoubtedly will be wielded against it in the future"). The lack of prejudice to Sevenson and the risk of great prejudice to Shaw are factors that strongly favor intervention.

**3. Unusual Circumstances**

Shaw is not aware of any particularly unusual circumstances relevant to the timeliness inquiry.

Based on the relatively brief length of time that this case has been active, the lack of any pending dispositive motions, Shaw's agreement to abide by the current Scheduling Order, the lack of prejudice to Sevenson, and the risk of great prejudice to Shaw, it is clear that Shaw's motion should be considered timely filed.

**B. Shaw Has a Direct Interest in the Validity of the Sevenson Patents**

Shaw readily satisfies the "interest" requirement of Rule 23(a); it seeks to intervene here to protect that interest. The Supreme Court has defined Rule 24(a)'s "interest" to include "economic interests threatened by a ruling," so long as those interests are legally protectable ones. *See Klamath Irrigation*, 64 Fed. Cl. at 330 (synthesizing relevant Supreme Court opinions). The Rule "does not require that the intervenor prove a property right, whether in the constitutional or any other sense." *United States v. City of Chicago*, 879 F.2d 1256, 1260 (7th Cir. 1989)(J. Posner), *cited in Klamath Irrigation, supra.* Economic and business interests are interests that justify intervention, provided the interests are legally protectable and not contingent on events outside the litigation. *See Klamath Irrigation*, 64 Fed. Cl. at 331. The interests must be of such a, "*direct* and *immediate* character than the intervenor will either gain or lose by

the *direct* legal operation and effect of the judgment, to justify the intervention." *American Maritime Transport*, 870 F.2d at 1561 (emphasis in original) (citation omitted).

Shaw has a direct interest in the resolution of the infringement inquiry and the validity inquiry for the patents-in-suit. Shaw faces a claim for indemnity from the Government if the Court finds that the Government, through Shaw, infringed the patents-in-suit at the Colonie site. This contractual indemnity claim presents a risk of immediate harm to Shaw. *See Honeywell,* 2006 WL 1737938 at *4-5; *see also John R. Sand & Gravel Co.,* 59 Fed. Cl. at 653-54 (denying intervention on the facts presented, but noting that an intervenor's contractual obligations to indemnify the Government for patent infringement, where the Government has paid the would-be intervenor for work relating to the alleged patent, presents a situation where mandatory intervention is likely appropriate), *citing Tri-Wall Containers,* 187 Ct. Cl. 326, 408 F.2d 748 (1969); *Earth Resources Corp. v. United States,* 44 Fed. Cl. 274 (1999).

Shaw's interest here is more direct than the interest presented by L-3 Communications when it sought to intervene in a patent infringement case relating to a radar-display unit that it developed. *See Honeywell*, 2006 WL 1737938 at *4. In that case, L-3 was contractually obligated to indemnify Lockheed Martin, who was contractually obligated to indemnify the Government, if Honeywell prevailed on its §1498 claim for infringement. *See id*. Unlike L-3, Shaw's indemnity contract is directly with the Government, not an intermediary.

The Court in *Honeywell* also held that there was, "no question that if the Court determines that the [patent-in-suit] has been infringed L-3 Communications' business could be impaired." *Id.* This finding was based on L-3's statement to the Court that, "the

allegedly infringing products comprise the core of L-3's display business . . . [a finding of infringement] may seriously impact L-3's display business." *Id.* By comparison, a finding of infringement and validity in this case will *certainly* have a serious impact on Shaw's soil remediation business. The phosphoric acid treatment process that Sevenson alleges infringed the patents-in-suit at the Colonie site is the treatment that Shaw would like to include in many proposals to provide soil remediation services. Upon information and belief, Shaw has lost at least two soil remediation contracts due to the patents-in-suit because Shaw's bids incorporating a different treatment process were not competitive; if Shaw had been able to bid using the more cost-effective phosphoric acid process at issue in this case, Shaw would have had an increased probability of securing these contracts. Shaw anticipates that it will continue to lose soil remediation contracts if it is unable to perform the same phosphoric acid treatment process at issue in this case.

