**IN THE UNITED STATES COURT**
**OF FEDERAL CLAIMS**

| | |
|---|---|
| SEVENSON ENVIRONMENTAL SERVICES, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 05-1075C |
| | ) Judge Thomas C. Wheeler |
| THE UNITED STATES | ) |
| Defendant. | ) |

Electronically Filed on August 10, 2006

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO BIFURCATE TRIAL ON LIABILITY FROM TRIAL ON DAMAGES AND TO STAY EXPERT DISCOVERY RELATED TO DAMAGES**

Defendant, the United States (the "Government"), respectfully submits this Reply in Support of its Motion to Bifurcate Trial on Liability from Trial on Damages and to Stay Expert Discovery Related to Damages [hereinafter Motion], Docket No. 24, and in response to plaintiff Sevenson Environmental Services, Inc.'s ("Sevenson") opposition thereto [hereinafter Opposition], Docket No. 25.

**Introduction**

In its Opposition to bifurcation, Sevenson attempts to portray this patent infringement case as a simple case which will require little effort by the court or the parties to resolve. In reality this case is well-suited for bifurcation because it involves five patents, over 100 asserted claims, over 150,000 pages of documents, and 27 depositions. The patented technology is complex, relating to two distinct treatment methods, each dealing with the formation of various

minerals on a molecular level. Despite Sevenson's unsupported allegations, the infringement issues presented by this case are complex, and there are legitimate invalidity issues. By attaching a damages expert report to its Opposition, Sevenson has demonstrated that it is currently prepared to proceed on every aspect of this case. In contrast, the Government, following this court's Scheduling Order, has yet to serve any written discovery. Contrary to Sevenson's assertions, the Government has shown that separate trials on liability and damages will serve judicial economy and that the balance of potential prejudice weighs in favor of bifurcation. For these reasons, this court should grant the Government's Motion.

**Argument**

Sevenson wrongly asserts that the Government has not satisfied its burden under Rule 42(b) of justifying separate trials in the instant case. First, although not cited by plaintiff in its opposition, the instant motion is made pursuant to Rule 42(c) of the Rule of the Court of Federal Claims ("RCFC"), which is a simple permissive rule lacking the requirements found in Rule 42(b).[1] However, even under the standard set forth by Rule 42(b), the Court "is vested with extremely broad discretion to determine whether bifurcation is warranted on the facts of each case, guided by its assessment of what trial format will be conducive to the promotion of judicial economy and the avoidance of prejudice." Naxon Telesign Corp. v. GTE Info. Sys., Inc., 89

[1] Sevenson neglected to cite RCFC 42(c) in its Opposition, instead simply arguing that the Government did not meet its burden under FRCP 42(b). RCFC 42(c) provides that "upon order of the court, a trial may be limited to the issues of law and fact relating to the right of a party to recover, reserving the determination of the amount of recovery, if any, for further proceedings." R. Ct. Fed. Cl. 42(c). The plain language of RCFC 42(c) indicates that a separate determination of liability pursuant to the rule does not have to meet the preliminary finding requirements of FRCP 42(b). See City of Chicago v. Envtl. Def. Fund, 511 U.S. 328, 338 (1994) (holding that when particular language is included in one section of a statute, but omitted in another, it is presumed that the omission of that language is intentional and purposeful).

F.R.D. 333, 341 (N.D. Ill. 1980). Even Congress has expressed its recognition that separate trials are appropriate in patent cases. See 28 U.S.C. § 1292(c)(2) (providing that a finding of liability for patent infringement with no finding on damages is an appealable interlocutory order). The Government has amply demonstrated that separate trials will serve judicial economy and that the balance of potential prejudice weighs in favor of bifurcation. See Fed. R. Civ. P. 42(b); Trading Techs. Int'l, Inc. v. eSpeed, Inc., 431 F.Supp.2d 834, 837 (N. D. Ill. 2006).

## I. Bifurcation of the Instant Case will Serve Judicial Economy

Contrary to Sevenson's assertions, the Government has demonstrated that bifurcation of the instant case will serve judicial economy. Importantly, when determining whether bifurcation would promote judicial economy, courts have looked to whether the case requires: "(a) need for voluminous documents to resolve damages issues; (b) complex infringement issues; (c) multiple patents, infringing products, claims, counterclaims, or parties; or (d) the probability that the defendant would prevail on the infringement issue, thereby eliminating the need to address the issue of damages." eSpeed,431 F.Supp.2d at 839-40 (citing Real v. Bunn-O-Matic Corp., 195 F.R.D. 618, 621 (N.D. Ill. 2000)). Courts also look to the potential overlap of evidence and witnesses between the two trials. eSpeed, 431 F.Supp.2d at 837.

