**IN THE UNITED STATES COURT**
**OF FEDERAL CLAIMS**

| | |
|---|---|
| **SEVENSON ENVIRONMENTAL SERVICES, INC.,** Plaintiff, vs. **THE UNITED STATES,** Defendant. | **Case No.: 05-1075C**<br>**Judge Thomas C. Wheeler** |

**Electronically Filed August 18, 2006**

**SEVENSON'S OPPOSITION TO SHAW**
**ENVIROMENTAL, INC.'S MOTION TO INTERVENE**

Plaintiff Sevenson Environmental Services, Inc. ("Sevenson") respectfully submits this response in opposition to Shaw Environmental, Inc.'s ("Shaw") motion to intervene (docket no. 26) (hereafter, "Motion").

## I. Introduction

Shaw must satisfy "four" requirements to intervene in this action. First, the motion must be timely. Second, Shaw must have "an interest relating to the property or transaction which is the subject of the action." Third, it must be "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest." Fourth, its interest is not "adequately represented by existing parties." *American Maritime Transport, Inc. v. United States*, 870 F.2d 1559, 1560 (Fed. Cir. 1989).

"Although 'the requirements for intervention are to be construed in favor of intervention' . . ., courts routinely deny motions to intervene." *John R. Sand & Gravel Co. v. United States*, 59

Fed. Cl. 645, 648 (Fed. Cl. 2004), *quoting and citing American Maritime*, 870 F.2d at 1561, 1563, *affirmed*, 143 Fed. Appx. 317 (Fed. Cir. 2005).

Shaw's Motion should be denied based on the governing law applicable to each of these requirements. Most clearly, Shaw misstates the law governing the "fourth" requirement and utterly fails to meet its burden of rebutting "the presumption of adequate representation [by the government] through a showing of collusion, adversity of interest, or nonfeasance." *See, e.g., John R. Sand & Gravel*, 59 Fed. Cl. at 656; *Freeman v. United States*, 50 Fed. Cl. 305, 309-10 (Fed. Cl. 2001).

Significantly, Shaw's proposed answer underscores the lack of any adversity of interest between it and the government in this case. Shaw plans to assert the exact same defenses as the government: the phosphoric acid treatment method used at the Colonie, New York site did not infringe the claims in the Sevenson patents or, if it did, then the Sevenson patents are invalid based on prior art. Shaw's claim that the government "may not" adequately represent its interests (Memorandum of Law at 10-12) was not crafted to address the governing legal standard and otherwise fails to prove an adversity of interest concerning the core issues in this case.

The Court's recent decision in *Honeywell Int'l, Inc. v. United States*, 2006 WL 1737938 (Fed. Cl. June 23, 2006), does not support a contrary result. In *Honeywell*, the Court emphasized that, for policy reasons, the government would ***not*** assert all of the defenses claimed by the proposed intervenor. Here, there is no such representation by the government. To the contrary, as reflected by its recent motion to bifurcate, the government fully intends to press the same issues of non-infringement and invalidity that Shaw intends to assert.

This Court has repeatedly exercised its discretion to refuse to permit "permissive" intervention where the moving party relies on the same defenses as the government. In such

cases, this Court has held that the "duplicative nature of the evidence will not shed any additional light on [the issues] . . . [and] [a]llowing the intervenor-applicants to intervene in this case would threaten expedient disposition of this action." *John R. Sand & Gravel*, 59 Fed. Cl. at 657-58. Where the movant has failed to prove that its interests were not adequately represented by the government, this Court routinely denies permissive intervention as a party defendant.

## II. Procedural Background

### A. The Pleadings

On October 11, 2005, Sevenson filed this lawsuit against the government asserting five counts for patent infringement.

On February 10, 2006, the government filed its answer. At paragraphs 27-31, the government particularized its defenses. These defenses are non-infringement (para. 27), invalidity (para. 28), limits on recoverable damages (para. 29), statute of limitations (para. 30) and other presently unknown defenses (para. 31).

