**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**(Electronically Filed: September 1, 2006)**

| | | |
|---|---|---|
| **SEVENSON ENVIRONMENTAL SERVICES, INC.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **NO.: 05-1075C** |
| | * | **JUDGE THOMAS C. WHEELER** |
| **THE UNITED STATES and SHAW ENVIRONMENTAL, INC.,** | * | |
| **Defendants.** | * | |

**SHAW'S REPLY IN SUPPORT OF ITS MOTION TO INTERVENE**

Shaw Environmental, Inc. ("Shaw"), by undersigned counsel, hereby submits this Reply in Support of its Motion to Intervene [hereinafter "Motion"], (Docket No. 26), and in response to plaintiff Sevenson Environmental Services, Inc.'s ("Sevenson") Opposition thereto [hereinafter "Opposition"], (Docket No. 30).

**I. Shaw Did Not Waive the Right to Litigate the Issues of Non-infringement and Invalidity**

Sevenson wrongly asserts that Shaw waived the right to litigate the issues of non-infringement and invalidity by its actions in the Buffalo case. (Opp. at 6). The Order to which Sevenson refers, however, states only that the Buffalo court dismissed Shaw's affirmative counterclaims seeking a declaratory judgment on noninfringement and invalidity without prejudice to Shaw refiling its counterclaims in that court if Sevenson's appeal of the summary judgment on 28 U.S.C. §1498 grounds was successful. *See Exh. A*

("the Order"). The Order does not, and could not, have any effect on any affirmative claims that Shaw may choose to bring in another jurisdiction. Shaw agreed to the Order, but not to sit on its hands while the Buffalo case is on appeal.

Further, Shaw is not intervening here to assert affirmative counterclaims. Shaw asserts only affirmative defenses. The Court of Federal Claims does not have jurisdiction over non-monetary counterclaims brought by either the Government or third parties, and therefore could not hear such counterclaims.

Finally, Shaw has always maintained that the proper jurisdiction for Sevenson's claims is the Court of Federal Claims, per 28 U.S.C. §1498. The Order reflects Shaw's desire not to litigate in Sevenson's backyard unless the Second Circuit revives the case against Shaw. Shaw's limited consent to the conditional dismissal of its counterclaims, without prejudice, and in an improper forum, has no effect on its right to assert affirmative defenses in the proper forum. To show "waiver," Sevenson must prove that Shaw "voluntarily relinquished" its right to intervene and assert affirmative defenses here. *Black's Law Dictionary 101* (Bryan A. Garner ed., 7th ed., West 1999). Sevenson can not meet this burden, and therefore its waiver argument must fail.

**II. The Government Does Not Adequately Represent Shaw's Interests.**

Shaw's Motion more than satisfies the "minimal" threshold showing that the Government may not adequately represent its interests. *See Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538-39 n.10 (1972); *see also American Renovation and Constr. Co. v. United States*, 65 Fed. Cl. 254,264 (Fed. Cl. 2005); *Klamath Irrigation Distr. v. United States,* 64 Fed.Cl. 328, 336 (Fed. Cl. 2005); *Honeywell Int'l., Inc. v. United States*, No. 02-1909C, 2006 WL 1737938 (Fed. Cl. June 23, 2006) at *6-7; *see also United*

*States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980)("In such a situation commentators state that intervention turns on the circumstances of the particular case, but that petitioner 'ordinarily should be allowed intervene unless it is clear that the party will provide adequate representation for the absentee.'"). Accordingly, the burden is now on Sevenson to show, "that representation for the absentee will be adequate." *United States v. AT&T*, 642 F.2d 1285, 1293 (D.C. Cir. 1980).

Realizing that it cannot satisfy this burden, Sevenson creates a new standard for the "adequate representation" test. Sevenson contends that Shaw is required "to overcome the presumption of adequacy of representation by the Government with a specific showing of 'collusion, adversity or interest or nonfeasance.'" (Opp. at 6). Sevenson cites no authority to support this purported standard. This language may, however, be found in Sevenson's favorite case, *John R. Sand & Gravel Company v. United States*, 59 Fed. Cl. 645 (Fed. Cl. 2004), which adopted the language from *Walter B. Freeman v. United States*, 50 Fed. Cl. 305 (Fed. Cl. 2001). Inexplicably, the *Freeman* court acknowledged the *Trbovich* decision and its "minimal" threshold test, and then promptly refused to follow it. *Freeman*, 50 Fed. Cl. at 311. The *Freeman* court announced a renegade test - that the intervener is required "to overcome the presumption of adequacy of representation by the Government with a specific showing of 'collusion, adversity or interest or nonfeasance'" – that is contrary to unwavering precedent from the U.S. Supreme Court and federal circuit courts, and that has been abandoned by this Court in more recent opinions. *See Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538-39 n.10 (1972); *American Renovation and Constr. Co. v. United States*, 65 Fed. Cl. 254,264 (Fed. Cl. 2005); *Klamath Irrigation Distr. v. United States,* 64 Fed.Cl. 328, 336 (Fed. Cl. 2005)(the Court asserts that the "burden of

demonstrating inadequacy of representation is not heavy"); *Honeywell Int'l., Inc. v. United States*, No. 02-1909C, 2006 WL 1737938 (Fed. Cl. June 23, 2006) at *6-7; *see also United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980). This Court should reject Sevenson's invitation to make bad law.

