McDermott
Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Brian E. Ferguson
Attorney at Law
bferguson@mwe.com
202.756.8371

February 21, 2007

VIA EMAIL

The Honorable Thomas C. Wheeler
U.S. Court of Federal Claims
717 Madison Place, N.W.
Washington, DC 20005

Re: Sevenson Environmental Services, Inc. v. U.S. (No. 05-1075C)
Client-Matter No. 57200-012

Dear Judge Wheeler:

Today the Court of Appeals for the Federal Circuit affirmed the decision of the Western District of New York dismissing Sevenson's case against Shaw in the district court. A copy of the opinion is attached.

If you have any questions, please do not hesitate to contact me.

Respectfully,

Brian E. Ferguson

Enclosure
cc: Marcy Cook, Esq. (w/ enclosure)
Russel Primeaux, Esq. (w/ enclosure)
Nelson Perel, Esq. (w/enclosure)

WDC99 1331180-1.057200.0012

# United States Court of Appeals for the Federal Circuit

2006-1391, -1408

SEVENSON ENVIRONMENTAL SERVICES, INC.,

Plaintiff-Appellant,

v.

SHAW ENVIRONMENTAL, INC.,

Defendant-Cross Appellant.

Brian E. Ferguson, McDermott Will & Emery LLP, of Washington, DC, argued for plaintiff-appellant. Of counsel on the brief were Kevin A. Szanyi and Nelson Perel, Webster Szanyi LLP, of Buffalo, New York.

Mark S. Graham, Luedeka, Neely & Graham, P.C., of Knoxville, Tennessee, argued for defendant-cross appellant. With him on the brief was Geoffrey D. Kressin. Of counsel were Michael J. Bradford and J. David Gonce.

Appealed from: United States District Court for the Western District of New York

Judge Richard J. Arcara

# United States Court of Appeals for the Federal Circuit

2006-1391, -1408

SEVENSON ENVIRONMENTAL SERVICES, INC.,

Plaintiff-Appellant,

v.

SHAW ENVIRONMENTAL, INC.,

Defendant-Cross Appellant.

---

DECIDED: February 21, 2007

---

Before LINN and DYK, Circuit Judges.*

LINN, Circuit Judge.

This is a patent infringement case in which the United States District Court for the Western District of New York concluded at summary judgment that suit against a hazardous waste remediation contractor was barred by government contractor immunity under 28 U.S.C. § 1498. Because we agree with the district court that the contractor's use of the accused method was "for the Government and with the authorization and consent of the Government," see § 1498(a), we affirm.

---

* Circuit Judge Moore heard oral argument in this appeal but subsequently determined not to participate, taking no position in the decision of the case.

## I. BACKGROUND[1]

This appeal relates to the cleanup of a lead-contaminated parcel of land near Colonie, New York ("the Colonie site") that is owned by the United States and managed by the U.S. Army Corps of Engineers. The defendant, Shaw Environmental, Inc. ("Shaw"), is a hazardous waste remediation firm that in 2002 contracted with the Corps of Engineers to engage in cleanup and remediation work at the Colonie site.[2] The plaintiff, Sevenson Environmental Services, Inc. ("Sevenson"), is a corporation that holds several U.S. patents regarding hazardous waste remediation, including some that claim methods for treating hazardous waste by applying phosphoric acid: U.S. Patent Nos. 5,527,982; 5,732,367; 5,916,123; 5,994,608; and 6,139,485. Sevenson alleges that Shaw's work at the Colonie site infringes these patents.

