# Exhibit 11

| **Office Action Summary** | Application No. 09/340,903 | Applicant(s) Pal et al |
|---|---|---|
| | Examiner George Suchfield | Group Art Unit 3672 |

☒ Responsive to communication(s) filed on *Jun 28, 1999; 9/27/99*.

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire *3* month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) *21-41* is/are pending in the application.

Of the above, claim(s) ______ is/are withdrawn from consideration.

☐ Claim(s) ______ is/are allowed.

☒ Claim(s) *21-41* is/are rejected.

☐ Claim(s) ______ is/are objected to.

☐ Claims ______ are subject to restriction or election requirement.

**Application Papers**

☒ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on ______ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on ______ is ☐approved ☐disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) ______.

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: ______.

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). ______

☐ Interview Summary, PTO-413

☒ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

*— SEE OFFICE ACTION ON THE FOLLOWING PAGES —*

1. The Group and/or Art Unit location of your application in the PTO has changed. To aid in correlating any papers for this application, all further correspondence regarding this application should be directed to Group Art Unit 3672.

2. The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. See *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970);and, *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321© may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent is shown to be commonly owned with this application. See 37 CFR 1.130(b).

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

3. Claims 21-41 are rejected under the judicially created doctrine of double patenting over claims 1-21 of U. S. Patent No. 5,916,123 since the claims, if allowed, would improperly extend the "right to exclude" already granted in the patent.

The subject matter claimed in the instant application is fully disclosed in the patent and is covered by the patent since the patent and the application are claiming common subject matter, as follows:

A method of treating lead-bearing, hazardous waste materials, including contaminated soil, with a treatment formulation comprising a mixture of a first component, such as a silicate, lime, sulfate or halite, and a second component supplying a phosphate anion.

Also, in both the application and patent specification and claims, the thusly treated hazardous waste includes leachable lead present in less than 5.0 mg/l.

Furthermore, there is no apparent reason why applicant was prevented from presenting claims corresponding to those of the instant application during prosecution of the application which matured into a patent. See *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968). See also MPEP § 804.

4. For the rejection(s) of the claims, as follows, it is deemed that the pending claims "go back" only as far as the parent application S.N. 08/031,461 with a filing date of March 15, 1993.

5. The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless --
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.
>
> (e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371© of this title before the invention thereof by the applicant for patent.

6. Claims 21-26 and 28-41 are rejected under 35 U.S.C. 102(e) as being anticipated by Stanforth et al'033.

Stanforth et al treats a lead-bearing waste material, such as contaminated soil, at a waste site, such as a landfill, by, in one embodiment, admixing a phosphate or phosphoric acid treatment

agent or "first component" with a pH control agent or "second component" comprising calcium or magnesium, oxide or hydroxide, and introducing the admixture into the lead-bearing material. The introduced treatment formulation then reacts with or "cures" the lead-bearing waste or contaminated soil to form a solid waste product containing a leachable lead level at less than or equal to .05 mg/L (note Stanforth et al at col. 7, lines 2-20. Such exemplary leachable lead level is clearly "below 5.0 mg/l", as called for in independent claims 21, 28 and 35.

Regarding claims 22, 29 and 36, Stanforth et al(e.g., col. 8, lines 44-49) may similarly employ the treatment additives as liquids, i.e., in solution.

Regarding claims 26, 33 and 40, Stanforth et al (col. 5, lines 32-68) further discloses the use of a sulfate compound, such as ferrous sulfate, to immobilize any chromium ions present. Thus, in the practice of Stanforth et al, both a sulfate and phosphate component will be used in admixture in the event the waste material contains both lead and chromium contaminants. Also, as noted above, Stanforth et al may use the components in solution.

7. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

This application currently names joint inventors. In considering patentability of the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to

the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103© and potential 35 U.S.C. 102(f) or (g) prior art under 35 U.S.C. 103(a).

8. Claim 27 is rejected under 35 U.S.C. 102(e) as anticipated by or, in the alternative, under 35 U.S.C. 103(a) as obvious over Stanforth et al'033.

