[redacted]

5193936

*5193936*

SERIAL NUMBER 07/721935 | PATENT DATE MAR 16 1993 | PATENT NUMBER

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 07/721,935 | 07/23/91 | 405 | 128 | 3501 3626 | Corbin |

APPLICANTS: DHIRAJ PAL, CHICAGO HGTS., IL; KARL YOST, CRETE, IL.

**CONTINUING DATA********************* Corbin ...

VERIFIED THIS APPLN IS A CIP OF 07/494,774 03/16/90 ABN

DHC

**FOREIGN/PCT APPLICATIONS************

VERIFIED

none DHC

***** SMALL ENTITY *****

| Foreign priority claimed / 35 USC 119 conditions met / Verified and Acknowledged (Examiner's Initials) | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| ☐ yes ☒ no / ☐ yes ☐ no / DHC | → | IL | 1 | 16 | 2 | $315.00 | ~~181743A1~~ |

ADDRESS: ~~STUART I. GRAFF~~ ~~SCHIFF HARDIN & WAITE~~ ~~7200 SEARS TOWER~~ ~~CHICAGO, IL 60606~~

~~Andrew Kotz~~ ~~Elliot, Bray & Riley~~ 1225 ~~I Street, N.W. Ste. 400~~ Washington, DC 20005-3914 #16

Kevin E. McDermott, Wyatt Gerber Burke & Badie, 645 Madison Ave, New York NY 10022

TITLE: FIXATION AND STABILIZATION OF LEAD IN CONTAMINATED SOIL AND SOLID WASTE

U.S. DEPT. of COMM.-Pat. & TM Office—PTO-436L (rev. 10-78)

PARTS OF APPLICATION FILED SEPARATELY

| NOTICE OF ALLOWANCE MAILED | PREPARED FOR ISSUE | CLAIMS ALLOWED |
|---|---|---|
| 10/2/92 | Assistant Examiner / Docket Clerk | Total Claims: 20 / Print Claim: 1 |

| ISSUE FEE Amount Due | Date Paid | Primary Examiner | DRAWING Sheets Drwg. | Figs. Drwg. | Print Fig. |
|---|---|---|---|---|---|
| 585.00 | 12-23-92 | DHC David H. Corbin 3501 | 1 | 1 | 1 |

| Label Area | ISSUE CLASSIFICATION Class | Subclass | ISSUE BATCH NUMBER |
|---|---|---|---|
| | 405 | 128 | G98 |

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-436
Rev. 9/90

What is claimed is:

1. A treatment process for treating lead-toxic solid wastes to stabilize leachable lead contained therein comprising the steps of:

mixing the solid waste with a sulfate compound having at least one sulfate ion for reacting with said leachable lead to produce a first substantially insoluble lead compound or mineral species; and

mixing said solid waste and sulfate compound with a phosphate reagent having at least one phosphate ion for reacting with said leachable lead to produce a second substantially insoluble lead compound or mineral species;

curing the mixture of solid waste, sulfate compound and phosphate reagent for a period of 3-5 hours;

whereby the material so treated is substantially solid in form at the end of curing, TCLP lead levels are decreased below 5.0 mg/ℓ, the volume of said solid waste is reduced as a result of treatment and curing, and no secondary waste streams are generated.

2. The treatment process of claim 1, wherein said sulfate compound is selected from the group consisting of calcium sulfate, gypsum, sulfuric acid and alum.

3. The treatment process of claim 1, wherein said sulfate compound is supplied in the form of a dry powder homogeneously mixed with the said solid waste.

4. The treatment process of claim 2, wherein said sulfate composition is supplied in the form of a dry powder homogeneously mixed with the said solid waste.

5. The treatment process of claim 1, wherein said sulfate compound is supplied in the form of a liquid homogeneously mixed with the said solid waste.

6. The treatment process of claim 2, wherein said sulfate compound is supplied in the form of a liquid homogeneously mixed with the said solid waste.

7. The treatment process of claim 1, wherein said phosphate reagent is selected from the group consisting of phosphoric acid, mono-, di- and tri-basic phosphates.

8. The treatment process of claim 1, wherein said phosphate reagent is supplied as an aqueous solution.

9. The treatment process of clam 1, wherein said phosphate reagent is supplied in the form of a solid from the group consisting of mono-, di- and tribasic phosphates.

