**IN THE UNITED STATES COURT**
**OF FEDERAL CLAIMS**

| | |
|---|---|
| **SEVENSON ENVIRONMENTAL SERVICES, INC.,** Plaintiff, vs. **THE UNITED STATES,** Defendant, and **SHAW ENVIRONMENTAL, INC.,** Defendant-Intervenor. | **Case No.: 05-1075C** **Judge Thomas C. Wheeler** |

**SEVENSON ENVIRONMENTAL SERVICES, INC.'S LODGING OF MATERIALS USED AT SEPTEMBER 12, 2007 SUMMARY JUDGMENT HEARING**

Plaintiff Sevenson Environmental Services, Inc. hereby makes part of the record the materials it provided to the Court and counsel for the Defendant and Intervenor at the September 12, 2007 summary judgment hearing.

Respectfully submitted,

Dated: September 14, 2007

s/Brian E. Ferguson
Brian E. Ferguson
McDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, D.C. 20005
(202) 756-8000
bferguson@mwe.com

WEBSTER SZANYI LLP
Kevin A. Szanyi
Nelson Perel
Todd M. Schiffmacher
1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800
nperel@websterszanyi.com

Attorneys for Plaintiff, Sevenson Environmental Services, Inc.

# TABLE OF CONTENTS

1. June 25, 2007 Stipulated Facts

2. Asserted Independent Claims of the Sevenson Patents

3. The Court's Claim Constructions for the Asserted Limitations

4. Substituting the Court's Construction into the Claims

5. Why the Activities at the Colonie Site Meet this Claim Language

6. Why Defendants' Arguments Do Not Defeat Sevenson's Right to Partial Summary Adjudication

7. There is No Prosecution History Disclaimer Here

# **TAB 1**

**IN THE UNITED STATES COURT**
**OF FEDERAL CLAIMS**

| | |
|---|---|
| **SEVENSON ENVIRONMENTAL SERVICES, INC.,**<br>**Plaintiff,**<br>**vs.**<br>**THE UNITED STATES,**<br>**Defendant,**<br>**and**<br>**SHAW ENVIRONMENTAL, INC.,**<br>**Defendant-Intervenor.** | **Case No.: 05-1075C**<br>**Judge Thomas C. Wheeler** |

**STATEMENT OF STIPULATED FACTS**

**A. National Hazardous Waste Cleanup Initiatives**

1. This case involves cleanup and remediation work at one of the many waste disposal sites in the United States that are contaminated with hazardous waste and petroleum products from a variety of industrial sources. *See generally* "Cleaning Up the Nation's Waste Sites: Markets and Technology Trends," (EPA, 2004 ed.), Executive Summary at v.

2. The EPA has established methods for determining whether an environmental medium is contaminated and requires action. Method 1311, the "Toxicity Characteristic Leaching Procedure" (TCLP), is designed to determine "the mobility of both organic and inorganic analytes present in liquid, solid, and multiphase wastes." EPA Publication, TCLP Method 1311 (effective November 8, 1990). To determine "toxicity," EPA's regulations identify 40 possible contaminants and regulatory levels. If any of the contaminants in a representative

sample exceeds the regulatory level, the sample is considered to be a Resource Conservation and Recovery Act (RCRA) hazardous sample. 40 C.F.R. § 261.24, Table 1. As relevant here, the regulatory level for lead is 5.0 milligrams per liter (mg/l). *Id*.

**B. Sevenson's Patents**

3. The five Sevenson patents at issue are U.S. Patent Nos. 5,527,982 ("the '982 patent"); 5,732,367 ("the '367 patent"); 5,916,123 ("the '123 patent"); 5,994,608 ("the '608 patent"); and 6,139,485 ("the '485 patent").

4. Sevenson's technology is based upon chemical bonding reactions involving lead and radionuclides with a combination of treatment chemicals, such as a combination of sulfates and phosphates.

5. One objective of Sevenson's patented technology is to reduce the amount of leachable lead at a hazardous site to below EPA's TCLP standard. *See* '982 Patent, col. 3, lines 42-48 ("It is an object of the present invention to provide a method of treating metal-bearing materials, contaminated soils and waste effluent, and solid wastes containing hazardous levels of leachable metal. It is a further object to provide a method which decreases the leaching of lead in lead-bearing materials to levels below the regulatory limit of 5 mg/l by TCLP test criteria.").

6. The five Sevenson patents contested in this action are all related. The issue dates of the five patents are as follows: '982 patent – June 18, 1996; '367 patent – March 24, 1998; '123 patent – June 29, 1999; '608 patent – November 30, 1999; '485 patent – October 31, 2000. The '982 patent contains 31 claims, of which Sevenson is asserting claims 1-5 and 9. The '367 patent contains 16 claims, of which Sevenson is asserting claims 11, 13, 14, and 16. The '123 patent contains 28 claims, of which Sevenson is asserting claims 1-7 and 15-20. The '608 patent contains 40 claims, of which Sevenson is asserting claims 1-7, 11-24, and 26-30. The '485 patent contains 36 claims, of which Sevenson is asserting claims 1-6 and 15-36.

**C. Corps of Engineers' Contracts at the Colonie Site**

7. The contaminated site at Colonie, New York, near Albany, is owned by the United States Government Department of Energy ("DOE"), and has been designated for remediation under the Formerly Utilized Sites Remedial Action Program ("FUSRAP") that the Army Corps of Engineers executes for the DOE. The hazardous substances found at the Colonie site include, *inter alia*, lead and radionuclides. The contaminated soil resulted from activities conducted at the Colonie site from 1930 until the 1980s.

