# In the United States Court of Federal Claims

No. 05-1075C

(Filed September 27, 2007)

(Unpublished)

| | |
|---|---|
| SEVENSON ENVIRONMENTAL SERVICES, INC., Plaintiff, | Patent Infringement; Cross-Motions for Summary Judgment; Existence of Material Issues of Fact. |
| v. | |
| THE UNITED STATES, Defendant, | |
| and | |
| SHAW ENVIRONMENTAL, INC., Defendant-Intervenor. | |

*Brian E. Ferguson*, McDermott Will & Emery LLP, Washington, D.C., with whom were *Kevin Szanyi* and *Nelson Perel*, Webster Szanyi LLP, Buffalo, New York, for Plaintiff.

*Joshua B. Brady*, with whom were *Peter D. Keisler*, Assistant Attorney General, and *John J. Fargo,* Director, United States Department of Justice, Civil Division, Washington, D.C., for Defendant.

*Russel O. Primeaux*, Kean Miller Hawthorne D'Armond McCowen & Jarman LLP, Baton Rouge, Louisiana, for Defendant-Intervenor.

**ORDER ON CROSS-MOTIONS**
**FOR SUMMARY JUDGMENT**

WHEELER, Judge.

In this patent case, the Court issued its ruling in the Markman[1] claim construction phase of these proceedings on March 28, 2007. Sevenson Envtl. Servs., Inc. v. United States, 76 Fed. Cl. 51 (2007). The case involves five patents held by Plaintiff Sevenson Environmental Services, Inc. ("Sevenson") describing methods for treating soil or other environmental media that have become contaminated with toxic waste, such as lead or radioactive materials. Sevenson alleges that the U.S. Army Corps of Engineers and its contractors used the patented techniques without authorization in performing cleanup and remediation work at a government-owned site in Colonie, New York. Intervenor Shaw Environmental, Inc. ("Shaw") is one of the parties that contracted with the Corps of Engineers to perform cleanup work at this site. See Sevenson, 76 Fed. Cl. at 57.

In the next phase of the case, to determine alleged patent infringement, the parties have filed cross-motions for summary judgment. These motions are based upon a June 25, 2007 Statement of Stipulated Facts, consisting of four pages and 13 enumerated paragraphs. The key portions of the stipulated facts are contained in Section D, "The Phosphoric Acid Used At The Site In Colonie, New York." This section, consisting of paragraphs 10-13, provides as follows:

> 10. The Army Corps of Engineers used "Prayphos P5" phosphoric acid at the Colonie site. This product was manufactured by the purified wet-process, where phosphate minerals, largely calcium phosphate minerals, within the phosphate rock are reacted with or without weak phosphoric acid, and sulfuric acid. Sulfuric acid contains sulfate.
>
> 11. Prayphos P5 phosphoric acid contains phosphoric acid, aqueous phosphate, phosphate anions, phosphate compounds and impurities as a result of the incomplete chemical reactions, purification steps, and mechanical separation. The product is concentrated liquid containing about 75 percent $H_3PO_4$ based on phosphate content and density, that is readily miscible in water and other polar solvents, and

[1] The Markman phase is the first step in a patent case to determine the scope and meaning of the patents at issue. See Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996); Gen. Am. Trans. Co. v. Cryo-Trans, Inc., 93 F.3d 766, 769 (Fed. Cir. 1996).

> thus will contain aqueous phosphate when in the presence of water. Impurities in this product include sulfate, and may include calcium sulfate, iron sulfate, sulfate ions, calcium ions, calcium salts of sulfate, phosphate and fluoride, gypsum, fluoride ions, and sulfuric acid.
>
> 12. The method of treatment at the Colonie site comprised the following relevant steps. Excavated soil at Colonie was staged in soil piles of approximately 250 $yd^3$. These piles were screened by field instruments measuring radioactivity (in counts-per-minute). A representative sample was extracted from each soil pile for off-site TCLP testing for lead. Soil piles deemed to be "characteristic" (e.g., TCLP lead > 5.0 mg/l) were subjected to the on-site soil lead stabilization process. Prayphos P5 phosphoric acid, diluted with water to three parts water to one part phosphoric acid, was mixed with an amount of the lead-contaminated soil in a device called a pugmill. The contaminated soil and diluted Prayphos P5 phosphoric acid were then allowed to cure, and shortly thereafter a sample for post-treatment TCLP for lead was taken.
>
> 13. In some instances, the treatment method used at the Colonie site was successful in reducing the amount of leachable lead to below the EPA's standard of 5.0 mg/l using the TCLP test criteria. In other instances, the treatment method failed to reduce the level of toxicity in the soil to below the required regulatory level. On such occasions, the soil was returned to the pugmill and treated with additional Prayphos P5 phosphoric acid, and allowed to cure, until the amount of leachable lead was reduced to below the EPA standard.

