**IN THE UNITED STATES COURT**
**OF FEDERAL CLAIMS**

| | |
|---|---|
| SEVENSON ENVIRONMENTAL SERVICES, INC., Plaintiff, | |
| v. | No. 05-1075C |
| THE UNITED STATES Defendant | Judge Thomas C. Wheeler |
| and | |
| SHAW ENVIRONMENTAL, INC., Defendant-Intervenor. | |

Electronically filed on November 9, 2007

**JOINT STATUS REPORT**

Pursuant to the Court's Order of September 27, 2007, plaintiff Sevenson Environmental Services, Inc. ("Sevenson"); defendant the United States (the "Government"); and defendant-intervenor Shaw Environmental, Inc. ("Shaw") hereby submit this Joint Status Report. The Government and Shaw are herein referred to collectively as the "Defendants." Counsel for the parties have discussed the current status of this case and attempted to identify the additional discovery necessary for a trial on infringement and defenses. The issues, along with the positions of the parties are set forth below. The parties also include proposed schedules for further proceedings.

**I. Continued Settlement Discussions**

The parties have used the time granted pursuant to the Joint Motion for Enlargement of Time, docket. no. 74, to meet and continue settlement discussions. While no settlement has been reached, the parties will continue settlement discussions during the next phase of the case.

**II. Remaining Discovery Issues**

**A. Factual Discovery related to the Colonie, New York FUSRAP Site**

**<u>Defendants' Position</u>**: Given plaintiff's considerable discovery while this matter was pending before the United States District Court for the Western District of New York (Buffalo Division) (the "Buffalo litigation"), Defendants do not presently anticipate a need for additional fact discovery related to the Colonie, New York FUSRAP site. Should Sevenson wish to take discovery on this issue, the Defendants propose an additional three (3) months for factual discovery on the issues of infringement and invalidity.

**<u>Plaintiff's Position</u>**: Sevenson will require additional, limited discovery concerning the Colonie Site. Specifically, Sevenson will require updated document production as the last documents related to the Colonie Site were produced in the 2005 time frame. Sevenson will also require further depositions concerning the Colonie Site, related to any updated document production from Defendants and Defendants' use of the Sevenson patented technology to treat radioactive material at the Site.

**B. Factual Discovery related to additional sites**

The parties are faced with the issue of how to proceed with respect to additional sites. In its complaint, Sevenson has alleged that the soil remediation activities at the Colonie, New York FUSRAP site infringed certain claims of patents owned by Sevenson. Plaintiff's first set of interrogatories to the Government on January 16, 2007, requested that the Government identify

sites, other than the Colonie, New York site, where the Government and/or its contractors or subcontractors used the "accused treatment method."

The Government raised several objections to this interrogatory, particularly because of Sevenson's broad definition of "accused treatment method," the unduly burdensome nature of such an overly broad definition, and the premature use of terms not yet defined by the Court at the time of the Government's response. Nonetheless, the Government responded that chemical stabilization treatment methods utilizing a phosphate-based chemical have been used by multiple agencies, and listed twenty-eight sites.

**Defendants' Position**: Sevenson has not, as of yet, established that it has a good faith basis for alleging infringement under the Court's claim construction at any of the sites listed in the Government's response to Sevenson's first set of interrogatories, and has not affirmatively alleged such infringement by amending its complaint. Sevenson's complaint alleges infringing activity only at the Colonie, New York FUSRAP site. E.g., Complaint at ¶¶ 5–14, 17, 21, 25, 29. Accordingly, allowing discovery on any additional sites constitutes an impermissible use of discovery to seek new allegations of infringement, rather than to prove its existing allegations. Discovery for the Colonie site generated over 150,000 pages of documents and approximately 27 depositions during the Buffalo litigation. Discovery on additional sites will yield a similar discovery burden that will consume substantial time and resources of not only the parties and several governmental agencies, but also this Court. Further, Sevenson has had ample time to investigate phosphate-based soil remediation at other sites, and develop allegations of infringement at other sites.

To the extent that Sevenson should be permitted discovery of additional sites, the Defendants suggest postponing factual discovery of additional sites until after the trial on the

facts of the Colonie site. Resolution of the issues of whether the asserted claims cover the treatment process used at Colonie, and whether the asserted claims are valid, will give considerable guidance to how the parties should approach the issue of additional sites if it becomes necessary.

Alternatively, if the Court grants Sevenson leave to take discovery on additional sites, then the Defendants propose a minimum of twelve (12) additional months for discovery. This discovery issue represents a tremendous burden, as it will stretch across the entire nation and involves twenty-eight additional sites and several Government agencies.