### C. Shaw Will be Affected by the Outcome of This Litigation

The third requirement for mandatory intervention is that the disposition of this case "may, as a practical matter, impair or impede [Shaw's] ability to protect [its] interest." Rule 24(a). This Court recently noted in *Honeywell* that the third requirement is satisfied where "a determination of infringement of the [patent-in-suit] would have a persuasive, if not collateral effect, on future litigation in which infringement of the [patent-in-suit] is at issue." *Id.* at *6. Similarly, in *Klamath Irrigation,* this Court noted that it was "beyond peradventure" that this requirement was satisfied by the *stare decisis* effect that its decision would likely have on later litigation involving the would-be intervenor. *See* 64 Fed. Cl. at 332. The *Klamath Irrigation* opinion cites several other reported cases that discuss how the practical impairment request of Rule 24(a) is satisfied

by the "potential for generating adverse precedent, applicable in other related cases under the doctrine of *stare decisis*," that may impair or impede the would-be intervenor's interest in the property or transaction that is the subject of the pending suit. *See id.* at 330, 333-34 (string citations omitted).[3]

Shaw seeks to intervene here to avoid the *stare decisis* effect of an adverse decision, as discussed in *Klamath Irrigation, Honeywell,* and other cases cited therein. This Court is being asked to rule on whether Shaw's conduct infringed the patents-in-suit and whether those patents are valid. If Shaw is not a party and the Court issues a decision contrary to its interest, other courts "will—and should—be impacted" by this Court's decision in subsequent proceeding over the validity of the patents. *See Klamath Irrigation*, 64 Fed. Cl. at 335. Fairness alone requires that Shaw be allowed to participate as a party when those issues are decided here.

**D. Shaw's Interests May Not be Adequately Represented by the Existing Parties**

Rule 24(a) requires that an intervenor make a "minimal" threshold showing that the existing parties may not adequately represent its interests. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538-39 n.10 (1972); *see also American Renovation and Constr. Co. v. United States*, 65 Fed. Cl. 254, 264 (Fed. Cl. 2005); *Klamath Irrigation*, 64 Fed. Cl. at 336; *Honeywell*, 2006 WL 1737938 at *6-7. Thereafter, "the burden is on those opposing intervention to show that representation for the absentee will be adequate." *United States v. AT&T*, 642 F.2d 1285, 1293 (D.C. Cir. 1980).

[3] There are also contrary decisions from this Court. *See Hage v. United States*, 35 Fed. Cl. 737 (1996); *Karuk Tribe of California v. United States*, 27 Fed. Cl. 429 (1993). As explained in *Klamath Irrigation*, however, these cases were incorrectly decided and go against the plain language of the Rule as well as the great weight of authority. *See* 64 Fed. Cl. at 332-334.

Intervention should be allowed if "there is serious possibility that the (absentee's) interest may not be adequately represented by any existing party." *Id.* As one commentator has noted:

> Given [the *Trbovich*] standard, the applicant should be treated as the best judge of whether the existing parties adequately represent his or her interests, and any doubt regarding adequacy of representation should be resolved in favor of the proposed intervenor.

6 MOORE'S FEDERAL PRACTICE §24.03[4][a], at 24-42 (3d. ed. 2005).

The current parties "may not" adequately represent Shaw's interest for several reasons. This is immediately shown by the differences between the Government's Answer (Document No. 10) and Shaw's proposed Answer, which is filed contemporaneously with this Memorandum. The Answers are similar in most respects, but there are a few key distinctions between the Government's response and Shaw's response to Sevenson's allegations. The most important difference is the parties' response to Paragraph 13 of the Complaint: the Government admits that "the Shaw Group, Inc." is still using phosphoric acid at the Colonie site. In contrast, Shaw denies that it is still using phosphoric acid at the Colonie site.[4] (Given that all parties admit that Shaw is the contractor working at the site, Shaw is in the best position to know if it is currently using phosphoric acid.) In the unlikely event that the Government loses on the issues of infringement and invalidity, the date that phosphoric acid stopped being used at the site is likely to be relevant to the determination of Sevenson's damages. The Government's answer does not put this fact in issue.

Second, Shaw has a stronger interest than does the Government in obtaining an order from this Court holding that the Sevenson patents-in-suit are either invalid or at

[4] Shaw also denies that "the Shaw Group, Inc." did any work at the Colonie site.

least not infringed by Shaw's work. The Government will defend against Sevenson's claims with an eye to the Colonie site only; Shaw is concerned with the effect of the patents-in-suit on Shaw's pending and future bids and work relating to environmental remediation projects at the Colonie site and other potential projects. Therefore, the Government cannot adequately represent Shaw's broader interest in defending against the Sevenson patents-in-suit. *See Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F. 2d 994, 998-99 (8th Cir. 1993) (holding that where interests of an existing party and the intervenor are "disparate, even though directed at a common legal goal, … intervention is appropriate"). For example, the Government may, for whatever reason, not prevail on the merits, which would leave Shaw with a potential obligation to indemnify the Government for Sevenson's damages. Afterwards, in a separate lawsuit, Shaw may prevail on the issue of non-infringement and/or invalidty of the Sevenson patents. This would place Shaw in the awkward situation of potentially being liable for the Government's infringement of the patents-in-suit, even though those patents are found to be invalid by another federal court in a proceeding where Shaw is a party.