First, although Sevenson attempts to minimize the magnitude of this case, the discovery provided from the New York litigation is already voluminous. Prior to any discovery taken by the Government in the instant action, there are already over 150,000 pages of documents and 27 depositions produced from that litigation. Sevenson argues that the Government's reliance on Novopharm Ltd. v. Torpharm, Inc., 181 F.R.D. 308, 311 (E.D.N.C. 1998) and Smith v. Alyeska Pipeline Serv. Co., 538 F.Supp. 977, 983-84 (D. Del. 1982) is misplaced because those cases

involved "voluminous documents" and "millions of documents" respectively. Opp. at 13-14. However, the instant case, which already involves over 150,000 documents and 27 depositions, undoubtedly also qualifies as a case involving "voluminous documents." Moreover, although Sevenson attached its damages expert report from the New York litigation to its Opposition as proof that "expert discovery should not be lengthy or complex," Opp. at 6, it tends to demonstrate just the opposite: this case will be a complex battle between expert witnesses both as to liability and damages. See Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Case No. 1:02-cv-00527, W.D.N.Y. (complaint filed July 23, 2002); Sevenson Envtl. Servs., Inc. v. The IT Group, Case No. 1:00-cv-00377, W.D.N.Y. (complaint filed May 3, 2000). Sevenson alleges that only a limited number of documents are needed to make a damages determination. However, the Government maintains the right to review all of the documents pertinent to the case, and have its damages expert review all of those documents, in order to make a damages determination and to introduce all relevant documents needed to prove its case. Therefore, even presuming that Sevenson has completed its damages report, this case may still require "voluminous documents" to resolve the damages issues, which favors bifurcation.

Second, Sevenson wrongly asserts that the patent infringement issue presented by this case is not complex. Although Sevenson does not dispute that the infringement issue in the instant case may be determined by claim construction, Opp. at 11, this fact alone does not make the patent infringement issue simple. The nature of the technology at issue defines the complexity of the infringement issue. See Real, 195 F.R.D. at 623 (holding that "the technology at issue [a beverage dispensing machine] does not involve concepts so complex as to require bifurcation."). Unlike in Real, the technology in the instant case is based on chemical "bonding

reactions involving lead and radionuclides with sulphates and phosphates." Opp. at 3. Each patent deals with the formation of various minerals at the molecular level. Defendant anticipates that one issue will be whether the Sevenson patents cover a "one-step" application of phosphoric acid. That issue will likely require expert testimony regarding stoichiometric relationships and calculations relating to the chemical reactions taking place. It is clear that the chemical soil-remediation patented technology is complex, favoring bifurcation.

Third, Sevenson is asserting five patents and over 100 claims covering two distinct technological areas in the instant litigation. Although Sevenson attempts to minimize this factor, the existence of multiple patents and claims asserted has contributed to courts' decisions to bifurcate cases. For example, in William Reber, LLC v. Samsung Elecs. Am., Inc., 220 F.R.D. 533 (N.D. Ill. 2004) the court noted that where the case involved two patents and thirteen claims, circumstances warranted bifurcation. Reber, 220 F.R.D. at 538. See also Princeton Biochemicals, Inc. v. Beckman Instruments, Inc., 180 F.R.D. 254, 257-58 (noting that even with only one patent asserted, the plaintiff was likely to present proof on more than one claim, increasing the complexity of the action). Sevenson claims that because there is only one allegedly infringing process, the number of claims is immaterial. Opp. at 12. However, as discussed in the Government's Motion, both infringement and invalidity are determined on a claim-by-claim basis. Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1351 (Fed. Cir. 2001). Regardless of the number of infringing processes, the court must proceed with an infringement and invalidity analysis for each and every claim asserted. With over 100 claims asserted, including 18 independent claims, this factor favors bifurcation.