Notably, Shaw's proposed answer asserts the identical defenses in paragraphs 27-31 of its proposed answer. In each paragraph, Shaw begins with the phrase "Shaw joins the government in stating that . . ." A comparison of the government's answer and Shaw's proposed answer establishes that Shaw does ***not*** allege any defenses not already advanced by the government in this case.[1]

[1] On August 15, 2006, Shaw filed a motion to "substitute" proposed answer (docket no. 29). In its motion, Shaw fails to identify the differences between its "substitute" and "original" proposed answers. However, a brief comparison of the substitute and original proposed answers suggests that the defenses set forth in paragraphs 27-31 remain unaltered.

**B. Shaw's Awareness of This Action**

Shaw's Motion was filed on August 1, 2006, nearly eleven months after Sevenson commenced this lawsuit in October 2005.

This case arrived in this Court after years of litigation between Sevenson and Shaw in the Western District of New York before Judge Arcara. As a result, Shaw probably became aware of this lawsuit shortly after it was filed. It was certainly aware of this lawsuit no later than November 3, 2005, when Sevenson brought it to Judge Arcara's and Shaw's attention in open court during a hearing (*see* Exhibit A, Nov. 3, 2005 Hearing Transcript at 8, 9, 47). Shaw's attorney acknowledged during that hearing that Shaw was aware of the fact that Sevenson had instituted the present action. (*Id.* at 47).

On April 17, 2006, the government filed a motion pursuant to RCFC 14(b) requesting this court to issue a notice to Shaw to appear in this action. On April 19, 2006, the Court issued an Order returning the government's motion because it was untimely. Sevenson assumes that Shaw was aware of this Court's Order. As a result, since April 2006, Shaw should have been aware of the need to file a timely motion to intervene if it wished to participate in this lawsuit. Nonetheless, Shaw waited more than four months before filing this motion.

**C. Pre-Trial Proceedings**

On March 31, 2006, Sevenson and the government filed their Joint Preliminary Status Report. This Status Report was based on several meetings between the parties concerning a case management plan.

On April 14, 2006, this Court issued a Scheduling Order based on the Status Report and a preliminary scheduling conference with counsel for the parties.

On April 28, 2006, the parties complied with the initial item in the Scheduling Order by exchanging their initial disclosures pursuant to Rule 26(a)(1).

On June 9, 2006, this Court granted a motion extending dates relating to the *Markman* hearing. Under the present deadlines, the parties shall exchange claim construction positions, meet and confer and file a joint claim construction brief by October 1, 2006. The *Markman* hearing is scheduled for January 9, 2007.

Shaw's Motion arrives after all of these significant events have occurred.

**D. Shaw Elected To Voluntarily Dismiss Its Counterclaims Of Non-Infringement and Invalidity In The Buffalo Case**

By Order dated March 22, 2006, the Buffalo court granted Shaw's summary judgment motion based on its government contractor immunity defense under 28 U.S.C. §1498. The Buffalo court's decision did not affect Shaw's pending counterclaims based on non-infringement of the Sevenson patents and invalidity.

On April 17, 2006, Sevenson filed a motion in the Buffalo court for entry of judgment on fewer than all claims under Fed. R. Civ. P. 54(b). Such a judgment would permit Sevenson to perfect its appeal on the issue of the section 1498 defense. On May 5, 2006, Shaw filed its response. (Exhibit B). Shaw stated that it did not desire to pursue its counterclaims of non-infringement and invalidity unless Sevenson's appeal was successful. Instead, Shaw suggested that the Court either: (a) enter a judgment pursuant to Fed. R. Civ. P. 54(b) and stay Shaw's counterclaims pending the outcome of Sevenson's appeal or (b) enter a judgment dismissing Shaw's counterclaims without prejudice to Shaw re-filing its counterclaims if Sevenson's appeal was successful.

Shaw's May 5, 2006 response was made with knowledge that the issues of non-infringement and invalidity would be litigated between Sevenson and the government in this

Court. Nonetheless, Shaw decided to waive its right to litigate these same issues in the Buffalo court and, instead, was fully satisfied with the result achieved by virtue of the section 1498 defense. Ultimately, the Buffalo court dismissed the entire case without prejudice to Shaw re-filing its counterclaims if Sevenson's appeal was successful. (Exhibit C).