The merits of Sevenson's adequate representation argument are also misguided. For example, the fact that the Government and Shaw assert identical affirmative defenses proves nothing other than that there is a limited universe of defenses to plead. The Answers clearly diverge on the issue of whether the process at issue is still being used. This divergence raises concern regarding how Sevenson and the Government may calculate damages. Sevenson alleges that damages will be based on the number of tons of soil treated, and that this number should be "undisputed." (Opp. at 7). In fact, there is great disagreement between Shaw and Sevenson over the proper calculation of the number of tons that were treated using phosphoric acid, and this issue has led to the production of thousands of documents. Shaw does not find comfort in Sevenson's belief that everything will work out in the end, particularly when Sevenson reports to this Court that issues that have been litigated for seven years are suddenly "undisputed." Shaw should be directly involved in the development of these calculations to ensure that future mistakes are minimized.

Second, Sevenson states in its Opposition that the Government has a "broader" interest than Shaw because of the Government's responsibility for cleaning up government contaminated sites, with the Colonie site being only one such site. (Opp. at 8). Sevenson's argument actually supports Shaw's position that Shaw and the Government have disparate interests. *See Sierra Club v. Espy,* 18 F.3d 1202, 1207-08 (5th Cir. 1994) (U.S. Forest

Service would not adequately represent interests of timber industry in defending lawsuit brought by environmental group, because the "government must represent the broad public interest, not just economic concerns of the timber industry."). Like the intervener-applicant in *Sierra Club*, Shaw also would not be adequately represented by the Government due to the Government's representation of the broad public interest of cleaning up all government contaminated sites, and not the economic concerns of Shaw. *Id.* Because of these disparate interests between the Government and Shaw, granting intervention is appropriate.

Third, Sevenson predicts that "the government has every incentive to pursue full and final disposition of the relevant issues in the case." Neither Shaw nor Sevenson can predict how the Government may choose to dispose of this case. It appears likely, however, that the Government will not ask Sevenson for advice on strategy. Sevenson has no basis to predict the Government's future actions.

Finally, Sevenson seeks to limit any order granting intervention. Sevenson contends that "any order granting intervention should be limited to Shaw's interest in protecting its alleged proprietary information, consistent with the holding in *Armour*." (Opp. at 11). Unlike the present case, the intervenor in *Armour* specifically asked to intervene in the litigation for the limited purpose of protecting its proprietary information. *Armour of Am. v. United States*, 70 Fed. Cl. 240,245-46 (Fed. Cl. 2006). Shaw makes no such request for limited intervention; Shaw seeks to intervene as a party defendant.

**III. Shaw's Motion to Intervene is Timely**

Sevenson wrongly asserts that Shaw's Motion to Intervene is untimely filed. Interestingly, Sevenson has not pointed the Court to any case law that would support that assertion. Sevenson notes that the Government filed a Motion to Notice Third Party on

April 19, 2006, which the Court returned for being filed untimely and without leave, and presumes that Shaw was aware of the motion and order. (Opp. at 4,15). In fact, Shaw first became aware of the motion and order when Sevenson's counsel emailed a copy of them to Shaw's counsel on July 26, 2006.[1] *See Exh. B*. At the time of filing the Motion to Notice Third Party, the pleadings in this case were not accessible through the ECF system; Shaw did not know, and had no way to know, that the motion had been filed or returned. Regardless, the Government's failure to meet the deadline for RCFC 14(b), and to seek leave to file out of time, does not weaken Shaw's right to intervene.

Sevenson contends that Shaw's intervention has caused Sevenson undue prejudice because it is "operating under a tight schedule to complete the Markman process." (Opp. at 14). In truth, Sevenson has been litigating the patents-in-suit for almost seven years. It previously filed a full set of *Markman* briefs in the Buffalo case. It is unfathomable to think that Sevenson is "operating under a tight schedule to complete" the claim charts it will exchange with opposing counsel. (Opp at 14). Seven years is adequate time to prepare a litany of *Markman* briefs, much less claim charts. Sevenson's other arguments under this section are even less believable and do not merit a formal reply.

**IV. An Adverse Ruling Would Affect Shaw's Business**

Sevenson wrongly asserts that Shaw fails to establish "an interest relating to the property or transaction which is the subject of the action." *American Maritime Transport, Inc. v. United States*, 870 F.2d 1559 (Fed. Cir. 1989). Contrary to Sevenson's argument, economic and business interests justify intervention, provided the interests are legally protectable and not contingent on events outside the litigation. *See Honeywell Int'l, Inc. v. United States*, 2006 WL 173938 (Fed. Cl. June 23, 2006); *Klamath Irrigation*, 64 Fed. Cl.

[1] Shaw was aware that this case existed in April 2006, but was not aware of any procedural details.