Shaw's relationship with the Government is defined by two separate contracts, the "Total Environmental Restoration Contract" ("TERC") and the "Pre-placed Remedial Action Contract" ("PRAC"). (The PRAC replaced the TERC because of funding issues.) Both the TERC and PRAC require Shaw to perform hazardous waste remediation at a

---

[1] The facts, which are undisputed in relevant part, are drawn from the report and recommendation of Magistrate Judge Hugh B. Scott, to whom the case was referred pursuant to 28 U.S.C. § 636(b)(1). The district court adopted the report and recommendation in full. See Sevenson Envtl. Servs. v. Shaw Envtl., Inc., No. 02-CV-527, slip op. at 1–2 (W.D.N.Y. Sep. 16, 2005) (report and recommendation of Judge Scott) ("Report & Recommendation"); Sevenson Envtl. Servs. v. Shaw Envtl., Inc., No. 02-CV-527 (W.D.N.Y. Mar. 27, 2006) (order adopting Report & Recommendation).

[2] Shaw is the third contractor at the Colonie site. The original contract was with ICF Kaiser. It was ICF Kaiser's subcontractor, Kiber Environmental Services, that first performed a treatability study at the Colonie site and recommended the use of the accused phosphoric acid method.

In early 1999, the ICF Kaiser contract was acquired by IT Group, Inc., and IT Corporation (collectively, "IT"). In 2002, after IT declared bankruptcy, Shaw obtained the remediation contract. The instant infringement action followed.

number of government-owned waste sites, including the Colonie site. Both contracts contain the same authorization and consent clause:

> The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered by a United States patent . . . used in machinery, tools, or methods whose use necessarily results from compliance by the Contractor or subcontractor with (i) specifications or written provisions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance.

Report & Recommendation, slip op. at 3.

Both contracts also require development of a Work Plan that contains a detailed specification of the work that is to be performed. In particular, the TERC provides:

> WORK PLAN (WP). For each TERC Delivery Order, the Contractor is required to submit a WP. The WP, which is written by the Contractor, describes the Contractor's detailed approach for the performance of this Delivery Order. The WP is based upon the Government's statement of work, which is a general description of work that the Contractor is required to perform. The WP describes the activities that will be performed in the field or office by the Contractor as outlined in individual Delivery Orders.
>
> * * *
>
> 3.3 WP ACCEPTANCE. Except as otherwise provided in individual Delivery Orders, approval of the WP is required prior to the start of field activities. No change in the approved plan shall be implemented without written concurrence of the Contracting Officer.

Similarly, the PRAC requires that the "Contractor must receive approval from the Contracting Officer on all site-specific plans (i.e., Work Plan . . . , etc.) before initiating any on-site activity." The Work Plan for the Colonie site requires Shaw to use "a phosphoric acid based stabilization system."

Sevenson filed the instant patent infringement suit against Shaw in the United States District Court for the Western District of New York on July 23, 2002. Complaint, Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc., No. 02-CV-527 (W.D.N.Y. July 23,

2002). Shaw moved for summary judgment on the ground that pursuant to its contracts with the government and to 28 U.S.C. § 1498(a), the United States was the proper defendant, and that the suit should therefore be dismissed. The district court, adopting the report and recommendation of the magistrate judge, agreed and entered judgment in favor of Shaw. Sevenson Envtl. Servs. v. Shaw Envtl., Inc., No. 02-CV-527 (W.D.N.Y. Mar. 22, 2006). The district court also denied as moot Shaw's motion to dismiss the case or otherwise sanction Sevenson for alleged discovery violations. Id.

Sevenson appeals. Shaw cross-appeals, asserting that the district court erred (1) when it denied Shaw's motion to dismiss for discovery violations and (2) when it denied Shaw's motion to amend its answer to include declaratory judgment counterclaims against Sevenson as to additional unasserted patents.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

We review de novo the district court's grant of summary judgment. Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d 1005, 1013 (Fed. Cir. 2006). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The facts material to this appeal are not disputed; thus, we may determine as a matter of law whether summary judgment as to government contractor immunity was appropriate.

In this case, Shaw's immunity to suit hinges on the interpretation of its contracts with the government. Interpretation of contracts is also a question of law that we review de novo.[3] See Applied Cos. v. Harvey, 456 F.3d 1380, 1382 (Fed. Cir. 2006).