Insofar as solid waste as encountered or generated in industrial or municipal waste treatment processes conventionally occurs in the form of sludge, it is deemed that the "disposed solid waste" which is treated by the process of Stanforth et al, is deemed to inherently or obviously comprise "sludge", as called for in claim 27.

9. The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Other references cited disclose processes for treating and stabilizing lead-bearing hazardous waste(s) with one or more treatment agents, including a phosphate component.

It is noted that Stanforth'479 may also treat and stabilize lead-bearing solid waste, such as generated in a foundry, with a combination of a phoshate component and magnesium hydroxide. Thus, it is deemed cumulative to Stanforth et al'033, as applied above, against one or more of the claims.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to George Suchfield whose telephone number is (703) 308-2152.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, David Bagnell, can be reached on (703) 308-2151. The fax phone number for this Group is (703) 305-3597, (703) 305-7687 or (703) 306-4195.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 308-2168.

gs/Suchfield
December 4, 1999

George Suchfield
George Suchfield
Primary Examiner
Art Unit 3672

OIPE JC72
MAR 2 7 2000
PATENT & TRADEMARK OFFICE

Docket No.: SES-12

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#12
C. Harris
4/6/00

| | | |
|---|---|---|
| In re APPLICATION of: | ) | |
| Applicants: Pal et al. | ) | Group Art Unit: 3672 |
| Serial No.: 09/340,903 | ) | Examiner: G. Suchfield |
| Filed: June 28, 1999 | ) | |
| For: FIXATION AND STABILIZATION OF METALS IN CONTAMINATED SOILS AND MATERIALS | ) | |

RECEIVED
MAR 29 2000
TC 3600 MAIL ROOM

Assistant Commissioner of Patents
Washington, D.C. 20231

## AMENDMENT

In response to the Office Action dated December 9, 1999, Applicants hereby amend the application as follows:

### IN THE SPECIFICATION:

Please amend the specification to include the following disclosure from parent application Serial No. 07/494,774, filed on March 16, 1990 (the `774 application)(a copy is enclosed for the Examiner's convenience). The page and line numbers from the `774 application are shown in brackets.

03/28/2000 AIBRAHIM 00000108 09340903
02 FC:202 117.00 OP
03 FC:203 135.00 OP

At page 2, after line 25, please add the following [`774 application at p. 1, line 10 - p. 2, line 6]:

Lead contaminants are often found in the soil around lead shelters, and battery recycling and manufacturing plants. This occurs when lead-containing chemicals are used in the plant, and waste water containing the lead is allowed to spill over or drain into the soil. Some species of lead contaminants are mobile and leachable and, when present in soil and solid waste materials, are considered "hazardous" to human health and the environment.

A1

OIP JC72 MAR 27 2000 PATENT & TRADEMARK OFFICE

Serial No. 09/340,903 Docket No. SES-12

The Resource Conservation and Recovery Act of 1976, commonly known as RCRA, provided for federal classification of hazardous waste. The statutory language defines "hazardous waste" as solid waste or combinations of solid wastes which pose a "substantial present or potential hazard . . . when improperly treated, stored, transported, or disposed of, or otherwise mismanaged." Any solid waste that exhibits one of the hazard characteristics defined in Subpart C of Part 261, Volume 40, Code of Federal Regulations is, by definition, a hazardous waste.

A solid waste is considered to be a hazardous waste if it exhibits characteristics of either ignitability, corrosivity, reactivity or EP toxicity (EPTOX). The core of the toxicity characteristic regulations is the extraction procedure (EP) test, which specifies laboratory steps to be followed in analyzing samples. The test is aimed at identifying the tendency of wastes to generate a leachate with concentrations of contaminants greater than the values listed at Volume 40, Code of Federal Regulations, Part 261.24, page 406, revised July 1, 1988. If concentrations of leachable, mobile lead are found to be less than 5 mg/liter, the material is considered non-hazardous with respect to lead content.