10. The treatment process of claim 1, wherein the leachable lead is converted to superhard phosphates and phosphate-sulfate mixed mineral crystals, calcium-substituted anglesites, anglesites, and pyromorphites.

11. The treatment process of claim 1, wherein the amount of sulfate composition employed is from about 0-30 percent of the weight of waste material being treated.

12. The treatment process of claim 1, wherein the amount of phosphate reagent employed is from about 0-30 percent of the weight of waste material being treated.

13. The treatment process of claim 1, wherein the solid waste is permitted to cure for 3-5 hours.

14. A treatment process for treating solid wastes to stabilize leachable lead contained therein comprising the steps of:

mixing the solid waste with gypsum to produce a first substantially insoluble lead compound or mineral species; and

mixing said solid waste and gypsum with phosphoric acid to produce a second substantially insoluble lead compound or mineral species;

curing the mixture of solid waste, gypsum and phosphoric acid for a period of 3-5 hours;

whereby the material so treated is substantially solid in form at the end of curing, TCLP lead levels are decreased below 5.0 mg/ℓ, the volume of said solid waste is reduced as a result of treatment and curing, and no secondary waste streams are generated.

15. The treatment process of claim 14, wherein the amount of gypsum employed is from about 0-30 percent of the weight of waste material being treated.

16. The treatment process of claim 14, wherein the amount of phosphoric acid employed is from about 0-30 percent of the weight of waste material being treated.

W

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/721,935 | 07/23/91 | PAL | D 181743A1 |

| EXAMINER | |
|---|---|
| CORBIN, D | |
| **ART UNIT** | **PAPER NUMBER** |
| 3501 | 4 |

DATE MAILED: 05/15/92

STUART I. GRAFF
SCHIFF HARDIN & WAITE
7200 SEARS TOWER
CHICAGO, IL 60606

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined ☐ Responsive to communication filed on ______ ☐ This action is made final.

A shortened statutory period for response to this action is set to expire THREE month(s), 0 days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.
2. ☒ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ ______

**Part II SUMMARY OF ACTION**

1. ☒ Claims 1-16 are pending in the application.

   Of the above, claims ______ are withdrawn from consideration.

2. ☐ Claims ______ have been cancelled.
3. ☐ Claims ______ are allowed.
4. ☒ Claims 1-16 are rejected.
5. ☐ Claims ______ are objected to.
6. ☐ Claims ______ are subject to restriction or election requirement.
7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.
8. ☐ Formal drawings are required in response to this Office action.
9. ☐ The corrected or substitute drawings have been received on ______. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).
10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on ______ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).
11. ☐ The proposed drawing correction, filed on ______, has been ☐ approved. ☐ disapproved (see explanation).
12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. ______; filed on ______.
13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. ☐ Other

53

EXAMINER'S ACTION

PTOL-326 (Rev. 9-89)

Claims 11, 12, 15, and 16 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

The range "0-30 percent" contradicts the limitations of claims 1 and 14 since the components could not be mixed if "o percent" were employed.

The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>
> Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Claims 1-16 are rejected under 35 U.S.C. § 103 as being unpatentable over Stanforth in view of Bonee and Douglas et al.

Stanforth discloses a method of immobilizing leachable heavy metals such as lead in substantially dry solid waste materials. The Stanforth method involves mixing the waste material with an agent which may be either calcium carbonate or magnesium

carbonate. After the agent and waste materials mixed, the heavy metals will be converted to materials which are contaminated with heavy metals such as vanadium, nickel, and sodium. The treatment disclosed by Bonee involves treating the waste with an alkaline earth metal compound such as calcium sulfate to inhibit leaching of the heavy metals. Douglas et al disclose a process for reducing leaching of heavy metals such as lead from waste material by contacting the material with phosphoric acid or an acid phosphate salt. It would have been obvious to one of ordinary skill in the art, given the teachings of Stanforth, Bonee, and Douglas et al, to treat the leachable lead in the Stanforth waste material with calcium sulfate, as taught by Bonee, and with phosphoric acid, as taught by Douglas et al, in order to effectively reduce the amount of leachable lead by converting the leachable lead into a substantially insoluble form. Each of the references attempts to solve the problem of heavy metals leaching from waste materials. Bonee and Douglas et al treat the waste materials with different agents and thus produce chemically different insoluble lead compounds. If it were desired to achieve minimum leachability of lead from the lead containing dry solid waste material of Stanforth, one would recognize that the cumulative effect achieved by the combined use of both the Bonee and Douglas treatment materials would render the desired result. As to factors such as the reaction time and

moisture content, it is considered that one of ordinary skill in the art could readily determine same for any give situation.