8. The Corps of Engineers awarded an initial contract to ICF Kaiser Engineers, Inc. ("ICF Kaiser") for cleanup work at the Colonie site. In April 1999, the IT Group, Inc. acquired the Colonie site remediation contract from ICF Kaiser. IT Corporation ("IT") then acquired the contract from the IT Group, and performed the remediation work for the Corps of Engineers at the Colonie site. On January 16, 2002, IT filed for bankruptcy. Shaw Environmental, Inc. obtained the assets of certain IT companies on May 3, 2002, and continued performing the cleanup work at the Colonie site.

9. At the Colonie site, some of the excavated soils contained lead which leached above the RCRA TCLP criteria of 5.0 mg/l.

**D. The Phosphoric Acid Used At The Site In Colonie, New York**

10. The Army Corps of Engineers used "Prayphos P5" phosphoric acid at the Colonie site. This product was manufactured by the purified wet-process, where phosphate minerals, largely calcium phosphate minerals, within the phosphate rock are reacted with or without weak phosphoric acid, and sulfuric acid. Sulfuric acid contains sulfate.

11. Prayphos P5 phosphoric acid contains phosphoric acid, aqueous phosphate, phosphate anions, phosphate compounds and impurities as a result of the incomplete chemical reactions, purification steps, and mechanical separation. The product is concentrated liquid containing about 75 percent $H_3PO_4$ based on phosphate content and density, that is readily miscible in water and other polar solvents, and thus will contain aqueous phosphate when in the

presence of water. Impurities in this product include sulfate, and may include calcium sulfate, iron sulfate, sulfate ions, calcium ions, calcium salts of sulfate, phosphate and fluoride, gypsum, fluoride ions, and sulfuric acid.

12. The method of treatment at the Colonie site comprised the following relevant steps. Excavated soil at Colonie was staged in soil piles of approximately 250 $yd^3$. These piles were screened by field instruments measuring radioactivity (in counts-per-minute). A representative sample was extracted from each soil pile for off-site TCLP testing for lead. Soil piles deemed to be "characteristic" (e.g., TCLP lead > 5.0mg/l) were subjected to the on-site soil lead stabilization process. Prayphos P5 phosphoric acid, diluted with water to three parts water to one part phosphoric acid, was mixed with an amount of the lead-contaminated soil in a device called a pugmill. The contaminated soil and diluted Prayphos P5 phosphoric acid were then allowed to cure, and shortly thereafter a sample for post-treatment TCLP for lead was taken.

13. In some instances, the treatment method used at the Colonie site was successful in reducing the amount of leachable lead to below the EPA's standard of 5.0 mg/l using the TCLP test criteria. In other instances, the treatment method failed to reduce the level of toxicity in the soil to below the required regulatory level. On such occasions, the soil was returned to the pugmill and treated with additional Prayphos P5 phosphoric acid, and allowed to cure, until the amount of leachable lead was reduced to below the EPA standard.

Respectfully submitted,

Dated: June 22, 2007

s/Brian E. Ferguson

Brian E. Ferguson
McDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, D.C. 20005
(202) 756-8000
bferguson@mwe.com

WEBSTER SZANYI LLP
Kevin A. Szanyi
Nelson Perel
Todd M. Schiffmacher
1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800
nperel@websterszanyi.com

Attorneys for Plaintiff, Sevenson Environmental Services, Inc.

Dated: __June 22, 2007_____

PETER D. KEISLER
Assistant Attorney General

JOHN J. FARGO
Director

___s/ Joshua B. Brady______________________
JOSHUA B. BRADY
Attorney
Civil Division
U.S. Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0285
Facsimile: (202) 307-0345

OF COUNSEL:
Susan Mitchell
Attorney
U.S. Department of Justice

Attorneys for Defendant the United States

Dated: __June 22, 2007_____

__s/ Russel O. Primeaux_by s/ Joshua B. Brady___
Russel O. Primeaux
Kean Miller Hawthorne D'Armond
McCowan & Jarman LLP
One American Place, 22nd Floor
Post Office Box 3513
Baton Rouge, LA 70821-3513
(225) 387-0999
Russel.Primeaux@keanmiller.com

Attorney for Shaw Environmental, Inc.

# TAB 2

**ASSERTED INDEPENDENT CLAIMS OF THE SEVENSON PATENTS**

***'982 Patent***

**Claim 1**. A method of treating metal-bearing materials to stabilize leachable metal contained therein, said method comprising the steps of:

**mixing a metal-bearing material with a first mixture comprising a first component and a second component to form a second mixture**, wherein said metal-bearing material contains at least one leachable metal selected from the group consisting of lead, aluminum, arsenic (III), barium, bismuth, cadmium, chromium (III), copper, iron, nickel, selenium, silver and zinc, **wherein said first component supplies at least one member selected from the group consisting of sulphates**, halites, and silicates, and wherein **said second component supplies at least one phosphate anion**;

curing said second mixture for a period to form a cured material **such that TCLP metal level for said leachable metal in the cured material is below 5.0 mg/l** and no secondary waste streams are generated.

***'367 Patent***

**Claim 11**. A process for treating a host material comprising solid waste materials containing leachable radionuclides and radioactive compounds, said process comprising the steps of:

**contacting said host material with a single reactant comprising a source of a sulfate ion and a phosphate ion** to form a mixture, said mixture containing substantially insoluble Apatitic-structure mineral species; and

curing said mixture for a period of time;

wherein said host material so treated is substantially solid in form at the end of curing, the concentration of leachable radionuclides and radioactive materials is decreased and no secondary waste streams are generated.