Stipulations of Fact, ¶¶ 10-13.

In the briefs supporting the cross-motions for summary judgment,[2] the parties did not limit their factual contentions to the June 25, 2007 stipulations, but expanded them

---

[2] The parties' briefs consist of the following: Plaintiff's July 2, 2007 Motion for Partial Summary Adjudication Relating to Infringement; Defendants' July 2, 2007 Joint Motion for Summary Judgment of Non-Infringement; Plaintiff's July 30, 2007 Opposition to Defendant's Joint Motion for Summary Judgment of Non-Infringement; Defendants' July 30, 2007 Opposition to Plaintiff's Motion for Partial Summary Adjudication Relating to Infringement; Plaintiff's August 13, 2007 Reply in Support of its Motion for Partial Summary Adjudication Relating to Infringement; and Defendants' August 13, 2007 Reply to Plaintiff's Opposition.

significantly to include additional documents and assertions. In particular, the parties now rely upon various declarations and deposition testimony of lay and expert witnesses, certain 1999 treatability studies, and the prosecution histories of the patents, among other documents. The heavy reliance on declarations and deposition testimony alone indicates the need for trial where the witnesses' credibility may be observed and their statements tested through cross-examination. While the stipulations may be a good start toward presenting the material facts, it is clear that the complexity of the facts is not well suited for summary judgment consideration.

Some of the terms contained in the stipulated facts, though perhaps not disputed, require further explanation for the Court to understand the product and process used at the Colonie site. Such terms as "purified wet process," "phosphate rock," "weak phosphoric acid," "incomplete chemical reactions," "mechanical separation," "phosphate content and density," and "other polar solvents" are not susceptible of ready comprehension, at least among non-chemists. The Court cannot be sure that a more detailed explanation of the terms will yield the same degree of stipulated agreement among the parties. Moreover, much of paragraph 12 is drafted in the passive voice. The Court cannot tell from paragraph 12 who or what party performed the described steps of the process.

Based upon a review of the briefs and the presentations at the September 12, 2007 oral argument, the Court also has identified the following material issues that should be considered in reaching a disposition on the question of infringement:

(1) The determination of the types of contaminated materials treated at the Colonie site, and whether the materials contained leachable metals only, or also contained radioactive materials or leachable radionuclides;

(2) Whether Prayphos P5 can be regarded as a mixture of a "first component" and a "second component," and if so, whether the components are "separate and distinct compounds;"

(3) Whether the use of phosphoric acid alone infringes the patents;

(4) Whether the inventor or patent holder disclaimed the use of phosphoric acid alone in the prosecution history of the patents;[3]

---

[3] None of the parties relied upon the prosecution histories of the patents to any significant extent during the claim construction phase of this case. Plaintiff now asserts that Defendants should be barred from raising prosecution history defenses at the infringement phase of the case. Absent agreement, the Court may need to address this question before or during the trial of the infringement issues.

(5) Whether the amount of sulfate in Prayphos P5 meets the requirement of a "second component" in the patent claims;

(6) Whether the amount of sulfate in Prayphos P5 participates measurably in the stabilization of leachable metals; and

(7) Whether Prayphos P5 constitutes technical grade phosphoric acid.

The sheer bulk and complexity of the parties' summary judgment presentations suggest that other issues of material fact also may exist. For the reasons stated, the Court will set this matter for trial on the issue of patent infringement. Plaintiff's Motion for Partial Summary Adjudication Relating to Infringement, and Defendants' Joint Motion for Summary Judgment of Non-infringement are DENIED.

At the trial, the parties will be expected to present evidence on all claims and defenses relating to infringement, except damages. The issue of damages will be reserved for a later date, if necessary. The parties are requested to file a Joint Status Report with the Court on or before October 11, 2007 indicating how they wish to proceed. The parties should address in their report whether any additional discovery is desired,[4] the estimated length and location for trial, and a proposed schedule. The parties may include any other information in their report that they wish to bring to the Court's attention.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge

---

[4] The Court is aware that Sevenson engaged in considerable discovery while this matter was pending in the United States District Court for the Western District of New York, but the United States was not a party to that action. It may be that additional discovery is warranted, if not repetitious of discovery previously obtained.