**Plaintiff's Position:** Sevenson disagrees with Defendants' assessment. In response to interrogatories, the Government identified numerous additional sites that use a phophate-based treatment method. Phosphate-based treatment methods are the subject matter of the Sevenson patents, such that the use of phosphate based materials with another chemical, such as sulfate, falls within the scope of the claims. As the Court is aware, and as Defendants have conceded, the Government concedes the Colonie Site uses a "phosphate-based" treatment method and therefore Sevenson has a good-faith basis for asserting that the other sites identified by the Government likewise meet the claims of the Sevenson patents. At the very least, given the Court's denial of Defendants' summary judgment motion of noninfringement, Sevenson has a good faith basis for alleging infringement based on the treatment methods at those sites. Accordingly, Sevenson should be allowed to take discovery concerning the treatment methods used at those sites, the reason why treatment was required, and the amount of contaminated material treated.

Defendants have not set forth any basis why Sevenson should be precluded from taking discovery into these additional sites. Allowing Sevenson to take discovery of those sites in this

case reduces the possibility of piecemeal and repetitive litigation. Further, there is no prohibition in the Federal Rules against using information produced during discovery to expand or add claims in the existing action; indeed, that is one of the purposes of allowing discovery in the first instance. *See* Fed. R. Civ. P. 26(b)(1) ("parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . ."). Here, there can be no dispute that Sevenson's "claim" is infringement of the patents in suit by the Government, and the use of phosphate-based treatment methods at other sites is relevant to that claim.

Sevenson also does not agree with Defendants' proposal to postpone any such discovery concerning the other sites until after trial on the merits regarding the Colonie Site. Such a proposal invites inefficiency and runs the risk of greatly increasing the cost of litigation for both parties. Indeed, Defendants' proposal ensures multiple trials on largely the same issues should Sevenson prevail on the merits with respect to the Colonie Site. The better course for both the parties and the Court is to allow discovery now (particularly given the fact that the Government is proposing a significant discovery period going forward, *see* below) into the other sites and then conduct a single trial on the merits.

**C. Factual Discovery related to the Defendants' case for Invalidity**

**<u>Defendants' Position</u>:** The Defendants will present evidence and argument of patent invalidity as part of its defense to Sevenson's claims of infringement. This will include considerable discovery relating to prior art references and prior art treatment/remediation sites, and will inevitably involve taking discovery of third parties. The majority of the Defendants' prior art references were identified during the Buffalo litigation, and as such the Defendants believe that requests for admission and interrogatories to Sevenson will substantially limit the amount of additional pretrial discovery necessary for these references.

With respect to prior art sites, however, the Defendants will obtain numerous documents from Government agencies and third parties that will be produced. Following this document production, third party depositions will be necessary, depositions of former MAECORP employees may be necessary, and the Defendants anticipate that Sevenson will seek deposition of the Government relating to documents from Government agencies.

The Defendants propose setting a period of nine (9) months to conduct the factual discovery necessary for the Defendants' case of invalidity.

**Plaintiff's Position:** Sevenson has no objection to Defendants' proposal as outlined above, with the proviso that Defendants' proposed period for fact discovery – nine months – should be the deadline for the completion of fact discovery with respect to all issues in the case (including Sevenson's discovery into the additional sites identified by the Government), not merely "invalidity discovery." Sevenson and Defendants should proceed to take discovery with respect to all issues at the same time rather than in a piecemeal fashion, as Defendants suggest.

**D. Expert Discovery**

All parties agree that expert discovery will be necessary on the issues of infringement and validity.

**Defendants' Position:** The Defendants concur with Sevenson's proposed expert discovery schedule, except to the extent that it includes expert opinions on damages.. The Defendants understand the Court's Order of September 27, 2007, to bifurcate the issues of infringement and invalidity and the issue of damages. Therefore the Defendants propose to conduct expert discovery on the issue of damages, if necessary, subsequent to the trial on the issues of infringement and invalidity.

**Plaintiff's Position:** Sevenson expects that in addition to expert discovery on the issues of infringement and validity, it will proffer an expert in the area of patent valuation, i.e., a "damages" expert. Sevenson proposes the following schedule: (1) one month after the close of fact discovery, the parties exchange expert reports on those issues for which they respectively bear the burden of proof ("initial expert reports"); (2) one month following the exchange of initial expert reports, the parties exchange rebuttal expert reports; and (3) expert depositions will take place in the two-week period following the exchange of rebuttal reports.

Sevenson disagrees with Defendants' assertion that the Court's September 27, 2007 Order directs bifurcation. Sevenson notes that the Court denied Defendants' earlier motion to bifurcate the issue of damages (see August 14, 2006 Order). Defendants did not seek reconsideration of that order. Accordingly, Sevenson asserts that the case going forward should include damages discovery, both fact and expert.