Relatedly, intervention is appropriate so that Shaw may appeal an adverse judgment in case the Government does not. *See, e.g., In re Acushnet River*, 712 F. Supp. 1019, 1024 n.6 (D. Mass. 1989)(intervenor would be prejudiced because denial of intervention would leave it unable to participate on appeal). In the event that the Government is not the prevailing party in this case, the Government may be content to pursue Shaw for indemnity and not appeal the decision. Shaw, on the other hand, has a significant interest in appealing an adverse judgment so as to prevent potential

indemnification obligations to the Government and to ensure that the infringement and invalidity issues are fully litigated.

Also, the Government and Sevenson do not have the same interest that Shaw has in protecting Shaw's confidential information. Shaw is producing thousands of pages of confidential documents subject to the provisions of the Protective Order. Shaw does not suggest that the Government or Sevenson would intentionally disclose its confidential information during trial or otherwise. Experience, however, shows that parties in the heat of trial sometimes forget to take all necessary steps to protect a non-party's confidential information. *See Honeywell*, 2006 WL 1737938 at *7-8 (noting that information subject to a protective order was disclosed during open court). Shaw should not have to wait until *after* its confidential information is disclosed before it is allowed to intervene. *See Armour of America v. United States*, 70 Fed Cl. 240 (2006)(granting intervention as a matter of right to party after the Government inadvertently disclosed the intervenor's proprietary information during litigation, and noting that trade secrets and other proprietary information is an "interest" that justifies Rule 24(a) intervention), *AT&T*, 642 F.2d at 1293 (third party entitled to intervene because it had more incentive to appeal discovery issue than did the Government, which was concerned about the overall progress of the litigation).

Finally, Shaw's intervention will ensure that the entity against whom patent infringement was first alleged will be heard. This will promote the interest of fairness, lead to a more informed decision by the Court, and avoid piecemeal litigation. In short, Shaw's "minimal" burden of showing that the Government's representation of its interests "may" be inadequate is readily met. *Trbovich*, 404 U.S. at 538 n.10.

## IV. Permissive Intervention Is Also Appropriate Here

In the alternative, Shaw seeks to intervene pursuant to Rule 24(b), which states that anyone may be permitted to intervene in an action upon timely application, "when an applicant's claim or defense in the main action have a question of law or fact in common." The Court has discretion to allow the intervention, and in using that discretion it "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Rule 24(b).

Shaw meets all the requirements for permissive intervention. As discussed above, its application is timely and its participation in this lawsuit will not delay or prejudice the adjudication of the rights of the original parties in any way. Shaw does not seek to reset the Court's Amended Scheduling Order. Also, Shaw has a common interest with the Government in defending against Sevenson's claims of infringement and pursuing the affirmative defense of invalidity. Accordingly, in the event that the court finds that Shaw does not qualify to intervene as a matter of right, this court has discretion to allow Shaw to intervene under Rule 24(b).

## V. Conclusion

As explained above, Shaw is entitled to intervene as a party defendant pursuant to Rule 24(a). Shaw also qualifies for permissive intervention pursuant to Rule 24(b). Accordingly, Shaw requests that this Court grant its Motion to Intervene and enter an order stating that Shaw is now a party defendant in this proceeding.

**CERTIFICATE OF SERVICE**

I certify that the above and foregoing document was filed by using the Court's CM/ECF system so that a copy was sent to the following persons automatically via email, and that another copy was sent to them via first class mail, postage pre-paid, this day, August 1, 2006:

Brian E. Ferguson
MCDERMOTT, WILL & EMERY
600 13TH Street, N.W.
Washington, D.C. 20005

Kevin A. Szanyi
Nelson Perel
WEBSTER SZANYI LLP
1400 Liberty Building
Buffalo, New York 14202

Peter D Keisler
John J. Fargo
Marcy E. Cook
Civil Division
U.S. Department of Justice
Washington, D.C. 20530

__s/ J. Eric Lockridge____________________
J. Eric Lockridge