Fourth, as asserted in its Motion, the Government believes that it is likely to prevail on the infringement issue. Mot. at 3. Sevenson's blanket assertion that it is likely to succeed on liability is completely unsupported. Opp. at 11. Sevenson states that "[b]ased on the proceedings that have taken place in the Buffalo case, it is clear" that Sevenson will prevail. However, no claim construction was ever completed in the New York Litigation, and the case closed with the dismissal of Sevenson's complaint under 28 U.S.C. § 1498 and with final judgment entered against Sevenson on all counts.[2] See Ex. A (May 11, 2006 Decision and Order in Case No. 02-cv-527). In addition, Sevenson merely claims that "there is nothing in the prior art" that could invalidate the patents-in-suit. Opp. at 11. Based on these unsupported statements, it is difficult to understand how Sevenson could possibly assert that it is "clear" that Sevenson is likely to succeed on liability. Ironically, Sevenson asserts that the Government has presented only "generalities" in support of its argument that there are significant liability issues. Opp. at 12. In fact, the Government showed that the parent patent to all of the patents-in-suit had all but two of its claims cancelled by the United States Patent and Trademark Office ("USPTO") in light of invalidating prior art. Mot. at 3-4. Many of the claims in the currently asserted patents contain the same material that was cancelled by the USPTO. These claims should also be invalid in light of the same prior art or in combination with other art. Because all of the patents-in-suit claim similar technology to the parent patent, they will also face similar invalidity issues. Moreover, this case is still in a preliminary discovery phase; unlike Sevenson, which has litigated this case

[2] Sevenson has appealed the final judgment in the New York Litigation to the Federal Circuit.

for over six years, the Government expects to further develop its infringement and invalidity defenses. Because the Government may prevail on invalidity, this factor favors bifurcation.

Finally, Sevenson's argument that the instant case should not be bifurcated because two of their witnesses may have to testify at both trials is flawed. "While, in general, an overlap of proof serves to caution against bifurcation, a mere minor overlap of evidence between the liability phase and the damage phase has not prevented courts from ordering an otherwise justified bifurcation." F&G Scrolling Mouse, LLC v. IBM Corp., 190 F.R.D. 385, 388 (M.D.N.C. 1999). In the instant case, Sevenson states that its portion of the damages trial will involve "one to two fact witnesses" whose testimony "would not be lengthy" and that it expects to rely on a special damages expert, who would not testify at the liability trial, to support its damages calculation. Opp. at 2, 10-11. This mere minor overlap of evidence between the liability phase and damage phase of the instant case does not counsel against bifurcation.

In sum, bifurcation of the instant case will serve the court's interest in judicial economy because there are voluminous documents which may be needed to resolve the damages issues; there are complex infringement issues; there are multiple patents and claims involved; the Government may prevail, thereby eliminating the need to address the issue of damages; and there will be little overlap of evidence between the liability and damages trials.

## II. Bifurcation of the Instant Case will not Prejudice Sevenson

The lack of any suggestion of prejudice to Sevenson is also significant. "Under Rule 42(b), prejudice is a court's most important consideration when balancing the equities." Reber, 220 F.R.D. at 536. In a typical patent litigation case, the court must balance any prejudice that can arise as a result of jury confusion against the prejudice caused by the delay of two separate

trials. See Real, 195 F.R.D. at 621. However, "the court should examine the individual situation of each party to ensure that no one party is placed at a distinct disadvantage as a result of the court's decision." Scrolling Mouse, 190 F.R.D. at 391. In the instant case, the Government will be placed at a distinct disadvantage if this case is not bifurcated.

As its Opposition demonstrates, Sevenson, due to over six years of experience with this patent litigation, is already prepared to present its infringement, validity, and damages case. See, e.g., Ex. A. In contrast, the Government is in the process of familiarizing itself with over 150,000 documents and 27 depositions from the New York Litigation. Also, following this court's Scheduling Order, the Government has not served any written discovery of its own. See Am. Scheduling Order of June 8, 2006 ("Written discovery will not be served upon either party prior to August 28, 2006."). Under these circumstances, and the factors discussed above, it is evident that the Government will be placed at a distinct disadvantage if this case is not bifurcated as it will have to prepare both its liability and damages case at the same time. In addition, because the Government is willing to proceed with fact discovery relating to damages, there is no other "definable prejudice to plaintiff." See Princeton, 180 F.R.D. at 259 (holding that because defendant was willing to produce sales figures, plaintiff could proceed with settlement evaluations and could demonstrate the commercial success of the invention). The only potential disadvantage to Sevenson is the delay in having a possible second trial. However, Sevenson has not identified any prejudice that could result from that delay. Having spent six years in litigation in the wrong forum, Sevenson would be hard pressed to claim prejudice by some additional delay preparing for a separate damages trial.

**Conclusion**

For the reasons stated above and in defendant's opening brief, defendant requests that the Court grant defendant's motion for a separate determination of infringement and invalidity prior to determination of damages and to stay expert discovery related to damages.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN J. FARGO
Director

s/ Marcy Cook
________________________________
MARCY E. COOK
Attorney
Civil Division
U.S. Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0459
Facsimile: (202) 307-0345

Dated: August 10, 2006