The unique circumstances of the disposition of Shaw's counterclaims in the Buffalo court are significant for two reasons. First, they demonstrate Shaw's waiver of the right to litigate the issues of non-infringement and invalidity. This waiver contradicts the claims in its Motion that it needs to intervene in this case to prevent the supposed harms occurring if it is unable at present to establish its right to use phosphoric acid in connection with soil remediation projects. Second, it establishes that Shaw's interest in pursuing these issues was entirely secondary to simply defeating Sevenson's claims for patent infringement. Indeed, the Buffalo court's order makes clear that Shaw's counterclaims may be re-filed only if Sevenson's appeal is successful. (Exhibit C).

## III. Argument

### A. Shaw's Motion Completely Fails To Rebut The <u>Presumption Of Adequate Representation By The Government</u>

In its Motion, Shaw failed to recognize that this element for intervention required it to overcome the presumption of adequacy of representation by the government with a specific showing of "collusion, adversity of interest or nonfeasance." Shaw presented no evidence, nor could it, of collusion between Sevenson and the government, adversity of interest with the government concerning the defenses of non-infringement and invalidity or nonfeasance by the government. On this ground alone, Shaw's Motion should be denied.

Shaw's entire argument is based on the false legal standard requiring it only to articulate hypothetical and speculative reasons why its interest "may not be adequately represented" by the

government. (Memorandum of Law at 9-10) Even assuming, *arguendo*, that this Court adopts Shaw's definition of the legal standard applicable to this required element, Shaw's factual arguments plainly lack merit.

**1. Shaw's Concerns Regarding Factual Errors In The Government's Answer Are Easily Corrected And Fail To Justify Intervention**

For its main argument, Shaw claims that the government fails to adequately represent its interest in establishing the fact that phosphoric acid is no longer being used at the Colonie site. Shaw claims that the government's failure to deny this fact in its answer "does not put this fact in issue." (Memorandum of Law at 10) This is incorrect. Sevenson is entitled to recover damages based on the number of tons of soil treated using the phosphoric acid method covered by its patents. It is not entitled to recover damages based on the number of tons of soil treated using some other treatment method. If the government made a mistake in its answer and phosphoric acid is no longer used, then this fact will limit the extent of Sevenson's damages.

Sevenson has the burden to establish its damages claim by proving the number of tons of soil treated at the Colonie site using phosphoric acid. The government has the obligation in discovery to produce accurate information reflecting such usage. Ultimately, the number of tons of soil treated with phosphoric acid should be a matter of public record and undisputed. Shaw's position depends on the illogical assumption that notwithstanding the true facts, the government will be bound to pay damages based on the total number of tons of soil treated at the site rather than the total number of tons of soil treated with phosphoric acid. Sevenson (and presumably the government) is prepared to accept the fact that it is not entitled to damages for tons of soil treated at the site after the government stopped using the phosphoric acid treatment method covered by its patents. The need to establish the correct facts on this issue provides no justification for allowing Shaw to intervene in this lawsuit.

Shaw's remaining quibble is based on the government's admission that "the Shaw Group" did the work at the Colonie Site. (Memorandum of Law at 10) Again, this mistake is easily corrected without justifying Shaw's intervention. Sevenson (and presumably the government) is prepared to accept that it is Shaw Environmental Services, Inc. and not The Shaw Group that did the work at the Colonie site.

Notably, Shaw does not claim, nor could it, that the government is adverse to its own interest on these matters, intends to "collude" with Sevenson on them or will somehow stipulate to an erroneous damages calculation out of nonfeasance.

**2. Shaw's Claim That It Has A Broader Interest In The Patent Issues At Stake In This Case Overlooks The Government's Central Role In Environmental Clean-ups**

Next, Shaw offers the rank speculation that the government does not share its interest in the infringement and validity issues. (Memorandum of Law at 10-11) ("The government will defend against Sevenson's claims with an eye to the Colonie site only; Shaw is concerned with the effect of the patents-in-suit on Shaw's pending and future bids and work relating to environmental remediation projects at the Colonie site and other potential projects.")

This argument fails to recognize the government's central role in environmental cleanup projects. The government has a far "broader" interest than Shaw concerning the patented and non-patented methods available for soil remediation projects across the country. The Army Corps of Engineers has the responsibility for cleaning up government contaminated sites. The Colonie site is only one such site. In addition, the Environmental Protection Agency is responsible for supervising and/or cleaning up hundreds (if not thousands) of other contaminated sites. Shaw's claim that the government is only concerned about the impacts of this case as it relates to one site and one cleanup project is incorrect.