At 331 ("[O]ther types of interests [beside property rights] have been found to justify intervention, among them economic and business interests, as well as those involving access to public resources or the enforcement of statutory rights conferred by Congress, provided these interests were legally protectable and not contingent." (citations omitted)). As explained in its Motion, Shaw has significant economic and business interests in the Court's resolution of the claims and defenses in this case.

Sevenson mistakenly argues that the *Honeywell* opinion "carved out a limited exception to the general rule that purely economic interests are insufficient," and "emphasized that the allegedly infringing device used by the intervener-applicant in Honeywell 'comprise[d] the core of [its] display business." (Opp. at 17). Contrary to Sevenson's argument, the *Honeywell* court does not carve out a limited exception, but instead directly applies the general rule set forth in *American Maritime Transport, Inc.* to facts very similar to this case. *Id.* The "core business" reference is merely an excerpt from the intervener-applicant's brief. *See Honeywell Int'l,*2006 WL 1737938 at *4. As with the adequate-representation inquiry, Sevenson seeks to create a new test for this Court to apply because Shaw clearly prevails based on the accepted standard.

**V. Shaw Will be Affected by the Outcome of This Litigation**

Sevenson wrongly asserts that an adverse ruling in the Court of Federal Claims will not be persuasive in other jurisdictions that may be asked to opine on the validity of patents-in-suit. (Opp. at 19). Sevenson's opinion is clearly contrary to recent opinions from this Court, such as *Klamath Irrigation,* where the Court noted that a "succeeding court, even if not bound by precedent, will – and should – be impacted by a prior opinion dealing with the same issues and subject matter." 64 Fed. Cl. at 335. Similarly, in

*Honeywell*, this Court noted that "a determination of infringement of the [patent-in-suit] would have a persuasive, if not collateral effect, on future litigation in which infringement of the [patent-in-suit] is at issue." *Honeywell*, 2006 WL 1737938 at *6.

The case cited by Sevenson, *John R. Sand & Gravel,* is contrary to these later cases, and is distinguishable on it facts. In that case, intervenor-applicant sought intervention only to protect itself from a potential obligation from the Government. *Id.* In this case, Shaw seeks to protect itself against a potential indemnification suit by the Government that would arise from an adverse verdict, and it seeks a court judgment on its affirmative defenses addressing the validity and non-infringement of the patents-in-suit. This present case is more analogous to facts and circumstances in *Honeywell* than it is to *John R. Sand & Gravel*. *See Honeywell*, 2006 WL 1737938. Shaw would clearly be affected by an adverse ruling due to the persuasive effect of this Court's ruling on future litigation, and must be allowed to intervene here to protect itself.

**VI. Permissive Intervention is Appropriate Here**

Contrary to Sevenson's assertions, the Court has discretion to allow permissive intervention, and in using that discretion it "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Rule 24(b). There are several facts that are relevant in determining whether or not Shaw's intervention will unduly delay or prejudice the adjudication. First, the Government does not oppose Shaw's Motion to Intervene. Second, Shaw expressly agrees to abide by the current scheduling order. Further, Shaw and Sevenson spent four years litigating the same infringement and validity issues presented here in the Federal District for the Western District of New York. *See Sevenson Environmental Services, Inc. v. Shaw Environmental,*

*Inc.* No. 1:02-cv-00527-RJA-HBS (the "Buffalo case"). Therefore, Sevenson knew or should have known that Shaw might intervene here due to its interest in resolving the infringement and invalidity issues. Finally, it is more efficient for all parties and the federal judiciary for Shaw to participate in this case, where the validity of the patents-in-suit is already being litigated, instead of initiating a third lawsuit on this issue in another forum.

**VII. Conclusion**

For the reasons stated above and in Shaw's opening brief, Shaw requests that the Court grant Shaw's Motion to Intervene as a party defendant pursuant to Rule 24(a). Alternatively, Shaw requests that the Court grant Shaw's Motion to Intervene pursuant to Rule 24(b).

Respectfully submitted:

_s/ Russel O. Primeaux_____________

Russel O. Primeaux
Kean Miller Hawthorne
D'Armond McCowan & Jarman LLP
One American Place, 22nd Floor
Post Office Box 3513
Baton Rouge, LA 70821-3513
Phone: 225.387.0999
Facsimile: 225.388.9133

***Counsel for Shaw Environmental, Inc.***

Of Counsel:

J. Eric Lockridge
Anthony G. Boone
Kean Miller Hawthorne D'Armond McCowan & Jarman LLP
One American Place, 22nd Floor
Post Office Box 3513
Baton Rouge, LA 70821-3513

**CERTIFICATE OF SERVICE**

I certify that the above and foregoing document was filed by using the Court's CM/ECF system so that a copy was sent to the following persons automatically via email this day, September 1, 2006:

Brian E. Ferguson
MCDERMOTT, WILL & EMERY
600 13TH Street, N.W.
Washington, D.C. 20005

Kevin A. Szanyi
Nelson Perel
WEBSTER SZANYI LLP
1400 Liberty Building
Buffalo, New York 14202

Peter D Keisler
John J. Fargo
Marcy E. Cook
Civil Division
U.S. Department of Justice
Washington, D.C. 20530

__s/ Anthony G. Boone____________________
Anthony G. Boone