B. Section 1498(a)

The relevant statutory provision reads as follows:

> (a) Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.
>
> * * *
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498(a). Because Shaw is a contractor, its use of the patented method qualifies as "use . . . for the United States," and it is thus immune from suit except "by action against the United States in the United States Court of Federal Claims," if two criteria are met: (1) the use is "for the Government"; and (2) the use is "with the authorization and consent of the Government." Id.; see Hughes Aircraft Co. v. United

---

[3] Ordinarily in patent cases, "[i]nterpretation of contract terms is a matter not unique to our exclusive jurisdiction and is therefore reviewed under regional circuit law." Depuy Spine, 469 F.3d at 1013. Here, however, the relevant contract is one with the government, and the relevant question is the scope of the government's authorization and consent to suit, in lieu of a private defendant, for patent infringement. Such a question "bears an essential relationship to matters committed to our exclusive control by statute," Biodex Corp. v. Loredan Biomedical, Inc., 946 F.2d 850, 858–59 (Fed. Cir. 1991), both with respect to our jurisdiction over patent cases, see 28 U.S.C. § 1295(a)(1), and with respect to our jurisdiction over appeals pertaining to government contract disputes, see 28 U.S.C. § 1295(a)(2), (a)(3), (a)(10). Accordingly, we review the questions of contract interpretation presented by this appeal under Federal Circuit law.

States, 534 F.2d 889, 897–98 (Ct. Cl. 1976). Sevenson argues that Shaw's use of phosphoric acid does not meet either criterion.

1. Use "for the Government"

Sevenson's first argument is that the phrase "for the Government," as used in § 1498(a), "refers to the 'primary purpose of the contract' between the private party and the government." Appellant's Br. at 33. We disagree. The text of the statute contains an awkward circularity: use "for the United States" is defined as use that is both "for the Government" and "with the authorization and consent of the Government." In context, the "for the Government" prong of the definition appears to impose only a requirement that the use or manufacture of a patented method or apparatus occur pursuant to a contract with the government and for the benefit of the government. The statute imposes no additional "primary purpose" condition.

The cases that Sevenson cites are not to the contrary. For example, in Riles v. Amerada Hess Corp., a district court concluded that where an offshore oil drilling operation leased drilling rights from the government for a 12.5% royalty and was required to get government approval for its drilling platform installation methods, the infringement of a patent on those methods was not part of a use "for the Government." 999 F. Supp. 938, 940 (S.D. Tex. 1998). The government received some benefit from the infringement, to be sure, but the drilling was not a "governmental function" that the government had sought or required the driller to carry out. Id. Riles noted that "[c]learly, Defendant did not agree to drill for the Government simply because the Government receives some monetary benefit as a byproduct of the activity." Id. Similarly, in Larson v. United States, the United States Claims Court held that use of

infringing medical devices by Medicare and Medicaid providers did not fall within § 1498 because the use of those particular devices, though funded by the government, was not required by it, nor were the providers under the government's control. 26 Cl. Ct. 365, 369–70 (1992).

Here, in contrast, Shaw's use of the accused method has been in its capacity as a government contractor and pursuant to its contract for the benefit of the government. In similar cases, where infringing activity has been performed by a government contractor pursuant to a government contract and for the benefit of the government, courts have all but bypassed a separate inquiry into whether infringing activity was performed "for the Government." Instead, the inquiry has reduced to the "very simple question" of whether the plaintiffs "establish that the government authorized or consented to the . . . infringement . . . , if such infringement in fact occurred." Auerbach v. Sverdup Corp., 829 F.2d 175, 180–81 (D.C. Cir. 1987) (applying the parallel copyright infringement provisions of 28 U.S.C. § 1498(b)); see also Carrier Corp. v. United States, 534 F.2d 244, 247 (Ct. Cl. 1976) (proceeding, after a determination that infringing use of a patented device was not directly "by the Government," to an analysis of whether the government authorized and consented to the infringing use).