C1

RECEIVED MAR 29 2000 ... MAIL ROOM

Please amend page 4, line 20, to read:

--lead are banned from land disposal. The current regulatory threshold--

C2

At page 8, after line 10, please add the following ['774 application at p. 4, line 27 - p.6, line 21; p. 7, lines 11-12]:

One embodiment of the present invention relates to a method of immobilizing leachable

C3



G004650

lead in contaminated soils and solid waste materials. The method comprises contacting lead in the contaminated soil or the solid waste material with a solid powder agent which includes one or more reactive sulfate ions. However, sulfuric acid and alum in liquid form can also be used. The contact is maintained for a sufficient amount of time to convert a first portion of the lead, or a species of the lead reactive with sulfate ions, in the contaminated soil or solid waste, into a substantially insoluble form.

A second step in the method comprises contacting lead in the contaminated soil or solid waste material with a phosphate supplying reagent, including one or more reactive phosphate ions. This contact is maintained for an effective amount of time to convert a second portion of the lead, or a species of the lead reactive with phosphate, in the contaminated soil or solid waste into a substantially insoluble form.

The solid powder and phosphate supplying reagent are typically contacted or mixed with the contaminated soil for a time period from about three to five hours. Five hours, is preferable particularly when the moisture content of the soil is low and ranges from about 15 percent to about 25 percent by weight. The relative order of addition of the solid powder and the phosphate supplying reagent is not critical. The phosphate supplying reagent may be added to the soil before the solid powder because each agent reacts with a specific portion of the leachable lead in the soil.

It is preferred that the phosphate supplying reagent, which includes one or more phosphate ions, be added to the contaminated soil or solid waste material in liquid form. The phosphate supplying reagent is preferably phosphoric acid dissolved in water in amounts ranging from about 5 percent to about 25 percent by weight. Phosphate ions convert the second portion

of lead to superhard mixed minerals of the apatite family, such as calcium substituted hydroxy lead apatite, lead hydroxy/chlor apitates, and pyromorphite.

The presence of both excess sulfate and phosphate together results in the formation of insoluble "hard" and "superhard" mixed minerals of lead, such as calcium lead phosphate sulfate; e.g., $Ca_{0.05} Pb_{0.95} (PO_4)_{0.5} (SO_4)_{0.25}$ and $Ca_{0.2} Pb_{0.8} (SO_4)_{0.76} (PO_4)_{0.16}$. Trace amounts of organo-lead phosphate sulfate are also formed. All these minerals of lead are heavy, with densities greater than 5.0, and usually do not dissolve in mild acid and/or water.

C3

The use of a combination of the sulfate-containing solid powder or sulfuric acid and the phosphate supplying reagent as a liquid reduces the leachable lead content of the soil chemically. This method provides a stabilized soil that is within the standard criteria, for non-hazardous waste, set under the RCRA.

Please amend page 13, line 3, to read:

--extract by the TCLP Test or by the Extraction Procedure (EP) Toxicity Test.--

C4

At page 17, after line 13, please add the following ['774 application at p. 8, lines 12-29]:

In one embodiment, the phosphate ion is added to the contaminated soil in solution form, for example, phosphoric acid may be added to water in amounts ranging from about 5 percent to about 25 percent by weight. It is preferred to have soil moisture at about 15 percent to about 25 percent by weight water in the soil in order to accelerate the fixation of the leachable lead with the phosphate ions. The solid sulfate powder and the phosphate supplying reagent are added to

C5

contaminated soil and solid waste material having a typical moisture content ranging from about 15 percent to about 25 percent by weight. At a moisture level within the foregoing range, the curing time of the treating agents ranges from about 3 to about 5 hours, which provides time for chemical reactions to precipitate and immobilize the leachable lead species. Crystals of various lead mineral species begin to form and continue to develop over the geological time frame.

C5

At page 18, after line 11, please add the following ['774 application at p. 10, line 23 - p. 11, line 32 and p. 7, lines 11-12]:

In one embodiment, the contaminated soil and solid waste material is subjected to grinding/mixing and screening through an appropriately sized mesh. The screening yields particles that are less than 3/8 inch in diameter for mixing with chemicals in conventional equipment. Gypsum, calcium sulfate powder, sulfuric acid or liquid alum ("the sulfate-containing material") is added during the grinding/mixing step or alternatively to the screened contaminated soil and solid waste material in effective amounts as defined herein.