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Examiner David H. Corbin whose telephone number is (703) 308-2168.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 308-2168.

DC/DB
May 04, 1992

David H. Corbin
David H. Corbin
Primary Examiner
Art Unit 351

56

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP–APART AND DISCARD CARBON

FORM PTO-892 (REV. 3-78)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

**NOTICE OF REFERENCES CITED**

SERIAL NO.: 721,935
GROUP ART UNIT: 2501
ATTACHMENT TO PAPER NUMBER: 4
APPLICANT(S): PAL

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| * | A | 4443133 | 4-1984 | BARRETT | 405 | 263 | |
| * | B | 4530765 | 7-1985 | SABHERWAL | 210 | 912 X | |
| * | C | 4671882 | 6-1987 | DOUGLAS ET AL | 210 | 912 X | |
| * | D | 4701219 | 10-1987 | BONEE | 106 | 118 | |
| * | E | 4889640 | 12-1989 | STANFORTH | 210 | 751 | |
| * | F | 4935146 | 6-1990 | O'NEILL ET AL | 210 | 912 X | 11-15-88 |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

**OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)**

R

S

T

U

58

EXAMINER: DAVID H. CORBIN
DATE: 4-30-92

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

MAIL ROOM AUG 17 1992 PAT. & TRADEMARK

66338-3

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of: ) PATENT

Dhiraj PAL et al. ) Group: 3501

Serial No.: 721,935 ) Examiner: D. Corbin

Filed: July 23, 1991 )

FIXATION AND STABILIZATION OF LEAD IN CONTAMINATED SOIL AND SOLID WASTE )

* * * * * * *

AMENDMENT

RECEIVED AUG 18 1992 GROUP 350

Washington, D.C.
August 17, 1992

Honorable Commissioner of
Patents and Trademarks
Washington, D.C. 20231

S I R:

In response to the Office Action of May 15, 1992, please amend the above-identified application as follows:

IN THE CLAIMS:

Please amend claims 1, 11-12 and 14-16 as follows:

1. (Once Amended) A treatment process for treating lead-toxic solid wastes to stabilize leachable lead contained therein, said process comprising the steps of:

mixing [the] a solid waste containing leachable lead with a sulfate compound having at least one sulfate ion for reacting with said leachable lead to produce a first mixture, said first mixture containing a substantially insoluble lead compound or mineral species; and

mixing said [solid waste and sulfate compound] first mixture with a phosphate reagent having at least one phosphate ion for reacting with [said] leachable lead remaining in said first mixture to produce a second mixture, said second mixture containing a substantially insoluble lead compound or mineral species;

curing [the] said second mixture [of solid waste, sulfate compound and phosphate reagent] for a period [of 3-5 hours;]

[whereby] such that the material so treated is substantially solid in form at the end of curing, the material passes the paint

a' cont

filter test, TCLP lead levels are decreased below 5.0 mg/l, the volume of said solid waste is reduced as a result of treatment and curing, and no secondary waste streams are generated.

a2

11. (Once Amended) The treatment process of claim 1, wherein the [amount of] sulfate composition is employed [is from about 0-30] in an amount of up to about 30 percent of the weight of waste material being treated.

12. (Once Amended) The treatment process of claim 1, wherein the [amount of] phosphate reagent is employed [is from about 0-30] in an amount of up to about 30 percent of the weight of waste material being treated.

a3

14. (Once Amended) A treatment process for treating solid wastes to stabilize leachable lead contained therein, said process comprising the steps of:

mixing [the] a solid waste containing leachable lead with gypsum to produce a first mixture, said first mixture containing a substantially insoluble lead compound or mineral species; and

mixing said [solid waste and sulfate compound] first mixture with phosphoric acid for reacting with leachable lead remaining in said first mixture to produce a second mixture, said second mixture containing a substantially insoluble lead compound or mineral species;

curing [the] said second mixture [of solid waste, gypsum and phosphoric acid] for a period [of 3-5 hours;]

[whereby] such that the material so treated is substantially solid in form at the end of curing, the material passes the paint filter test, TCLP lead levels are decreased below 5.0 mg/l, the volume of said solid waste is reduced as a result of treatment and curing, and no secondary waste streams are generated.