**Claim 13**. The process of claim 11, wherein said single reactant is technical grade phosphoric acid (TGPA).

***'123 Patent***

**Claim 1**. A method of treating metal-bearing material to stabilize leachable metal contained therein, said method comprising the steps of:

**mixing a metal-bearing material with a treatment additive comprising a first component and a second component to form a mixture**, wherein said metal-bearing material contains at least one leachable metal selected from the group consisting of lead, aluminum, arsenic (III), barium, bismuth, cadmium, chromium (III), copper, iron, nickel, selenium, silver and zinc, wherein **said first component supplies at least one member from the group consisting of sulphates**, halites, silicates and calcium oxide, and wherein **said second component supplies at least one phosphate anion**; and

curing said mixture for a period of time to form a cured material; wherein said metal-bearing material so treated is substantially solid in form at the end of curing, **the leachable metal level in said cured material is below 5.0 mg/l**, and the volume of said metal-bearing material is reduced as a result of treating and curing.

**Claim 15**. A method of treating a waste matrix of metal-bearing material and soil to stabilize leachable metal contained therein, said method comprising the steps of:

**mixing said waste matrix with a treatment additive comprising a first component and a second component to form a mixture**, wherein said metal-bearing material contains at least one leachable metal selected from the group consisting of lead, aluminum, arsenic (III), barium, bismuth, cadmium, chromium (III), copper, iron, nickel, selenium, silver and zinc, wherein said **first component supplies at least one member from the group consisting of sulphates**, halites, silicates and calcium oxide, and wherein said **second component supplies at least one phosphate anion**; and

curing said mixture for a period of time to form a cured material; wherein said waste matrix so treated is substantially solid in form at the end of curing, **the leachable metal level in said cured material is below 5.0 mg/l**, and the volume of said waste matrix is reduced as a result of treating and curing.

***'608 Patent***

**Claim 20**. A process for treating a material that contains leachable radioactive substances, said process comprising the steps of:

**contacting said material with a treatment additive comprising a first component and a second component to form a mixture**, wherein said **first component supplies at least one member selected from the group consisting of sulphates**, halites, silicates, alum and calcium oxide, and wherein **said second component supplies phosphate anion**; and

curing said second mixture for a period of time;

wherein the concentration of leachable radioactive substances in said material so treated is decreased and non-leachable solid materials are formed.

***'485 Patent*[1]**

**Claim 1**. A method of treating lead-bearing material to stabilize leachable lead contained therein, said method comprising the steps of:

**mixing a lead-bearing material containing leachable lead with a treatment additive comprising a first component and a second component to form a mixture**, wherein **said first component supplies at least one member from the group consisting of sulphates**, chlorides, fluorides, halites, halides, and silicates, and wherein **said second component supplies at least one phosphate anion** in solution form; and

curing said mixture for a period of time to form a cured material;

wherein said lead-bearing material so treated is substantially solid in form at the end of curing, and **the leachable lead level in said cured material is below 5.0 mg/l**.

**Claim 15**. A method of treating a waste matrix of lead-bearing material containing leachable lead and soil to stabilize leachable lead contained therein, said method comprising the steps of:

**mixing said waste matrix with a treatment additive comprising a first component and a second component to form a mixture**, wherein **said first component supplies at least one member from the group consisting of sulphates**, chlorides, fluorides, halites, halides, and silicates, and wherein **said second component supplies at least one phosphate anion** in solution form; and

curing said mixture for a period of time to form a cured material;

wherein said waste matrix so treated is substantially solid in form at the end of curing, and **the leachable lead level in said cured material is below 5.0 mg/l**.

**Claim 22**. A method of immobilizing leachable lead in contaminated soils or solid waste materials comprising:

**contacting contaminated soils or solid waste materials containing leachable lead with a treatment additive comprising a first component and a second component to form a mixture**, wherein **said first component includes one or more reactive sulphate ions**, and wherein said **second component is a phosphate supplying reagent**; and

curing said mixture for a period of time to form a cured material;

---

1 Sevenson also asserts claim 28 of the '485 Patent but does not for summary adjudication with respect to that claim.

wherein said contaminated soils or solid waste materials so treated are substantially solid in form at the end of curing and **the leachable lead level in said cured material is below 5.0 mg/l**.

**Claim 30**. A method of immobilizing leachable lead in contaminated soils or solid waste materials comprising:

**contacting contaminated soils or solid waste materials with a combination of a sulfate reagent which includes one or more reactive sulfate ions and a phosphate supplying reagent**; and

curing said mixture for a period of time to form a cured material;

wherein said contaminated soils so treated are substantially solid in form at the end of curing and **the leachable lead level in said cured material is less than 5.0 ppm** of EP toxic lead.

# **TAB 3**

## THE COURT'S CLAIM CONSTRUCTIONS FOR THE ASSERTED LIMITATIONS

| | |
|---|---|
| First Mixture: | the first component and second component are mixed together (Op. at 27)[2] |
| Second Mixture: | a metal-bearing material plus the first mixture mixed together (Op. at 28) |
| First Component: | a separate and distinct compound capable of supplying at least one of the listed members [i.e., sulfates] (Op. at 11-14) |
| Second Component: | a separate and distinct compound capable of supplying a source of phosphate anion (Op. at 15-16) |
| Single Reactant: | one entity in a chemical reaction (Op. at 29) |
| Source of Sulfate Ion: | one or more compounds which supplies a reactive sulfate ion, wherein a sufate ion is the negative ion $(SO_4)^{2-}$ (Op. at 30) |
| Source of Phosphate Ion: | one or more compounds which supplies a reactive phosphate ion, wherein a phosphate anion is the negative ion $(PO_4)^{3-}$ (Op. at 30) |
| Treatment Additive: | first component and second component mixed together (Op. at 34) |
| Sulfate Reagent: | a separate and distinct compound capable of supplying a sulfate ion, $(SO_4)^{2-}$, that participates in a chemical reaction (Op. at 42-43) |
| One or More Re-active Sulfate Ions: | a compound containing a reactive sulfate ion $(SO_4)^{2-}$ (Op. at 40-41) |
| Compound: | a substance composed of atoms or ions of two or more elements in chemical combination (Op. at 26) |

[2] March 28, 2007 Opinion and Order re *Markman* Claim Construction Proceedings.