**E. Location and length of Trial on Infringement and Invalidity**

All parties agree that the most convenient location will be in Washington, D.C.

**Defendants' Position**: The Defendants estimate a need for twelve (12) days of trial for Sevenson's infringement case, Defendants' rebuttal case, Defendants' case for invalidity, and Sevenson's rebuttal case.

**Plaintiff's Position**: Sevenson expects that this trial could be completed in eight trial days, broken down as follows: (i) Sevenson's infringement and damages case-in-chief: three days; (ii) Defendants' rebuttal case and invalidity case-in-chief: four days: and (iii) Sevenson's rebuttal case: one day.

**F. Reliance on Prosecution Histories**

The Court's Order of September 27, 2007 suggests that it may be necessary for the Court to consider the issue of "whether Defendants should be barred from raising prosecution history defenses at the infringement phase of the case." Slip op. at 4 n.4.

**Defendants' Position:** The Defendants maintain that reliance on the prosecution histories is proper at this phase of the case. First, the Court may be in a better position to consider the prosecution histories in light of Sevenson's various theories of infringement, as opposed to only claim construction, particularly to the extent that Sevenson offers an application of claim construction to facts in a manner inconsistent with the arguments that the patentees made during prosecution.

Second, "[u]nder *Markman*, claim construction is a matter of law." *Sofamor Danek Group v. Depuy-Motech*, 74 F.3d 1216, 1221 (Fed. Cir. 1996) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995). "However, *Markman* does not obligate the trial judge to conclusively interpret claims at an early stage in a case. A trial court may exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art." *Id.* Further, as claim construction is a matter of law, this Court may revise and reconsider claim construction until it issues a final order. *Id.*; *see also Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (2002) ("District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.") (citing *Sofamor*, 74 F.3d at 1221). The Defendants are aware of no precedent for the proposition that a defendant may be barred from relying on prosecution history after a *Markman* hearing, but prior to a final order.

Thus, it is entirely proper for the Court to consider the effects of the relevant prosecution history during the infringement and invalidity phases of the case.

Third, delaying the issue of prosecution history disclaimer until the infringement phase does not justify a finding of equitable estoppel. "The doctrine of equitable estoppel is a judicial remedy by which a party may be precluded, by its own acts or omissions, from asserting a right to which it otherwise would have been entitled." *Kaeper Mach., Inc. v. United States*, 74 Fed. Cl. 1, 7 (Ct. Cl. 2006) (citation omitted). In *Kaeper Machines*, the court explained:

> In order to establish a prima facie case of equitable estoppel against the government a party must establish four essential elements: (1) the government must know the true facts; (2) the government must intend that its conduct will be acted upon or must so act that the party claiming estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the government's conduct to its detriment.

*Id.* at 7–8. There has been no showing that the Defendants had any intent to induce Sevenson to act by not raising prosecution history arguments during the claim construction. Next, there has been no showing that Sevenson was ignorant of the existence of the prosecution histories, or the disclaimers therein, for each of the patents at issue. As the assignee of the patents at issue, Sevenson should be fully aware of the prosecution histories. Finally, reserving the prosecution history arguments for the infringement phase causes Sevenson to suffer no detriment.

Sevenson suggests that the Court invoke the doctrine of judicial estoppel because the Defendants are asserting inconsistent positions. The Federal Circuit has acknowledged several non-exclusive factors to guide a court's inquiry into invoking judicial estoppel: (1) the party's later position must be "clearly inconsistent" with its earlier position; (2) the party must have succeeded in persuading a court to adopt the earlier position, thereby posing a "risk of inconsistent court determinations"; and (3) the party seeking to assert an inconsistent position

would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

Contrary to Sevenson's argument, the Defendants' positions regarding claim construction and infringement are consistent: the asserted claims cannot cover a process using only phosphoric acid, because of both the claim construction and possible theories of infringement not barred by the prosecution histories. The Defendants are not arguing that there is any error in the claim construction. Consideration of the prosecution histories at this stage does not introduce a risk of inconsistent court determinations, as claim construction is a matter of law and the Court has not decided the issue of infringement, nor is there any unfairness in the Defendants raising, and Sevenson responding to, arguments based on the prosecution histories.

Defendants maintain that certain arguments made by the patentees in the prosecution history of the parent '936 patent (during re-examination), and the patents at issue limit the scope of the asserted claims such that the asserted claims may not cover use of phosphoric acid alone. As a claim construction issue, the Court may offer further explanation of the "separate and distinct" nature of the two components in light of the prosecution histories at any time prior to a final order, e.g. that the claimed process requires phosphoric acid and an additional source of sulfate. Alternatively, the Court may properly amend its claim construction of the "first component" and "second component" terms to reflect the prosecution history disclaimer, or hold that the patentees disclaimed a particular theory of infringement in the prosecution history.