In fact, during the course of settlement discussions, the government has insisted that any resolution in this case must involve a paid-up license permitting it unfettered use of the Sevenson technology at ***any*** government supervised or managed cleanup site. Such a demand plainly reflects the government's "broader" interests in the remediation treatment methods claimed by the Sevenson patents-in-suit.

Shaw's argument concerning the government's possible lack of interest in pursuing an appeal is likewise incorrect. Again, the government's interest in the patent issues in this case is not based solely on the Colonie site. It has potential impacts on numerous sites currently under its management and operation and unknown sites that are likely to come within its jurisdiction in the future. In addition, if the government does not appeal, then any concerns about *stare decisis* are significantly reduced. Finally, this same argument could be made in any motion for intervention. Shaw offers no reason why the interest of the existing party in this case, *i.e.* the government, in pursuing an appeal of an adverse result is any less than it would be for a party in any other federal case. To the contrary, the government has every incentive to pursue full and final disposition of the relevant issues in this case.

Regardless, Shaw's argument does not establish any adversity of interest between it and the government concerning the patent issues in this case. Even if Shaw had a "broader" interest than the government on the patent issues relating to the use of phosphoric acid for soil remediation projects, which it clearly does not, the difference "is, at most, one of degree and not of kind" and insufficient to satisfy this requirement for intervention. *See John R. Sand & Gravel*, 59 Fed. Cl. at 656.

### 3. Shaw's Concerns About Protecting Confidentiality Are Misplaced

There is no evidence that Sevenson or the government intends to release information designated by Shaw as confidential in the Buffalo case. To the contrary, the government has taken several steps to insure that this will not occur.

Because of the unique circumstances of this case, Sevenson and the government agreed that as the first step in discovery the government should review the documents and deposition transcripts generated in the Buffalo case. Before this review occurred, the government contacted Sevenson and Shaw and reached an understanding concerning its review of such materials. In particular, the government agreed that it would be bound by all of the provisions of the protective order in the Buffalo case and, in addition, agreed to enter into a separate protective order in this case that covered materials designated as confidential. This process was actually initiated by the government thus establishing its intent to maintain the confidentiality of all information designated as confidential in the Buffalo case. Shaw was satisfied by this arrangement as evidenced by its decision to provide the government with a complete set of all documents and deposition transcripts from the Buffalo case.

In *Armour of Am. v. United States*, 70 Fed. Cl. 240, 245-46 (Fed. Cl. 2006), this Court addressed a motion to intervene that was based on the government's improper disclosure of proprietary information. Based on this act of malfeasance by the government, this Court permitted intervention for the limited purpose of protecting the intervenor's proprietary information. The intervenor was not permitted to participate in discovery or any other aspect of the case. Here, there is no evidence that the government has disclosed or intends to disclose any information designated by Shaw as confidential in the Buffalo case. It has taken the further step

of entering into a protective order obligating it to maintain the confidentiality of such information.

Shaw's concerns about disclosure of its proprietary information in its absence rings hollow and, by itself, fails to rebut the presumption that its interests are not adequately represented by the existing parties. However, if this Court is persuaded by this argument, any order granting intervention should be limited to Shaw's interest in protecting its alleged proprietary information, consistent with the holding in *Armour*.

**4. <u>There Is Nothing Unfair In Denying Shaw's Motion To Intervene</u>**

Shaw states that "intervention will ensure that the entity against whom patent infringement was first alleged will be heard." (Memorandum of Law at 12) In making this argument, Shaw ignores its own decision to abandon its counterclaims for non-infringement and invalidity unless Sevenson is successful on its appeal in the Buffalo case. At the time it made this decision, Shaw knew that the government intended to assert these patent defenses. By choosing to waive its right to litigate these issues in the Buffalo case, Shaw itself created the situation where these defenses would be litigated by the government in the first instance in this case.

5. **<u>Conclusion</u>**

Shaw offers no evidence of collusion, adversity of interest or nonfeasance. The government will press the issues of non-infringement and invalidity and, in addition, probably has a greater interest in a successful outcome. Shaw cannot rebut the presumption that its interests are adequately represented by the government.