Sevenson's specific factual arguments on the "for the Government" question also fail. It is irrelevant whether the TERC or PRAC encompassed a range of other tasks besides remediation at the Colonie site; whether Shaw (or its predecessor) or the Government selected the allegedly infringing method; whether the risk of an injunction (one purpose of § 1498) was mitigated by the existence of noninfringing alternative treatment methods; and whether Shaw agreed to defend against Sevenson's patent

claims (an issue between Shaw and the government in which Sevenson has no stake). It is also irrelevant whether Shaw reaped the benefits of choosing phosphoric acid rather than another remediation method. The question is not whether the choice of remediation method was made "for the Government," but whether the infringing method was practiced "for the Government," and that question is answered in the affirmative by the observation that the government sought and received hazardous waste remediation services at the Colonie site. Any dispute about whether another method would have benefited the government equally without infringing Sevenson's patent rights goes to whether the government "authoriz[ed] and consent[ed]" to this particular use.

2. Use "with the Authorization and Consent of the Government"

Where, as here, a government contract contains an explicit authorization and consent clause (and the parties have alleged no alternative source for government authorization and consent), the scope of the government's authorization and consent to liability naturally hinges on the language of that clause. Contrary to Sevenson's characterizations of this appeal as an implied authorization and consent case, the issue here is whether the government, through the TERC and PRAC, expressly authorized and consented to the use of the accused method.

Sevenson characterizes the authorization and consent clause as "narrow"—as did our predecessor court, describing an almost identical clause, in Carrier. 534 F.2d at 247. In this case, however, the authorization language of the contract is broad enough. Both the TERC and the PRAC grant government authorization and consent "to all use and manufacture, in performing this contract . . . of any invention described in and covered by a United States patent . . . used in machinery, tools, or methods whose use

necessarily results from compliance by the Contractor or subcontractor with (i) specifications or written provisions forming a part of this contract." Notably, this language explicitly encompasses "specifications" that are a part of the contract, as well as the base language of the contract itself. As both the government's contracts specialist and Sevenson's Rule 30(b)(6) designee acknowledged, Shaw's Work Plan is such a specification. Because it requires that Shaw use the accused method at the Colonie site, the accused use "necessarily results from compliance" with the contract's "specifications," and the government has authorized and consented to the use.

Carrier, the only on-point, binding precedent that the parties have cited to us, is thus factually distinguishable. In Carrier, a garbage company entered into a contract to remove refuse at Andrews Air Force Base. 534 F.2d at 246. It was sued for infringement of a patent on certain types of rubbish compactors and containers. Id. at 246. Interpreting § 1498(a) in light of a similar authorization and consent clause, and notwithstanding a requirement that "[a]ll equipment . . . shall become operative only after inspection and acceptance by the Contracting Officer or the Technical Representative," the Court of Claims held that the use of infringing equipment was not "necessary" to the contract because "neither the contract specifications nor any specific written instructions . . . required [the contractor] to use any particular type of equipment" and "containers were available in the open market which could have been purchased and used, and which would not have infringed plaintiff's patent." Id. at 247–48. Here, in contrast, the government did more than an "inspection and acceptance"; it required in the contracts the development of a detailed written Work Plan, and that Work Plan required the use of the infringing method. Unlike the contractor in Carrier, Shaw's use

of a noninfringing alternative to the accused method would put it in breach of its contracts. Thus, Shaw's use of the accused method was "necessar[y]" in a way that use of patented devices in Carrier was not.

Accordingly, Shaw's use of the contract was both "for the Government" and "with the authorization and consent of the Government," and Shaw is entitled to immunity from suit under § 1498(a).

## III. CONCLUSION

For the foregoing reasons, we conclude that the district court properly granted summary judgment in favor of Shaw. Because we also discern no error in the rulings of the district court relevant to Shaw's cross-appeal on the issue of sanctions,[4] we affirm.

AFFIRMED

---

[4] In light of our affirmance of the appeal, we need not and do not reach the issue presented in the cross-appeal concerning leave to amend the counterclaim or the underlying jurisdictional questions raised thereby.