C6

The sulfate-containing material is then transported to an area where an effective amount of a phosphate supplying reagent; for example, a phosphoric acid solution of various strengths in water, is added or sprayed just prior to thorough mixing in a pugmill. The material is mixed thoroughly so that during the curing time of about five hours various "super-hard phosphate" mineral species such as calcium substituted hydroxy lead apatities, and mixed calcium lead phosphate-sulfate agglomerates are formed, immobilizing the leachable lead in the soil completely.

The proportions of waste materials and reagents used in the method of the present

invention may be varied within relatively wide limits. For example, the amount of solid powder should be an amount sufficient to produce lead sulfate in contaminated soil or solid waste material which as a moisture content of about 15 percent to about 25 percent by weight, when cured for a time period ranging from about 3 to about 5 hours. In addition, the amount of phosphate supplying reagent should be an amount sufficient to produce mineral species such as hydroxy lead apatite in contaminated soil or solid waste material having the foregoing moisture content and subjected to the same curing time as previously noted. The amount of the solid powder and the phosphate supplying reagent is dependent on the amount of contaminant present in the soil and solid waste material, whether the material is in-situ or is excavated and brought to an offsite facility for treatment.

C6

**IN THE CLAIMS:**

~~21~~. 1 (Amended Twice) A method of treating lead-bearing material to stabilize leachable lead contained therein, said method comprising the steps of:

mixing a lead-bearing material containing leachable lead with a treatment additive comprising a first component and a second component to form a mixture, wherein said first component supplies at least one member from the group consisting of sulphates, [hydroxides,] chlorides, fluorides, halites, halides, and silicates [and calcium oxide], and wherein said second component supplies at least one phosphate anion in solution form; and

curing said mixture for a period of time to form a cured material;



G004654

**Serial No. 09/340,903** **Docket No. SES-12**

C7 wherein said lead-bearing material so treated is substantially solid in form at the end of curing, and the leachable lead level in said cured material is below 5.0 mg/l.

C8 ~~23~~ 7. (Amended) The method of treating lead-bearing material of claim ~~21~~ 1, wherein said first component is [a source of calcium ions] sulfuric acid.

C9 ~~28~~ 6. (Amended Twice) A method of treating lead-bearing soil to stabilize leachable lead contained therein, said method comprising the steps of:

mixing a lead-bearing soil containing leachable lead with a treatment additive comprising a first component and a second component to form a mixture, wherein said first component supplies at least one member from the group consisting of sulphates, [hydroxides,] chlorides, fluorides, halites, halides, and silicates [and calcium oxide], and wherein said second component supplies at least one phosphate anion in solution form; and

curing said mixture for a period of time to form a cured material;

wherein said lead-bearing soil so treated is substantially solid in form at the end of curing, and the leachable lead level in said cured material is below 5.0 mg/l.

C10 ~~30~~ 10. (Amended) The method of treating said lead-bearing soil of claim ~~28~~ 8, wherein said first component supplies sulfate [calcium] ions.

34. (Amended) The method of treating said lead-bearing soil of claim 28, wherein said first component is <u>sulfuric acid</u> [calcium oxide] and said second component is phosphoric acid.

35. (Amended Twice) A method of treating a waste matrix of lead-bearing material containing leachable lead and soil to stabilize leachable lead contained therein, said method comprising the steps of:

mixing said waste matrix with a treatment additive comprising a first component and a second component to form a mixture, wherein said first component supplies at least one member from the group consisting of sulphates, [hydroxides,] chlorides, fluorides, halites, halides, <u>and</u> silicates [and calcium oxide], and wherein said second component supplies at least one phosphate anion in solution form; and

curing said mixture for a period of time to form a cured material;

wherein said waste matrix so treated is substantially solid in form at the end of curing, <u>and</u> the leachable lead level in said cured material is below 5.0 mg/l.

37. (Amended) The method of treating said waste matrix of claim 35, wherein said first component supplies <u>sulfate</u> [calcium] ions.