30 61

17 ~~15~~. (Once Amended) The treatment process of claim 16 ~~14~~, wherein the [amount of] gypsum is employed [is from about 0-30] in an amount of up to about 30 percent of the weight of waste material being treated.

a3 Cont

18 ~~16~~. (Once Amended) The treatment process of claim 16 ~~14~~, wherein the [amount of] phosphoric acid is employed [is from about 0-30] in an amount of up to about 30 percent of the weight of waste material being treated.

Please add new claims 17-21 as follows:

14 ~~17~~. A treatment process according to claim 1, wherein said solid waste has a moisture content of from about 10 to about 40 percent by weight.

a4

19 ~~18~~. A treatment process according to claim 16 ~~14~~, wherein said solid waste has a moisture content of from about 10 to about 40 percent by weight.

15 ~~19~~. A treatment process according to claim 1, wherein said step of curing lasts for a period of 3 to 5 hours.

20. A treatment process according to claim 16 ~~14~~, wherein said step of curing lasts for a period of 3 to 5 hours.

~~21. A treatment process for treating lead-toxic solid wastes to stabilize leachable lead contained therein, said process comprising the steps of:~~

~~mixing a solid waste containing leachable lead with one of a sulfate compound having at least one sulfate ion and a phosphate reagent having at least one phosphate ion, said sulfate ion or said phosphate ion for reacting with said leachable lead to produce a~~



62

first mixture, said first mixture containing a substantially insoluble lead compound or mineral species; and

mixing said first mixture with the other of said sulfate compound and phosphate reagent for reacting with leachable lead remaining in said first mixture to produce a second mixture, said second mixture containing a substantially insoluble lead compound or mineral species;

curing said second mixture for a period such that the material so treated is substantially solid in form at the end of curing, the material passes the paint filter test, TCLP lead levels are decreased below 5.0 mg/l, the volume of said solid waste is reduced as a result of treatment and curing, and no secondary waste streams are generated.--

a 4
Cont.

REMARKS

Claims 1-16 remain herein and new claims 17-21 are added hereby. Claims 1, 11-12 and 14-16 are amended hereby. Thus, claims 1-21 are pending.

Claims 11, 12, 15 and 16 were rejected under 35 U.S.C. §112, second paragraph. These claims have been amended to recite that both a sulfate compound and a phosphate reagent are each employed in an amount of up to 30 percent by weight.

Applicants wish to thank the Examiner for the courtesy extended to applicants' representative during the personal interview of August 11, 1992. During the interview, the 35 U.S.C. §112, second paragraph rejection of claims 11, 12, 15 and 16 was discussed. The Examiner agreed that the changes shown above to these claims overcomes this rejection. During the interview, the rejections of claims 1-16 under 35 U.S.C. §103 was also discussed. In particular, applicants' representative emphasized that the Douglas et al. patent does not relate to the treatment of solid waste but rather to a liquid treatment. The above changes to the claims of the present invention were discussed and it was noted that these claims more particularly recite a treatment of solid



63

waste materials. The Examiner agreed that the above changes to the claims help distinguish the present invention from the combination of the prior art.

In view of the discussions at the interview and for the reasons set forth herein, reconsideration and withdrawal of the rejection of claims 1-16 under § 103 is respectfully requested.

In addition to the above distinctions between the Douglas et al. reference and the present invention, applicants further point out that the methods of Douglas et al. relate to methods of precipitating metals from liquid solutions. The only mention of sulfuric acid in the reference is to provide a way to lower the pH of the treatment solution.

Also, the liquid wastes applicable for a treatment according to the Douglas et al. reference preferably have a solids content of not greater than about 20% by weight (See Douglas et al., column 2, lines 66-68). Even after dewatering, the water content of the resulting sludge is still typically between about 50 and 55% by weight. The products of the Douglas et al. reference would in no way pass the paint filter test. Also, the treatments of Douglas et al. produce both a liquid waste stream and a sludge waste stream. The treatments according to the present invention produce no secondary waste streams.