# TAB 4

**SUBSTITUTING THE COURT'S CONSTRUCTION INTO THE CLAIMS**

'982 Patent, Claim 1 (relevant language):

mixing a metal-bearing material with a **first mixture** comprising **a first component** and a **second component** to form a **second mixture**, wherein said metal-bearing material contains at least one leachable metal selected from the group consisting of lead, aluminum, arsenic (III), barium, bismuth, cadmium, chromium (III), copper, iron, nickel, selenium, silver and zinc, wherein said first component supplies at least one member selected from the group consisting of sulphates, halites, and silicates, and wherein said second component supplies at least one phosphate anion;

↓↓

mixing a metal-bearing material with a **[first component and second component mixed together]** comprising a **[separate and distinct compound capable of supplying at least . . . sulfates]** and a **[separate and distinct compound capable of supplying a source of phosphate anion]** to form a **[metal-bearing material plus the first mixture mixed together]**

↓↓

mixing a metal-bearing material with [a separate and distinct compound capable of supplying at least . . . sulfates and a separate and distinct compound capable of supplying a source of phosphate anion] to form [a metal-bearing material plus the first mixture mixed together]

# TAB 5

**WHY THE ACTIVITIES AT THE COLONIE SITE MEET THIS CLAIM LANGUAGE**

***Mixing a metal-bearing material with a first mixture:***

9. At the Colonie site, some of the excavated soils contained lead which leached above the RCRA TCLP criteria of 5.0 mg/l.

12. The method of treatment at the Colonie site comprised the following relevant steps. Excavated soil at Colonie was staged in soil piles of approximately 250 $yd^3$. These piles were screened by field instruments measuring radioactivity (in counts-per-minute). A representative sample was extracted from each soil pile for off-site TCLP testing for lead. Soil piles deemed to be "characteristic" (e.g., TCLP lead > 5.0mg/l) were subjected to the on-site soil lead stabilization process. Prayphos P5 phosphoric acid, diluted with water to three parts water to one part phosphoric acid, was mixed with an amount of the lead-contaminated soil in a device called a pugmill. The contaminated soil and diluted Prayphos P5 phosphoric acid were then allowed to cure, and shortly thereafter a sample for post-treatment TCLP for lead was taken.

**WHY THE ACTIVITIES AT THE COLONIE SITE MEET THIS CLAIM LANGUAGE**

***Prayphos P5 is a "mixture"***

**mixture.** (mix). A heterogeneous association of substances which cannot be represented by a chemical formula. Its components may or may not be uniformly dispersed and can usually be separated by mechanical means. Liquids that are uniformly dispersed are called solutions. Mixtures may be natural or artificial, as indicated by the following:

| Natural | Artificial |
|---|---|
| air | glass |
| petroleum | paint |
| milk | cement |
| blood | perfumes |
| marble | plastics |
| wood | cermets |
| latex | alloys |
| vegetable oils | |
| sea water | |

(Source: Hawley's Chemical Dictionary, Sevenson Ex. 7)

11. Prayphos P5 phosphoric acid contains phosphoric acid, aqueous phosphate, phosphate anions, phosphate compounds and impurities as a result of the incomplete chemical reactions, purification steps, and mechanical separation. The product is concentrated liquid containing about 75 percent $H_3PO_4$ based on phosphate content and density, that is readily miscible in water and other polar solvents, and thus will contain aqueous phosphate when in the presence of water. Impurities in this product include sulfate, and may include calcium sulfate, iron sulfate, sulfate ions, calcium ions, calcium salts of sulfate, phosphate and fluoride, gypsum, fluoride ions, and sulfuric acid.

**WHY THE ACTIVITIES AT THE COLONIE SITE MEET THIS CLAIM LANGUAGE**

***Prayphos P5 contains sulfate compounds and phosphate compounds (the first and second components):***

11. Prayphos P5 phosphoric acid contains phosphoric acid, aqueous phosphate, phosphate anions, phosphate compounds and impurities as a result of the incomplete chemical reactions, purification steps, and mechanical separation. The product is concentrated liquid containing about 75 percent $H_3PO_4$ based on phosphate content and density, that is readily miscible in water and other polar solvents, and thus will contain aqueous phosphate when in the presence of water. Impurities in this product include sulfate, and may include calcium sulfate, iron sulfate, sulfate ions, calcium ions, calcium salts of sulfate, phosphate and fluoride, gypsum, fluoride ions, and sulfuric acid.