**Plaintiff's Position:** Defendants' arguments prove the wisdom in the Court's questioning whether Defendants should now be allowed to rely on the prosecution histories when they did not do so during the claim construction phase of the case. As Defendants

concede, the prosecution histories are a matter of public record. *See, e.g., Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 2001). Defendants undisputedly had the prosecution histories in their possession at the time of the *Markman* phase of this case and could have relied on them then to make their arguments. Further, this was not a case where the parties were unaware of each others' infringement contentions – the issue was the subject of extensive discovery in the Buffalo litigation, to which intervenor Shaw was a party. Indeed, Shaw relied on the prosecution histories in that case.

Moreover, Defendants' suggestion that the Court can change its claim construction now that the infringement issues have been brought to the forefront is disingenuous. It was Defendants that urged the claim construction adopted by the Court. Having succeeded in advancing their claim construction positions, Defendants cannot now be heard to complain that the Court should "revise and reconsider" its claim construction. *See Northern Telecom Ltd. v. Samsung Elec. Co., Ltd.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) ("we look with 'extreme disfavor' on appeals that allege error in claim constructions that were advocated below by the very party now challenging them") (citation omitted).

In situations such as this, it is the doctrine of judicial estoppel (not equitable estoppel, as Defendants argue) that applies. *See Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007) ("the doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation. The underlying purpose of the doctrine is 'to protect the integrity of the judicial process.'"); *Key Pharms. v. Hercon Lab. Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998) ("doctrines of estoppel, waiver, invited error, or the like would prohibit a party from asserting as 'error' a position that it had advocated at the trial") (citations

omitted). Judicial estoppel applies when a party persuades a court to adopt a claim construction and then argues error in that construction. *See Transclean*, 474 F.3d at 1307 ("the Federal Circuit has stated that a party may be judicially estopped from asserting clearly inconsistent positions on claim construction, which is a question of law," *citing Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001); *Key Pharms*., 161 F.3d at 715).

The present case presents a clear-cut case wherein judicial estoppel should apply. Defendants chose to advocate a claim construction position that did not rely on the prosecution history. Having succeeded in doing so, Defendants must live with the consequences of their decision.

## III. Proposed Schedule for Proceedings

**Defendants' Position:**

| Event | Duration | Deadline |
|---|---|---|
| Additional discovery on Colonie site | Three (3) months | |
| Factual discovery related to invalidity | Nine (9) months | |
| Factual discovery related to additional sites | An additional twelve (12) months | |
| Completion of fact discovery (infringement and invalidity) | | Nov. 9, 2009 |
| Exchange of initial expert reports (infringement and invalidity only) | One (1) month | Dec. 7, 2009 |
| Exchange of rebuttal expert reports | One (1) month | Jan. 11, 2010 |
| Expert depositions | Two (2) weeks | Jan. 25, 2010 |
| Trial on infringement and invalidity | Twelve (12) days | At the Court's convenience |

**Plaintiff's Position:**

| Event | Deadline |
|---|---|
| Completion of fact discovery (all issues) | August 30, 2008 |
| Exchange of initial expert reports | September 30, 2008 |
| Exchange of rebuttal expert reports | October 30, 2008 |
| Completion of expert discovery | November 19, 2008 |
| Trial (eight days) | At the Court's convenience |

Respectfully submitted,

Dated: November 9, 2007

s/ Brian E. Ferguson

Brian E. Ferguson
McDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, D.C. 20005
(202) 756-8000
bferguson@mwe.com

WEBSTER SZANYI LLP
Kevin A. Szanyi
Nelson Perel
Todd M. Schiffmacher
1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800
nperel@websterszanyi.com

Attorneys for Plaintiff, Sevenson Environmental Services, Inc.

Dated: November 9, 2007

PETER D. KEISLER
Assistant Attorney General

JOHN J. FARGO
Director

s/ Joshua B. Brady___________

JOSHUA B. BRADY
Attorney
Civil Division
U.S. Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0285
Facsimile: (202) 307-0345

Attorneys for Defendant the United States

OF COUNSEL:
Susan Mitchell
Assistant Director

Dated: November 9, 2007

__s/ Russel O. Primeaux_by s/ Joshua B. Brady___

RUSSEL O. PRIMEAUX
Kean Miller Hawthorne D'Armond
McCowan & Jarman LLP
One American Place, 22nd Floor
Post Office Box 3513
Baton Rouge, LA 70821-3513
(225) 387-0999
Russel.Primeaux@keanmiller.com

Attorney for Defendant-Intervenor
Shaw Environmental, Inc.