**B. Because Shaw's Interests Are Adequately Represented By The Government, This Court Should Not Exercise Its Discretion To Allow Permissive Intervention**

"The court has broad discretion in deciding whether to allow permissive intervention." *See John R. Sand & Gravel*, 59 Fed. Cl. at 657.

In exercising its discretion, "the court must consider whether an intervenor would burden or prolong the proceedings." *Freeman v. United States*, 50 Fed. Cl. 305, 310-11 (Fed. Cl. 2001); *see John R. Sand & Gravel*, 59 Fed. Cl. at 657 ("'the court shall consider whether the intervention would unduly delay or prejudice the adjudication of the rights of the original parties.'"), *quoting Moore's Federal Practice* §24.10[1].

Shaw offers two paragraphs in support of its request for permissive intervention. (Memorandum of Law at 13) On the questions of "burden," "prolong the proceedings," "delay" and "prejudice," Shaw states only that it "does not seek to reset the Court's Amended Scheduling Order." (*Id.*) This is similar to the argument for permissive intervention that was rejected by this Court in *John R. Sand & Gravel*, 59 Fed. Cl. at 657-58 (quoting from intervenor-applicant's brief: "'[w]e do not want to do anything that would delay the briefing schedule. We do not want to . . . interject any new issues.").

Where the intervenor-applicant's interests are adequately represented by the government, its involvement as a party serves no purpose other than to burden the proceedings and "threaten to delay expedient disposition" of the action:

> 'The duplicative nature of the evidence will not shed any light on this issue. The ultimate objectives of the [intervenor-] applicants and defendant are the same, and there is a presumption that the government adequately represents the [intervenor-] applicants' interests. Allowing the [intervenor-] applicants to intervene in this case would threaten expedient disposition of the action.'

*John R. Sand & Gravel*, 59 Fed. Cl. at 657-58, *quoting Freeman*, 50 Fed. Cl. at 311.

In this case, as in the above cited Court of Federal Claims cases, "it would be unrealistic to conclude that granting intervention would not affect this litigation." *Id.* at 657. As reflected by its actions in the Buffalo case, Shaw is plainly prepared to devote unlimited resources to advance its issues. Indeed, Shaw's motion to intervene was evidently prepared by three lawyers. Apparently, the work of these three lawyers was not sufficient as reflected in its recent decision to file yet another motion to "substitute" a new proposed answer for its "original" proposed answer. Based on Sevenson's experiences in the Buffalo case, this will be only the tip of the iceberg if Shaw is permitted to intervene and thereby duplicate the discovery and trial activities that the government will conduct on the relevant issues of infringement and validity.

As the Court has recognized, where the intervenor-applicant relies on the same defenses as the government and its interest is thereby adequately represented, a motion for permissive intervention should not be granted.

**C. This Court Should Conclude That Shaw Has Failed To Establish The Other Requirements For Intervention, And Deny Its Motion For These Separate And Independent Reasons**

**1. Timeliness**

The Federal Circuit recently held that "[t]imeliness in requesting intervention is 'to be determined by the court in the exercise of its sound discretion.'" *John R. Sand & Grave Co. v. Brunswick Corp.*, 143 Fed. Appx. 317, 319 (Fed. Cir. 2005).

The record provides ample grounds for this Court to deny Shaw's motion for intervention because it is untimely. Sevenson's lawsuit was filed in October 2005 and brought to Shaw's attention no later than November 3, 2005 (Exhibit A). Shaw's Motion to intervene was filed ten months later in August 2006.

Shaw concedes that it has been long aware of Sevenson's lawsuit stating that it "has participated as an active observer for several months." During the time period that Shaw acted as an observer, Sevenson, the government and this Court devoted considerable efforts aimed at an effective case management plan. The existing parties exchanged Rule 26(a)(1) disclosures and are operating under a tight schedule to complete the *Markman* process. None of these decisions and efforts was made with any belief that Shaw would be a party defendant. If Shaw is permitted to intervene in this case at this late date, it may be necessary to re-consider all of these decisions in order to accommodate the impact this new party will have on this case.