41. (Amended) The method of treating said waste matrix of claim 35, wherein said first component is <u>sulfuric acid</u> [calcium oxide] and said second component is phosphoric acid.



G004656

Please add the following claims:

42. A method of immobilizing leachable lead in contaminated soils or solid waste materials comprising:

contacting contaminated soils or solid waste materials containing leachable lead with a treatment additive comprising a first component and a second component to form a mixture, wherein said first component includes one or more reactive sulphate ions, and wherein said second component is a phosphate supplying reagent; and

curing said mixture for a period of time to form a cured material;

wherein said contaminated soils or solid waste materials so treated are substantially solid in form at the end of curing and the leachable lead level in said cured material is below 5.0 mg/l.

43. The method of immobilizing leachable lead in contaminated soils or solid waste materials of claim 42, wherein said first component and said second component are liquids.

44. The method of immobilizing leachable lead in contaminated soils or solid waste materials of claim 42, wherein said phosphate supplying reagent supplies one or more reactive phosphate ions.

45. The method of immobilizing leachable lead in contaminated soils or solid waste materials of claim 42, wherein said phosphate supplying reagent is phosphoric acid, trisodium phosphate, potassium phosphate, mono basic calcium phosphate or dibasic calcium phosphate.

26 ~~46~~. The method of immobilizing leachable lead in contaminated soils or solid waste materials of claim 22 ~~42~~, wherein said first component is sulfuric acid.

27 ~~47~~. The method of immobilizing leachable lead in contaminated soils or solid waste materials of claim 22 ~~42~~, wherein said first component is sulfuric acid and said second component is phosphoric acid.

C14 28 ~~48~~. A method of immobilizing leachable lead in contaminated soils and solid waste materials comprising:

contacting contaminated soils and solid waste materials with a combination of sulfuric acid and a phosphate supplying reagent; and

curing said mixture for a period of time to form a cured material;

wherein said contaminated soils and solid waste materials so treated are substantially solid in form at the end of curing and the leachable lead level in said cured material is below 5.0 mg/l.

29 ~~49~~. The method of immobilizing leachable lead in contaminated soils and solid waste materials of Claim 28 ~~48~~, wherein said phosphate supplying reagent is phosphoric acid, trisodium phosphate, potassium phosphate, mono basic calcium phosphate or dibasic calcium phosphate.

30 ~~50~~. A method of immobilizing leachable lead in contaminated soils or solid waste materials comprising:

contacting contaminated soils or solid waste materials with a combination of a sulfate reagent which includes one or more reactive sulfate ions and a phosphate supplying reagent; and

curing said mixture for a period of time to form a cured material;

wherein said contaminated soils so treated are substantially solid in form at the end of curing and the leachable lead level in said cured material is less than 5.0 ppm of EP toxic lead.

51. The method of immobilizing leachable lead in contaminated soils or solid waste materials of claim 50, wherein said sulfate reagent and said phosphate supplying reagent are liquids.

52. The method of immobilizing leachable lead in contaminated soils or solid waste materials of claim 50, wherein said phosphate supplying reagent supplies one or more reactive phosphate ions.

53. The method of immobilizing leachable lead in contaminated soils or solid waste materials of claim 50, wherein said phosphate supplying reagent is phosphoric acid, trisodium phosphate, potassium phosphate, mono basic calcium phosphate or dibasic calcium phosphate.

54. The method of immobilizing leachable lead in contaminated soils or solid waste materials of claim 50, wherein said sulfate reagent is sulfuric acid or alum in liquid or powder form.

55. The method of immobilizing leachable lead in contaminated soils or solid waste materials

of claim 30, wherein said phosphate supplying reagent is phosphoric acid and said sulfate reagent is sulfuric acid or liquid alum.

34 26. The method of immobilizing leachable lead in contaminated soils or solid waste materials of claim 33, wherein said sulfate reagent is sulfuric acid or alum in liquid or powder form.

**REMARKS**

The applicants have added portions of the specification of parent application Serial No. 07/494,774, filed on March 16, 1990 ("the `774 application"), which was incorporated by reference in the present application.