While all claims of the present invention have been amended to more particularly recite treatment of a solid waste, new claims 17 and 18 are even further distinguished from the prior art since they relate to treatments of wastes having from about 10 to about 40 percent by weight moisture.

While the Douglas et al. patent is clearly distinguished from the present invention, applicants further wish to point out significant distinctions which exist between the present invention and the Stanforth and Bonee references. In particular, applicants wish to mention that the Stanforth reference was particularly discussed at the interview. As discussed, the Stanforth reference



64

relates to the treatment of solid hazardous wastes with various carbonates. The Stanforth reference fails to disclose or suggest any treatment with sulphates or phosphates.

It was also pointed out at the interview that the Bonee reference strictly relates to a treatment of solid waste containing vanadium, nickel and sodium. No method of treating a solid waste containing lead is disclosed in Bonee. The reference also fails to disclose methods of preventing leaching of lead.

New claim 21 has been added to encompass a process according to the present invention wherein a sulphate compound may be added to a phosphate-treated soil. This claim differs from those claims discussed at the interview in that claims 1-20 relate to a sulphate-treated soil being subsequently treated by a phosphate reagent. Support for new claim 21 can be found on page 10, line 24 to page 11, line 3 of the specification.

In view of the many distinctions between the present invention and the inventions of the cited prior art, it is respectfully submitted that the present invention, as recited in claims 1-21, is clearly distinguished from the prior art and defines patentable subject matter.

Should the Examiner deem that any further action by applicants or applicants' representative is desirable, the Examiner is invited to telephone the undersigned at the number set forth below.

Respectfully submitted,

[signature]

Leonard D. Bowersox
Registration No. 33,226

WATSON, COLE, GRINDLE & WATSON
1400 K Street, N.W.
Washington, D.C. 20005-2477
(202) 628-0088



65

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/721,935 | 07/23/91 | PAI | D |

EXAMINER: CORBIN, D

ANDREW KATZ
ELLIOT, BRAY & RILEY
1225 I STREET, N.W. SUITE 400
WASHINGTON, DC 20005-3914

| ART UNIT | PAPER NUMBER |
|---|---|
| 3501 | 9 / 18 |

DATE MAILED: 10/02/92 10-1-92

## NOTICE OF ALLOWABILITY

**PART I.**

1. [X] This communication is responsive to 08-17-92 AMENDMENT.
2. [X] All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.
3. [X] The allowed claims are 1-20.
4. [ ] The drawings filed on ______ are acceptable.
5. [ ] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [_] been received. [_] not been received. [_] been filed in parent application Serial No. ______, filed on ______.
6. [X] Note the attached Examiner's Amendment.
7. [ ] Note the attached Examiner Interview Summary Record, PTOL-413.
8. [ ] Note the attached Examiner's Statement of Reasons for Allowance.
9. [ ] Note the attached NOTICE OF REFERENCES CITED, PTO-892.
10. [ ] Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. [ ] Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.
2. [X] APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.
   a. [X] Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. __4__. CORRECTION IS REQUIRED.
   b. [ ] The proposed drawing correction filed on ______ has been approved by the examiner. CORRECTION IS REQUIRED.
   c. [ ] Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.
   d. [ ] Formal drawings are now REQUIRED.

---

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

**Attachments:**

- [X] Examiner's Amendment
- _ Examiner Interview Summary Record, PTOL-413
- _ Reasons for Allowance
- _ Notice of References Cited, PTO-892
- _ Information Disclosure Citation, PTO-1449
- _ Notice of Informal Application, PTO-152
- _ Notice re Patent Drawings, PTO-948
- _ Listing of Bonded Draftsmen
- _ Other

R 30146 10/14/92 07721935 23-0575 030 203 10.00CH

An Examiner's Amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 C.F.R. § 1.312. To ensure consideration of such an amendment, it **MUST** be submitted no later than the payment of the Issue Fee.

Claim 21 has been canceled.

Deposit Account No. 23-0575 has been charged an additional fee of $10.00 for an extra claim submitted with the amendment of August 17, 1992.

Authorization for this Examiner's Amendment was given in a telephone interview with applicants' representative, Leonard D. Bowersox, on September 30, 1992.