**sul·fate** (sŭl′fāt′) *n.* A chemical compound containing the bivalent group $SO_4$. —*v.* **-fat·ed, -fat·ing, -fates.** —*tr.* **1.** To treat or react with sulfuric acid or a sulfate. **2.** *Elect.* To

(Source: American Heritage Dictionary, Sevenson Ex. 6)

Compound: a substance composed of atoms or ions of two or more elements in chemical combination (Op. at 26)

**WHY THE ACTIVITIES AT THE COLONIE SITE MEET THIS CLAIM LANGUAGE**

***The Prayphos P5 "components" are "separate and distinct compounds"***

**mixture.** (mix). A heterogeneous association of substances which cannot be represented by a chemical formula. Its components may or may not be uniformly dispersed and can usually be separated by mechanical means. Liquids that are uniformly dispersed are called solutions. Mixtures may be natural or artificial, as indicated by the following:

| Natural | Artificial |
|---|---|
| air | glass |
| petroleum | paint |
| milk | cement |
| blood | perfumes |
| marble | plastics |
| wood | cermets |
| latex | alloys |
| vegetable oils | |
| sea water | |

11. Prayphos P5 phosphoric acid contains phosphoric acid, aqueous phosphate, phosphate anions, phosphate compounds and impurities as a result of the incomplete chemical reactions, purification steps, and mechanical separation. The product is concentrated liquid containing about 75 percent $H_3PO_4$ based on phosphate content and density, that is readily miscible in water and other polar solvents, and thus will contain aqueous phosphate when in the presence of water. Impurities in this product include sulfate, and may include calcium sulfate, iron sulfate, sulfate ions, calcium ions, calcium salts of sulfate, phosphate and fluoride, gypsum, fluoride ions, and sulfuric acid.

**WHY THE ACTIVITIES AT THE COLONIE SITE MEET THIS CLAIM LANGUAGE**

***The process at the Colonie Site produces a "second mixture"***

Second Mixture: a metal-bearing material plus the first mixture mixed together (Op. at 28)

12. The method of treatment at the Colonie site comprised the following relevant steps. Excavated soil at Colonie was staged in soil piles of approximately 250 $yd^3$. These piles were screened by field instruments measuring radioactivity (in counts-per-minute). A representative sample was extracted from each soil pile for off-site TCLP testing for lead. Soil piles deemed to be "characteristic" (e.g., TCLP lead > 5.0mg/l) were subjected to the on-site soil lead stabilization process. Prayphos P5 phosphoric acid, diluted with water to three parts water to one part phosphoric acid, was mixed with an amount of the lead-contaminated soil in a device called a pugmill. The contaminated soil and diluted Prayphos P5 phosphoric acid were then allowed to cure, and shortly thereafter a sample for post-treatment TCLP for lead was taken.

**<u>WHY THE ACTIVITIES AT THE COLONIE SITE MEET THIS CLAIM LANGUAGE</u>**

***The process at the Colonie Site reduced the TCLP metal level to below 5.0 mg/l***

Representative claim language (claim 1, '982 Patent):

curing said second mixture for a period to form a cured material **such that TCLP metal level for said leachable metal in the cured material is below 5.0 mg/l** and no secondary waste streams are generated.

13. In some instances, the treatment method used at the Colonie site was successful in reducing the amount of leachable lead to below the EPA's standard of 5.0 mg/l using the TCLP test criteria.

# <u>TAB 6</u>

## WHY DEFENDANTS' ARGUMENTS DO NOT DEFEAT SEVENSON'S RIGHT TO PARTIAL SUMMARY ADJUDICATION

***The claim language does not require separate sources for the sulfate and phosphate***

'982 Patent, Claim 1 (relevant language):

mixing a metal-bearing material with a **first mixture** comprising **a first component** and a **second component** to form a second mixture, wherein said metal-bearing material contains at least one leachable metal selected from the group consisting of lead, aluminum, arsenic (III), barium, bismuth, cadmium, chromium (III), copper, iron, nickel, selenium, silver and zinc, wherein said first component supplies at least one member selected from the group consisting of sulphates, halites, and silicates, and wherein said second component supplies at least one phosphate anion;

'367 Patent, Claim 11 (relevant language):

contacting said host material with **a single reactant** comprising **a source of a sulfate ion and a phosphate ion** to form a mixture, said mixture containing substantially insoluble Apatitic-structure mineral species; and

Claim 13: The process of claim 11, wherein said single reactant is technical grade phosphoric acid (TGPA).

'485 Patent, Claim 1 (relevant language):

mixing a lead-bearing material containing leachable lead with **a treatment additive** comprising a **first component** and a **second component** to form a mixture, wherein said first component supplies at least one member from the group consisting of sulphates, chlorides, fluorides, halites, halides, and silicates, and wherein said second component supplies at least one phosphate anion in solution form; and

**WHY DEFENDANTS' ARGUMENTS DO NOT DEFEAT SEVENSON'S RIGHT TO PARTIAL SUMMARY ADJUDICATION**

***The claim language does not require separate sources for the sulfate and phosphate***

*Compare* to claim 16 of unasserted U.S. Patent No. 5,193,936:

16. A treatment process for treating solid wastes to stabilize leachable lead contained therein, said process comprising the steps of:

mixing a solid waste containing leachable lead **with gypsum to produce a first mixture**, said first mixture containing a substantially insoluble lead compound of mineral species; and

**mixing said first mixture with phosphoric acid** for reacting with leachable lead remaining in said first mixture **to produce a second mixture**, said second mixture containing a substantially insoluble lead compound or mineral species;

curing said second mixture for a period

such that the material so treated is substantially solid in form at the end of curing, the material passes the paint filter test, TCLP lead levels are decreased below 5.0 mg/l, the volume of said solid waste is reduced as a result of treatment and curing, and no secondary waste streams are generated.

*Conclusion*: when Sevenson wanted to claim separate and distinct sources for the sulfates and phosphates, it did so

**WHY DEFENDANTS' ARGUMENTS DO NOT DEFEAT SEVENSON'S RIGHT TO PARTIAL SUMMARY ADJUDICATION**

***The specification discloses a single source for the sulfate and phosphate in some instances***

**'982 Patent, Abstract:**

The invention relates to treatment methods employed to chemically convert leachable lead in lead bearing solid and liquid waste materials to a non-leachable form by mixing the material with lime, gypsum and/or phosphoric acid.