In arrogant fashion, Shaw states only that it "recently decided that it would be in its best interest to participate in this case as a named party." (Memorandum of Law at 3). Thus, according to Shaw, the "interests" of this Court, Sevenson and the government in the efficient disposition of this lawsuit are irrelevant. Shaw's "best interest" is apparently all that matters and this Court and the parties must accommodate it. Shaw, of course, does not dictate the actions of this Court. The Federal Circuit recognized that timeliness issues are at the heart of this Court's role in the enforcement of justice and, as a result, grants the Court the inherent right to deny requests for intervention on grounds of untimeliness.

Shaw's failure to offer any excuse for delaying its Motion to intervene until nearly eleven months after this action was started is reason enough to deny its motion as untimely. Sevenson is already prejudiced by Shaw's Motion. Instead of actively preparing for the *Markman* deadlines in the Amended Scheduling Order, it has been forced to research and respond to this Motion and, in addition, Shaw's new motion to substitute a proposed amended answer. History suggests that Sevenson, the government and this Court will be severely burdened by Shaw's participation.

In evaluating the timeliness of Shaw's Motion, this Court should also consider Shaw's failure to act on the government's attempt in April 2006 to issue a notice for its participation as well as Shaw's decision in May 2006 in the Buffalo case to waive its right to press the issues of non-infringement and invalidity unless Sevenson succeeds on its appeal on the government contractor defense issue. Apparently, Shaw was content to waive its right to litigate these issues in the Buffalo case and allow them to be addressed by the government. Months passed before Shaw suddenly changed its mind and decided its best interest would be served only if it intervened as a party in this case. In the meantime, the parties and this Court have embarked on a case management plan that was instituted with the understanding that no other parties would be involved.

In disingenuous fashion, Shaw claims that it will suffer "great prejudice" if it is unable to litigate the issues of infringement and validity in this case. While admitting that it asserted counterclaims in the Buffalo case based on these issues, Shaw states that the "court dismissed Shaw's counterclaim, however, so that Sevenson could pursue an appeal of the summary judgment granted on §1498 grounds." Shaw neglects to mention that the Buffalo court issued such an order at Shaw's invitation! Thus, it was Shaw's decision, not the Buffalo court's fiat that now prevents it from litigating the issues of infringement and invalidity. This is the type of sharp practice that Shaw engaged in for years in the Buffalo case. It is not needed here and its effort to intervene in this case eleven months after it was initiated should be denied on timeliness grounds.

**2. Shaw Does Not Have A Sufficient Interest In This Litigation Because An Adverse Ruling Would Not Affect Its "Core" Business**

In *American Maritime Transport, Inc. v. United States*, 870 F.2d 1559 (Fed. Cir. 1989), the Federal Circuit affirmed the denial of a motion to intervene because the applicant failed to establish "an interest relating to the property or transaction which is the subject of the action."

In *American Maritime Transport*, the Federal Circuit held that "[i]ntervention is proper only to protect those interests which are 'of such a *direct* and *immediate* character that the intervenor will either gain or lose by the *direct* legal operation and effect of the judgment'. . . . The interest thus may not be either indirect or contingent. . . . The interest must also be a 'legally protectible interest.' . . . . [T]he requirement of a 'legally protectible interest' . . . require[s] something more than merely an economic interest. . . . What has been required is that 'the interest be one which the substantive law recognizes as belonging to or being owned by the applicant.'" 870 F.2d at 1561-62, *citations omitted*. (Emphasis in original.)

The *American Maritime Transport* court applied these principles to affirm the denial of a motion to intervene brought by a competitor of the plaintiff notwithstanding the fact that a favorable decision for the plaintiff would leave the intervenor-applicant in a disadvantageous position. "As just one shipper in the marketplace, [the intervenor-applicant] assumes the risk that a potential competitor will strike some favorable contract with a third party, including the government, and thus be in a favorable position with [the intervenor-applicant] should head to head competition come about." The court held that the economic interests of competitors were insufficient to justify intervention. 870 F.2d at 1159-62.

Shaw's interest in Sevenson's lawsuit against the United States is no different than the intervenor-applicant in *American Maritime Transport*. Shaw has no ownership claim in the patents that are the subject of this action. Its interests are limited to its duty to indemnify the

government under its contract relating to the Colonie site and, in addition, its concern that an adverse ruling against the government may affect its ability to secure soil remediation contracts if it is unable to propose the use of phosphoric acid. These are purely economic interests and insufficient to justify intervention.