**Rejection of Claims 21-41 under the Judicially Created Doctrine of Double Patenting**

The Examiner has rejected Claims 21-41 under the judicially created doctrine of double patenting over U.S. Patent No. 5,916,123. To overcome this rejection, applicants are herewith filing a Terminal Disclaimer executed by their attorney of record.

**Rejection of Claims 21-41 under 35 U.S.C. 102(e) and 35 US.C. 103(a)**

The Examiner has rejected Claims 21-26 and 28-41 under 35 U.S.C. 102(e) as being anticipated by U.S. Patent No. 5,202,033 to Stanforth et al. ("the `033 patent") and Claim 27 under 35 U.S.C. 102(e) as being anticipated or, in the alternative, under 35 U.S.C. 103(a), as obvious over the `033 patent.

Applicants have amended Claims 21-41 to delete "hydroxides" and "calcium oxide" from the first component group. Amended Claims 21-41 now cover a method that uses a phosphate supplying reagent and at least one member from the group consisting of sulphates, chlorides, fluorides, halites, halides, and silicates and are neither anticipated nor made obvious by the Stanforth `033 patent. Stanforth discloses a process that: "consists of introducing a treatment additive consisting of a phosphate additive **or** carbonate additive **or** a chemical reducing additive such as a ferrous sulfate into the soil or waste." Col. 5, lines 39-42. (emphasis added) Stanforth also discloses that: "The treatment additives are any of the following used individually or in combination: sodium phosphate, sodium hydrogen phosphate, superphosphate, triple superphosphate, phosphoric acid, polyphosphoric acid, sodium carbonate, sodium bicarbonate, calcium carbonate, agricultural lime, and water softening sludge from municipal water softening plants." Col. 5, lines 56-63.

Stanforth does not teach the use of a phosphate and a sulfate for the treatment of lead contaminated soils and waste materials. Stanforth's only teaching of a sulfate is for the treatment of chromium and not lead. "Ferrous sulfate can be used to control chromium leaching." Col. 5, lines 64-65. Stanforth et al. clearly describe how ferrous sulfate is only used for the treatment of chromium: "The treatment is accomplished by adding materials containing phosphates or carbonates of greater solubility than the heavy metal phosphates or carbonates to be formed. **Where chromium is present as a heavy metal of concern, the additive is ferrous sulfate.**" Col. 4, lines 14-19 (emphasis added).

Table 1 of the Stanforth `033 patent (Col. 6) lists the additives that are used in the process

and none of the treatment methods shown in Table I use both a phosphate and a sulfate. Moreover, Table 1 clearly shows that "ferrous sulfate" is used only for the treatment of hexavalent chromium. There is nothing in the `033 patent that teaches or suggests that a phosphate and a sulfate can be used together to treat leachable lead and reduce the leachable lead to below 5.0 mg/l as measured by either the EP toxicity level or the TCLP level.

Applicants have added Claims 42-56 based on the additional disclosure from the `774 application that is being added by the present amendment. The elements of the claims are disclosed in the `774 application as follows:

**1. The use of a powder or a liquid sulfate source:**

The first step of this innovative process comprises converting leachable lead in contaminated soil or solid waste materials with a solid powder. The solid powder includes one or more sulfate minerals, often referred to as "hard sulfates," which are insoluble in water. In this invention, dry calcium sulfate or gypsum powder is a preferred solid for blending with lead contaminated materials. However, **sulfuric acid and alum in liquid or powder form can also be used**. (page 7, lines 4-12)

**2. The use of a phosphate source:**

After treatment with the solid powder, the contaminated soil or solid waste material is treated with a phosphate supplying reagent which in contact with the soil reacts chemically to immobilize the remaining leachable lead. **The phosphate supplying reagent includes any phosphate ion source having one or more reactive phosphate ions**; for example, phosphoric acid, trisodium phosphate, a potassium phosphate and mono basic or dibasic calcium phosphates. (page 7, line 29 to page 8, line 4)

**3. That the order of adding the sulfate and phosphate supplying reagent is interchangeable:**

The relative **order** of addition of the solid powder and the phosphate supplying reagent **is not critical**. The phosphate supplying regent may be added to the soil before the solid powder because each agent reacts with a specific portion of the leachable lead in the soil. (page 5, lines 18-22)