D. H. Corbin/dhc
703-308-2168

David H. Corbin
David H. Corbin
Primary Examiner
Art Unit 351

12

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

ANDREW KATZ
ELLIOT, BRAY & RILEY
1225 I STREET, N.W. SUITE 400
WASHINGTON, DC 20005-3914

**NOTICE OF ALLOWANCE AND ISSUE FEE DUE**

☐ Note attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed ____________

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/721,935 | 07/23/91 | 020 | CORBIN, D | 3501 | 10/02/92 |

First Named Applicant: PAL, DHIRAJ

TITLE OF INVENTION: FIXATION AND STABILIZATION OF LEAD IN CONTAMINATED SOIL AND SOLID WASTE

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| | | 405-128.000 | G98 | UTILITY | YES | $585.00 | 01/04/93 |

***THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.***

***THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.***

## HOW TO RESPOND TO THIS NOTICE:

I. Review the SMALL ENTITY Status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the Status is changed, pay twice the amount of the FEE DUE shown above and notify the Patent and Trademark Office of the change in status, or
B. If the Status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:

A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with, payment of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE. Even if the ISSUE FEE has already been paid by a charge to deposit account, Part B should be completed and returned. If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number. Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

***IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees.***

73

**PATENT AND TRADEMARK OFFICE COPY**

PTOL-85 (REV 12-88)(OMB Clearance is pending)

$1170.00 142 B

PART B - ISSUE FEE TRANSMITTAL

***MAILING INSTRUCTIONS:*** This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advanced orders and notification of maintenance fees will be mailed to addressee entered in Block 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block 3 below; or (b) providing the PTO with a separate "FEE ADDRESS" for maintenance fee notifications with the payment of Issue Fee or thereafter. **See reverse for Certificate of Mailing.**

1. CORRESPONDENCE ADDRESS

MAIL ROOM DEC 23 1992 98 PAT. & TRADEMARK OFF.

ANDREW KATZ
ELLIOT, BRAY & RILEY
1225 I STREET, N.W. SUITE 400
WASHINGTON, DC 20005-3914

2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change)

INVENTOR'S NAME

Street Address

City, State and ZIP Code

CO-INVENTOR'S NAME

Street Address

City, State and ZIP Code

☐ Check if additional changes are on reverse side

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/721,935 | 07/23/91 | 020 | CORBIN, D | 3501 | 10/02/92 |

First Named Applicant: PAI, DHIRAJ

TITLE OF INVENTION: FIXATION AND STABILIZATION OF LEAD IN CONTAMINATED SOIL AND SOLID WASTE

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| | | 405-128.000 | 098 | UTILITY | ~~XXXX~~ | ~~XXXXXXX~~ $1,170.00 | 01/04/93 |

3. Further correspondence to be mailed to the following:

Leonard D. Bowersox
WATSON, COLE, GRINDLE & WATSON
1400 K Street, N.W., Suite 725
Washington, DC 20005

4. For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed.

1 Andrew B. Katz
2 Leonard D. Bowersox
3

DO NOT USE THIS SPACE

100 TW 12/31/92 07721935 1 142 1,170.00 CK

5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT (print or type)

(1) NAME OF ASSIGNEE:
MAECORP Incorporated

(2) ADDRESS: (City & State or Country)
Chicago, Illinois

(3) STATE OF INCORPORATION, IF ASSIGNEE IS A CORPORATION
Delaware

A. ☐ This application is NOT assigned.

☐ Assignment previously submitted to the Patent and Trademark Office.

XXX Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS.

***PLEASE NOTE:*** Unless an assignee is identified in Block 5, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

6a. The following fees are enclosed: ck#13880-$1,170.00

☒ Issue Fee ☐ Advanced Order - # of Copies ____ (Minimum of 10)

6b. The following fees should be charged to:
DEPOSIT ACCOUNT NUMBER 23-0575
(Enclose Part C)

☐ Issue Fee ☐ Advanced Order - # of Copies ____

☒ Any Deficiencies in Enclosed Fees (Minimum of 10)

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.

(Signature of party in interest of record) Leonard D. Bowersox, RegNo. 33,226 (Date) 12/23/92

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

over

TRANSMIT THIS FORM WITH FEE-CERTIFICATE OF MAILING ON REVERSE

PTOL-85B (REV 12-88)(OMB Clearance is pending)

Assignment to

74DV