The present invention discloses a process comprising a single step mixing of one or more treatment additives, and a process comprising a two step mixing wherein the sequence of performing the steps may be reversible.

## WHY DEFENDANTS' ARGUMENTS DO NOT DEFEAT SEVENSON'S RIGHT TO PARTIAL SUMMARY ADJUDICATION

***The specification discloses a single source for the sulfate and phosphate in some instances***

**'982 Patent, Summary of the Invention:**

comprising a single step mixing of one or more treatment additives, and a process comprising a two step mixing wherein the sequence of performing the steps may be reversible.

(col. 3, lines 3-6).

## WHY DEFENDANTS' ARGUMENTS DO NOT DEFEAT SEVENSON'S RIGHT TO PARTIAL SUMMARY ADJUDICATION

***The specification discloses a single source for the sulfate and phosphate in some instances***

**'982 Patent, Examples:**

EXAMPLE 1

Single Step Mixing of Treatment Chemicals

A lead contaminated soil from a battery cracking, burning, and recycling abandoned site was obtained and treated with group one and group two chemicals in one single step at bench-scale. The contaminated soil contained total lead in the range of 11.44% to 25.6% and TCLP lead in the range of 1781.3 mg/l to 3440 mg/l. The bulk density of contaminated soil was nearly 1.7 g/ml at moisture content of 10.3%. The contaminated soil pH was 5.1 with an oxidation reduction potential value of 89.8 mV. To each 100 g lot of lead hazardous waste soil, sufficient amounts of group one and group two treatment chemicals and reagents were added as illustrated in Table III, in order to render it non-hazardous by RCRA (Resource Conservation and Recovery Act) definition.

TABLE III

| Test Run | Treatment Additive(s) | TCLP Lead (mg/l) |
|---|---|---|
| I | 5% lime, 5% gypsum, 10.2% phosphoric | 0.5 |
| II | 12% phosphoric, 10% potassium sulfate | 2.2 |
| III | 12% phosphoric, 10% sodium sulfate | 3.5 |
| IV | 15% TSP | 3.7 |
| V | 12% phosphoric, 10% Portland Cement I | 0.2 |
| VI | 12% phosphoric, 10% Portland Cement II | 0.9 |
| VII | 12% phosphoric, 10% Portland Cement III | 0.3 |
| VIII | 12% phosphoric, 10% gypsum | 4.6 |
| IX | 15% TSP, 10% Portland Cement I | 0.1 |
| X | 15% TSP, 10% Portland Cement II | 0.2 |
| XI | 15% TSP, 10% Portland Cement III | 0.2 |
| XII | 15.1% phosphoric | 3.6 |
| XIII | 10% trisodium phosphate, 10% TSP | 1.2 |
| XIV | 6.8% phosphoric, 4% TSP | 4.5 |
| XV | 10% gypsum | 340 |
| XVI | 12% phosphoric, 5% lime | 0.9 |
| Control | Untreated Check | 3236.0 |

**WHY DEFENDANTS' ARGUMENTS DO NOT DEFEAT SEVENSON'S RIGHT TO PARTIAL SUMMARY ADJUDICATION**

***The specification discloses a single source for the sulfate and phosphate in some instances***

**'982 Patent, Examples:**

EXAMPLE 4

Wide Range of Applications and Process Flexibility in Curing Time, Moisture Content and Treatment Operations

TABLE VI illustrates different types of waste matrix that have been successfully treated employing the one step and two step mixing treatment additives from group one and group two. For these diverse waste types and process materials, total lead ranged from 0.3% to 23.5%.

UNIVERSE OF APPLICATION FOR THE INVENTION MAECTITE TREATMENT PROCESS

| LEAD CONTAMINATED WASTE TYPE | TREATMENT ADDITIVE | TOTAL LEAD % | LEACHABE LEAD (MG/L) Before Treatment | After Treatment |
|---|---|---|---|---|
| OLD DIRT | 3.4% Phosphoric* | 2.2 | 164.4 | 1.5 |
| WASTE WITH BROKEN BATTERY CASING | 8.1% Lime 1% Gypsum and 3.4% Phosphoric | 2.7 | 197.5 | ND (<.5) |
| SLAG-LEAD SMELTER | 10.2% Phosphoric | 6.6 | 21.3 | 2.0 |
| LEAD-BIRD SHOT | 16% Phosphoric 14% Lime and 30% Gypsum | 16.1 | 3720 | ND (<.5) |
| LEAD-BUCK SHOT | 16% Phosphoric 14% Lime and 28% Gypsum | 11.4 | 1705 | ND (<.5) |
| BATTERY CASINGS | 5% Gypsum | 12 | 288 | 0.6 |
| ORGANIC HUMUS SOIL | 0.5% Lime 2.0% Phosphoric | 1.9 | 23.2 | ND (<.5) |
| 50:50 MIXTURE OF CASINGS AND SAND | 4% Gypsum | .5 | 687 | 0.7 |
| | 4% Phosphoric | | 422.2 | 0.95 |
| SOLID WASTE SOIL Contaminated With Tetrethyl lead | 3% Lime 12% Phosphoric | 23.5 | 12.0 | 6.0 |
| SOIL CONTAMINATED WITH LEADED GASOLINE | 10% Gypsum 6% Phosphoric | 4.74 | 590 | 3.7 |
| | 3% Lime 5.1% Phosphoric | 3.2 | 213 | 1.6 |
| CARBON WITH LEAD DROSS | 4.7% Phosphoric | 12.6 | 105.6 | 0.5 |
| WIRE FLUFF | 1.7% Phosphoric | 0.3 | 19 | 0.7 |
| WIRE CHIP | 0.75% Phosphoric | 0.4 | 28 | ND (<.2) |