In *Honeywell Int'l, Inc. v. United States*, 2006 WL 1737938 (Fed. Cl. June 23, 2006), this Court carved out a limited exception to the general rule that purely economic interests are insufficient. This Court emphasized that the allegedly infringing device used by the intervenor-applicant in *Honeywell* "comprise[d] the core of [its] display business." 2006 WL 1737938 at *4.

In order to fall within the *Honeywell* exception, Shaw claims that an adverse decision will have "a serious impact on [its] soil remediation business." Shaw contends "upon information and belief" that it "has lost at least two soil remediation contracts due to the patents-in-suit" and "anticipates that it will continue to lose soil remediation contracts if it is unable to perform the same phosphoric acid treatment process in this case." (Memorandum of Law at 8)

An environmental cleanup involves many activities. At the Colonie site, for example, soil remediation is only one component of the overall cleanup. Shaw's core business is its purported ability to manage all aspects of an environmental cleanup pursuant to applicable rules and regulations. Conducting the soil remediation operations at a particular site such as Colonie is not Shaw's core business. Moreover, Shaw has used many approved methods to treat contaminated soil. Its approach is not limited to phosphoric acid. In fact, Shaw's argument that this case will severely impact is business is belied by the fact that Shaw now claims it is no longer using phosphoric acid at the Colonie site and, instead, is using a suitable alternative. In addition, the fact that Shaw may have lost two soil remediation contracts because it could not use

phosphoric acid (assuming the validity of this statement without evidence) hardly represents a significant threat to its business.

Shaw's actions in the Buffalo case are inconsistent with its claim in this case that its core operations are seriously threatened by any ruling concerning the validity of the Sevenson patents. If its core business interests were threatened, it would not have been content to dismiss its counterclaims with prejudice subject only to a successful appeal by Sevenson. Its contrary assertions in this case are designed solely to satisfy the limited exception carved out by this court in *Honeywell* and should be rejected.

### 3. <u>An Adverse Ruling By This Court Will Not Be Binding On Shaw</u>

This requirement asks whether disposition of the litigation "may, as a practical matter, impair or impede [the] ability [of the applicant-intervenor] to protect its interest." RCFC 24(a).

In *John R. Sand & Gravel*, this Court held that a potential adverse decision in this Court does not satisfy this requirement if a federal district court was not bound by the decision. 59 Fed. Cl. at 655-56; *see Anderson Columbia Environmental, Inc. v. United States*, 42 Fed. Cl. 880, 882 (Fed. Cl. 1999) ("A prospective intervenor is also not likely to suffer impairment of its interests where it is free to assert its rights in a separate action. . . . [T]he mere inconvenience caused by requiring the prospective intervenor to litigate the matter separately does not constitute the impairment required by Rule 24(a).").

In *Honeywell*, this Court found that this requirement may be satisfied if an adverse decision would have a "persuasive" effect on another district court. 2006 WL 1737938 at *6.

Shaw is authorized by the Buffalo court to re-file its counterclaims for infringement and invalidity if Sevenson is successful on its appeal. Otherwise, these claims are dismissed with prejudice as they relate to the Colonie site. No decision from this court would prevent Shaw

from asserting similar defenses, claims and/or counterclaims if it were in a position to use Sevenson's patented technology at any other site. Thus, under the test in *John R. Sand & Gravel* and *Anderson*, Shaw is unable to satisfy this requirement for intervention. Indeed, it is not even clear whether this Court's decision concerning the government's use of phosphoric acid at the Colonie site would be persuasive in any hypothetical subsequent litigation between Sevenson and Shaw concerning activities at a different environmental cleanup site.

## IV. Conclusion

Shaw has failed to establish the requirements for intervention. Sevenson respectfully requests this Court to deny its motion.

Dated: August 18, 2006

**McDERMOTT WILL & EMERY LLP**
Attorneys for Plaintiff, Sevenson Environmental Services, Inc.

By: s/Brian E. Ferguson
Brian E. Ferguson
600 13th Street, N.W.
Washington, D.C. 20005
(202) 756-8000
bferguson@mwe.com

**WEBSTER SZANYI LLP**
Kevin A. Szanyi
Nelson Perel
Todd M. Schiffmacher
1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800
nperel@websterszanyi.com

WDC99 1272001-1.057200.0012