4. **The process forms insoluble compounds by a chemical reaction:**

Presence of both excess sulfate and phosphate together results in formation of insoluable [sic] "hard" and "superhard" mixed minerals of lead, such as calcium lead phosphate sulfate. (page 6, lines 8-11)

The use of a combination of the sulfate-containing solid powder and the phosphate supplying reagent as a liquid **reduces the leachable lead content of the soil chemically.** (page 6, lines 16-19)

5. **The reagents require 3 to 5 hours of curing:**

The solid sulfate powder and the phosphate supplying reagent are added to contaminated soil and solid waste material having a typical moisture content ranging from about 15 percent to about 25 percent by weight. At a moisture level within the foregoing range, the **curing time of the treating agent ranges from about 3 to about 5 hours**, which provides time for chemical reactions to precipitate and immobilize the leachable lead species. (page 8, lines 19-26)

The `774 application discloses that, after the reagents are added to the material being treated, it takes at least 3 hours for the chemical reactions to be completed. Thus, the reaction of the sulfate and the reaction of the phosphate are both taking place at the same time. It is not required that one reaction goes to completion before the second is initiated. This is further emphasized by the schematic in Figure 1, which is described as follows:

The method of the present invention is schematically represented in Figure 1. The contaminated soil and solid waste material 10 is subjected to grinding/mixing 12 and

> screening 14 through an appropriately sized mesh. The screening yields particles that are less than 3/8 inch in diameter for mixing with chemicals in conventional equipment. Gypsum or calcium sulfate powder (the solid powder 16) is added during the grinding/mixing step or alternatively (as shown by the dashed line) to the screened contaminated soil and solid waste material in effective amounts as defined herein. The leachable lead is chemically bound and firms lead sulfate, which crystallizes to a synthetic nucleus of mixed calcium anglesite and pure anglesite minerals identified in the treated material.
>
> The gypsum-containing material is then transported to an area where an effective amount of a phosphate supplying reagent 18; for example, a phosphoric acid solution of various strengths in water 20, is added or sprayed just prior to thorough mixing in a pugmill 22. The material is mixed thoroughly so that during the curing time of about five hours various "super-hard phosphate" mineral species such as calcium substituted hydroxy lead apatites, and mixed calcium lead phosphate-sulfate agglomerates and poorly developed crystals (the treated soil or solid waste 24) are formed, immobilizing the leachable lead in the soil completely. (page 10, line 22 to page 11, line 14)

Furthermore, the continuous process depicted in Figure 1 shows the sulfate reagent added first, followed by the addition of the phosphate reagent almost immediately thereafter. In such a process, the elapsed time between the addition of the two reagents would be less than a minute. Therefore, the two reagents react simultaneously with the lead in the soil or other material over the three to five hours required for curing. It is not necessary for the first reagent to react with the waste material before the second reagent can be added.

## ADDITIONAL CLAIMS FEE

The fee for the claims added by this amendment is calculated as follows:

| Added by Amendment | Number | | Fee per claim | | Total |
|---|---|---|---|---|---|
| Independent Claims in excess of 3: | 3 | x | $39.00 | = | $117.00 |
| Claims in excess of 20: | 15 | x | $9.00 | = | $135.00 |
| **TOTAL** | | | | | $252.00 |

**Serial No. 09/340,903** **Docket No. SES-12**

## CONCLUSION

Applicants have amended Claims 21-41 to traverse the rejections based on the Stanforth et al. `033 patent and are filing a Terminal Disclaimer herewith to overcome the rejection for double patenting. In addition, applicants have amended the specification to add disclosure from the `774 parent application which predates the `033 patent. Accordingly, Applicants submit that the claims are now in proper condition for allowance and request favorable action.

Respectfully submitted,

Date: March 21, 2000

Kevin E. McDermott, Esq.
Reg. No.: 35,946
3 Vanderbilt Drive, Suite E-77
Mineola, New York 11501
(516) 747-7137

KEM/ns/SES-12



G004665