**<u>WHY DEFENDANTS' ARGUMENTS DO NOT DEFEAT SEVENSON'S RIGHT TO PARTIAL SUMMARY ADJUDICATION</u>**

***The Court's claim construction does not exclude a single source for the sulfate and phosphate***

mixing a metal-bearing material with [a separate and distinct compound capable of supplying at least . . . sulfates and a separate and distinct compound capable of supplying a source of phosphate anion] to form [a metal-bearing material plus the first mixture mixed together]

**WHY DEFENDANTS' ARGUMENTS DO NOT DEFEAT SEVENSON'S RIGHT TO PARTIAL SUMMARY ADJUDICATION**

***The figures of the patents do not exclude a single source for the sulfate and phosphate***

There is no requirement in the patent law that a figure be included for every claimed embodiment. *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306-07 (Fed. Cir. 2003) ("the mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration").

**'367 Patent:**

Another embodiment of the present invention relates to a chemical treatment process that reduces the leachability and solubility of radionuclides and other radioactive substances contained in debris, soils, sludges and solid materials ("the host material" or "the host matrix"). The process comprises contacting radionuclides and other radioactive substances in the host matrix with the first and second group treatment chemicals to promote recrystalli-zation of the host material into Apatitic-structured end-products. Preferred reactants are comprised of at least one phosphate group and create mineral species of Apatitic geometric structures with reduced nuclide leachability and solubility. In the preferred embodiment, technical grade phosphoric acid (TGPA) is used in a one step process. TGPA contains sulfate as an impurity in addition to a phosphate anion source.

(col. 5, lines 3-18).

**WHY DEFENDANTS' ARGUMENTS DO NOT DEFEAT SEVENSON'S RIGHT TO PARTIAL SUMMARY ADJUDICATION**

***Defendants' "de minimus" argument regarding sulfate is faulty***

- Case law prohibits reading numerical limitations into the claims (Sevenson Opp. pp. 19-20);

- Disputed issues of fact if the Court determines to consider the expert evidence;

- The patents teach that the reactions occur at a molecular level (every ion counts):

$$Pb\text{-}Micelle + CaSO_4.2H_2O \longrightarrow \quad (1)$$

$$PbSO_4 + Ca\text{-}Micelle + 2H_2O$$

Anglesite

$$Pb(HCO_3)_2 + CaSO_4.2H_2O \longrightarrow \quad (2)$$

$$PbSO_4 \pm CaCO_3 + 3H_2O + CO_2$$

Anglesite

$$4PbCO_3 + CaCO_3 + 3H_3PO_4 \longrightarrow \quad (3a)$$

$$Pb_4Ca(OH)(PO_4)_3 + 5CO_2 + 4H_2O$$

Hydroxy Lead Apatites

$$4PbCO_3 + CaSO_4.2H_2O + 3H_3PO_4 \longrightarrow \quad (3b)$$

$$Pb_4Ca(OH)(PO_4)_3 + H_2SO_4 + 4CO_2 + 5H_2O$$

Hydroxy Lead Apatites

# **TAB 7**

**THERE IS NO PROSECUTION HISTORY DISCLAIMER HERE**

***Defendants have a high hurdle to overcome to show prosecution history disclaimer***

> [12] To balance the importance of public notice and the right of patentees to seek broad patent coverage, we have thus consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope.
>
> Consequently, for prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable.[1]

*Omega Eng., Inc. v. Raytek Corp*., 334 F.3d 1314, 1325-26 (Fed. Cir. 2003)

> [10] We have, however, declined to apply the doctrine of prosecution disclaimer where the alleged disavowal of claim scope is ambiguous. For instance, in *Northern Telecom Ltd. v. Samsung Electronics Company*, 215 F.3d 1281, 1293–95, 55 USPQ2d 1065, 1074–75 (Fed.Cir.2000),

*Id*. at 1324.

**<u>THERE IS NO PROSECUTION HISTORY DISCLAIMER HERE</u>**

***Sevenson was entitled to its patents because they were the first to discover and claim the use of sulfates and phosphates together to treat hazardous lead***

"the term 'process' means process, art or method, and includes a *new use of a known process, machine, manufacture, composition of matter, or material*." 35 U.S.C. § 100(b) (emphasis added).

*In re Shetty*, 566 F.2d 81, 86 (CCPA 1977) (method claims directed to use of old compounds for appetite suppression found patentable on appeal: "prior to appellate's disclosure, none of the adamantine compounds in any of the [prior art] references before us suggested a use, much less a dosage, for curbing appetite"); *In re Dillon*, 892 F.2d 1554, 1569-70 (Fed. Cir. 1989) ("a new use of a composition is claimed in the form of a process or method. . . . [I]t is not pertinent whether the compositions themselves are known or new or unobvious"); *In re Wright*, 848 F.2d 1216, 1219-20 (Fed. Cir. 1988); *In re Ruschig*, 343 F.2d 965, 967 (CCPA 1965)

## THERE IS NO PROSECUTION HISTORY DISCLAIMER HERE

***The prior art in question – O'Hara and Stanforth – failed to teach or suggest the use of phosphates with sulfates to reduce the amount of leachable lead***

**'936 Patent, reexamination proceedings:**

"At column 10, lines 61 to 64 O'Hara teaches:

> 'The data in Table 8 shows unequivocally that phosphate is unique; neither sulfuric nor nitric acids immobilize lead and cadmium, nor do their salts.' (emphasis added)

The tests conducted by O'Hara were intended to show that other acids were ***not a suitable substitute*** for phosphoric acid in his process. In contrast, the ***present invention uses a sulfate source in addition to phosphoric acid***. However, it is clear from O'Hara's statement that he discounted the use of both sulfuric acid and calcium sulfate for the immobilization of lead. This is contrary to our invention which teaches the use of calcium sulfate to form anglesites ($PbSO_4$) that immobilize lead. . . . ***O'Hara clearly teaches that neither sulfuric acid or its salt, calcium sulfate, immobilizes lead***. My tests and experiments as disclosed in the '936 patent prove that O'Hara was wrong."

(Def. Ex. 13, Yost Decl.).

- Yost was pointing out that O'Hara failed to disclose their discovery that sulfates could be used to immobilize lead; Yost's invention uses sulfates and phosphoric acid together
- The '936 Patent claims are limited to the two-step process:

*See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1078 (Fed. Cir. 2005) ("the prosecution of one claim term in a parent application will generally not limit different claim language in a continuation application"); *Biogen, Inc. v. Berlex Labs, Inc.*, 318 F.3d 1132, 1141 (Fed. Cir. 2003) ("when an applicant is seeking different claims in a divisional application, estoppel generally does not arise from the prosecution of the parent").

**<u>THERE IS NO PROSECUTION HISTORY DISCLAIMER HERE</u>**

***The prior art in question – O'Hara and Stanforth – failed to teach or suggest the use of phosphates with sulfates to reduce the amount of leachable lead***

**'982 Patent Prosecution:**

"The present invention discloses a method of treating various metal bearing materials with a first component and a second component to stabilize the leachable metals. . . . To avoid the rejection based on O'Hara the claims have been amended to delete references to hydroxides, lime and portland cement. . . . O'Hara does not teach a first component that comprises either sulphates, halites or silicates.

* * *

The sulfates supplied by the first component in the present invention is neither taught nor suggested by O'Hara. At col. 5, line 53, O'Hara disclose that the FGSP typically contains such materials as calcium sulfate but he does not teach or suggest its use in his process. On the contrary, O'Hara specifically states that his experiments show that calcium sulfate cannot be used to immobilize lead or cadmium."

(Def. Ex. 9).

- This is not a "clear and unmistakable disavowal" of claims that cover a product that supplies both sulfates and phosphates.

## THERE IS NO PROSECUTION HISTORY DISCLAIMER HERE

***The prior art in question – O'Hara and Stanforth – failed to teach or suggest the use of phosphates with sulfates to reduce the amount of leachable lead***

**'485 Patent Prosecution:**

"Applicants have amended Claims 21-41 to delete "hydroxides" and "calcium oxide" from the first component group. Amended claims 21-41 now cover a method that uses a phosphate supplying reagent and at least one member from the group consisting of sulphates, chlorides, fluorides, halites, halides, and silicates and are neither anticipated nor made obvious by the Stanforth '033 patent. . . .

Stanforth does not teach the use of a phosphate and a sulfate for the treatment of lead contaminated soils and waste materials. Stanforth's only teaching of a sulfate is for the treatment of chromium and not lead. . . . There is nothing in the [Stanforth] '033 patent that teaches or suggests that a phosphate and a sulfate can be used together to treat leachable lead and reduce the leachable lead to below 5.0 mg/l as measured by either the EP toxicity level or the TCLP level."

(Def. Ex. 11).

- This is not a "clear and unmistakable disavowal" of claims that cover a product that supplies both sulfates and phosphates.

## THERE IS NO PROSECUTION HISTORY DISCLAIMER HERE

***Compare to a case where prosecution history disclaimer was found***

*Elkay Mfg. Co. v. Ebco Mfg. Co*., 192 F.3d 973 (Fed. Cir. 1999)

- Claim directed to a bottled water cooler having "an upstanding feed tube . . . to provide a hygienic flow path for delivering liquid from . . . and for admitting air . . . into said container."

- District court found that this limitation did not preclude a produce having a separation of the air flow from the liquid flow.

- During prosecution, the PTO examiner rejected the claims based on a prior art reference showing a beer dispensing apparatus with two separate feed tubes – one for pressurized air, and one for beer.

- Patentee argued in response that the prior art reference "cannot possibly teach or suggest a flow path . . . for delivering liquid . . . and for admitting air from said reservoir above as recited [in the claims].

- The PTO examiner relied on this argument in allowing the claims: "the prior art of record does not teach a container . . . and feed tube as claimed wherein the feed tube has a passage means that both dispenses liquid from the container into the reservoir and admits air from the reservoir into the container. . . . Note that [the cited prior art reference] provides a separate conduit for exterior air. . . ."

- The Federal Circuit held this prosecution history record was a clear disavowal of a claim interpretation that would include separate feed tubes for liquid and air.

- "[I]t is the totality of the prosecution history that must be assessed, not the individual segments of the presentation made to the [PTO] by the applicant. . . ." 192 F.3d at 979.

**THERE IS NO PROSECUTION HISTORY DISCLAIMER HERE**

***Other portions of the Sevenson file histories support a finding of no prosecution history disclaimer***

**Sevenson's Petitions to Make Special:**

4. As described in the specification, the present invention relates to treatment methods employed to chemically convert leachable metal in metal-bearing solid and liquid waste materials to a non-leachable form by mixing the material with one or a combination of components.

**('982 Patent Prosecution History)**

3. As described in the specification, the present invention relates to treatment methods employed to chemically convert heavy metal contaminated soils and solid waste materials to a non-leachable form by mixing the contaminated materials with one or a combination of components.

**('367 Patent Prosecution History)**

4. As described in the specification, the present invention relates to treatment methods employed to chemically convert leachable metal in metal-bearing solid and liquid waste materials to a non-leachable form by mixing the material with one reagent or a combination of reagents.

**('485 Patent Prosecution History)**